# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DAVID KLEIN,

        Plaintiff,

    v.

JELLY BELLY CANDY COMPANY,

        Defendant.

Civil Action No. 22-cv-11825-AK

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## JELLY BELLY CANDY COMPANY'S MOTION TO TRANSFER OR DISMISS

Defendant Jelly Belly Candy Company ("Jelly Belly") respectfully submits this Memorandum of Law in support of its motion to transfer the Complaint filed by Plaintiff David Klein ("Plaintiff") pursuant to 28 U.S.C. § 1406(a) or, in the alternative, to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This baseless lawsuit is merely the latest in a long series of public relations stunts and failed litigation strategies by Plaintiff to attempt to capitalize off of Jelly Belly's name and goodwill for his own gain.  The parties have not had any relationship for decades, but the disgruntled Plaintiff continues to complain that he has not received the recognition he believes he is owed related to Jelly Belly® jelly beans.  Plaintiff imagines a broad conspiracy against him, claiming that Jelly Belly colluded with "the press" and defamed him by "portray[ing] Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean."  *See* Dkt. No. 1-2, Complaint ("Compl."), ¶¶ 20, 55. These claims have no merit.  Five months ago, Plaintiff filed a nearly identical lawsuit against Jelly Belly in New York, only to acknowledge after Jelly Belly moved to dismiss that most of his claims were barred by New York's statute of limitations.  Undeterred, Plaintiff voluntarily dismissed the New York complaint without prejudice, representing to the court that he was doing so in order to refile it in a forum with a longer statute of limitations, like Massachusetts.

Plaintiff's blatant forum shopping has not saved his baseless claims.  Massachusetts is not a proper venue because it has no relationship to the parties or Plaintiff's claims.  None of the events alleged in the Complaint occurred in Massachusetts, and none of the alleged injury was suffered here (Plaintiff resides in Florida).  Thus, the Complaint should be transferred to the Eastern District of California, where there is a first-filed action pending between the parties involving the same issues.  Transfer is appropriate in the interest of justice because it would be inconvenient for all

the parties and witnesses to litigate in Massachusetts (none of the witnesses or evidence are located here), and it would be convenient for the parties and witnesses to litigate in California. Plaintiff's choice of venue here is entitled to no deference because of his admitted forum shopping, and indeed, he has already demonstrated (by filing actions in New York and Massachusetts) that he is not inconvenienced by litigating far from his home in Florida.

If this action is not transferred, Plaintiff's claims should be dismissed for failure to state a claim. Plaintiff's claims for defamation per se, tortious interference, and civil conspiracy are time barred in part even under Massachusetts' longer statutes of limitations, and Plaintiff fails to plead the elements of his claims. Plaintiff does not allege any false or defamatory statement about him. Instead, Plaintiff only cites Jelly Belly's accurate statements that Gustav Goelitz (not Plaintiff) was the founder of Jelly Belly Candy Company, which was formerly known as Herman Goelitz Candy Company. This is true. As confirmed by the corporate documents of Jelly Belly and its predecessor entities (of which the Court should take judicial notice), David Klein is not the founder of Jelly Belly Candy Company, formerly known as Herman Goelitz Candy Company. Moreover, there is no plausible way to read a defamatory meaning into that statement. In deciding a motion to dismiss, a court may not strain to find defamation where none exists, and none exists here. Plaintiff only recites the remaining elements of a defamation claim without pleading any facts, and his claim for defamation per se should be dismissed.

Plaintiff also fails to state a claim for tortious interference with an advantageous relationship. Plaintiff's general assertion that he hoped to generate "positive exposure" that could have resulted in "new revenue streams and business opportunities" (Compl., ¶¶ 64-65) is not sufficient. The two opportunities identified in the Complaint confirm that Plaintiff only planned

to sell products but was not successful, but Plaintiff does not allege (nor could he) that Jelly Belly knowingly and intentionally used improper means to interfere with those opportunities.

Plaintiff also fails to state a claim for civil conspiracy. The claim is derivative of Plaintiff's defamation claim, so Plaintiff's failure to plead the elements of the underlying defamation claim requires the dismissal of his civil conspiracy claim. Moreover, Plaintiff fails to allege any agreement between Jelly Belly and a third party that might state a claim for civil conspiracy. Instead, he merely recites the legal elements of the claim, without pleading any facts.

## <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

Jelly Belly is a candy manufacturer most well-known for its Jelly Belly® jelly beans. More than forty years ago, Jelly Belly, then called Herman Goelitz Candy Company, acquired the Jelly Belly® trademark from Plaintiff and his business partner pursuant to a Trademark Assignment and Marketing Agreement dated October 16, 1980. *See* Compl., ¶ 7; *see also* Declaration of David G. Thomas, dated November 1, 2022 ("Thomas Dec."), ¶ 2 and Ex. A attached thereto.[1]

Plaintiff claims that he is the "true founder and inventor of the Jelly Belly jelly bean," and that Jelly Belly has tried to "change history and attribute all his accolades to themselves" by "publishing false and defamatory information about Plaintiff in an effort to rewrite the history and origin of the Jelly Belly jelly bean." *Id*. at ¶¶ 16, 52. The Complaint alleges "three instances of the Defendant contacting publications and forcing redactions or outright withdrawal of any articles giving credit to Mr. Klein for being the true founder and inventor of the Jelly Belly jelly bean." *Id*. at ¶ 19. Based on these allegations, Plaintiff asserts claims against Jelly Belly for defamation per se, tortious interference with advantageous relationship, and civil conspiracy. *Id*. at ¶¶ 51-77.

---

[1] Documents referenced in the Complaint can be considered by the Court in deciding this motion to dismiss. *See Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). While not relevant to his claims, Plaintiff wrongly asserts that the agreement provided for a 20-year assignment that expired in 2000, but the agreement expressly provided for "the transfer of the ownership of the mark" to Jelly Belly. Thomas Dec., at ¶ 2 and Ex. A attached thereto.

This is not the first time Plaintiff has sued Jelly Belly based on these meritless allegations. Five months ago, on May 23, 2022, Plaintiff commenced an action against Jelly Belly in New York state court, asserting libel and civil conspiracy claims under New York law based on the same allegations.  *See* Thomas Dec., ¶ 3 and Ex. B attached thereto.  After removing that action to District Court, Jelly Belly moved to dismiss Plaintiff's claims, *inter alia*, under New York's one-year statute of limitations.  *See* Thomas Dec., ¶ 4 and Ex. C attached thereto.  Rather than oppose the motion, Plaintiff voluntarily dismissed the New York complaint without prejudice.  *See* Thomas Dec., ¶ 5 and Ex. D attached thereto.  At the time, Plaintiff represented to the New York court that he was dismissing the complaint in order to shop for a forum with a "longer statute of limitations" like Massachusetts.[2]  *See* Thomas Dec., ¶¶ 5-6 and Exs. D, E attached thereto.  Rather than waiting for Plaintiff to file another baseless attack, after Plaintiff dismissed his New York complaint, Jelly Belly filed a complaint against Plaintiff in the Eastern District of California on August 26, 2022, before this action was filed, seeking, *inter alia*, a declaratory judgment that the statements upon which Plaintiff relies were true and an injunction prohibiting Plaintiff from referring to himself as the "founder" of Jelly Belly Candy Company.  *See* Thomas Dec., ¶ 7 and Ex. F attached thereto.  The California action is pending.

## LEGAL ARGUMENT

## I.     THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF CALIFORNIA

When a plaintiff files an action in the wrong venue, the court must "dismiss, or if it be in the interest of justice, transfer such case" to the proper venue.  28 U.S.C. § 1406(a).  Venue in this District is improper, and the action should be transferred to the Eastern District of California.

---

[2] Fed. R. Civ. P. 41(d) entitles to Jelly Belly to an award of its costs incurred in the New York action given Plaintiff's forum shopping, and Jelly Belly reserves its right to seek those costs in the appropriate court.

### A.    Massachusetts Is Not A Proper Venue For This Action

A plaintiff must bring a civil action in (1) "a judicial district in which any defendant resides," or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1), (2).  An action may only be filed in another venue where a defendant is subject to personal jurisdiction "if there is no district in which an action may otherwise be brought as provided in this section."  28 U.S.C. § 1391(b)(3).  Once an objection to venue is raised, "the burden is on the plaintiff to establish that venue is proper."  *See Transamerica Corp. v. Trans-American Leasing Corp.*, 670 F. Supp. 1089, 1090 (D. Mass. 1987).

Venue in Massachusetts is not proper under 28 U.S.C. § 1391(b)(1) because Jelly Belly does not "reside" in Massachusetts.  A defendant "resides" in a venue if it "is subject to the court's personal jurisdiction with respect to the civil action in question[.]"  28 U.S.C. § 1391(c)(2).  Massachusetts does not have personal jurisdiction over Jelly Belly.  Jelly Belly is a California corporation with its principal place of business in California, and does not have systematic or continuous contacts with Massachusetts.  *See* Declaration of Robert Swaigen, dated November 1, 2022 ("Swaigen Dec."), ¶¶ 2-5.[3]  Thus, the Court does not have general jurisdiction over Jelly Belly.  *See Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020) (general jurisdiction arises where "the corporation's general business contacts with the forum are sufficiently continuous and systematic 'as to render [it] essentially at home in the forum State.'  The paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business.") (internal citations omitted); *see Goodyear Dunlop Tires Oper., S.A. v. Brown*, 564 U.S. 915, 924 (2011) (general

---

[3] The Court is authorized to "examine facts outside the complaint to determine whether venue [] is proper."  *See Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 211 (D. Mass. 2008).

jurisdiction only exists where "the corporation is *fairly* regarded as at home").[4]

The Court also does not have specific jurisdiction over Jelly Belly because Plaintiff's claims do not arise from any activity by Jelly Belly directed towards Massachusetts. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 60-61 (1st Cir. 2005) (to establish specific jurisdiction, plaintiff "must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts.").[5] Jelly Belly did not act in Massachusetts. *See* Swaigen Dec., ¶¶ 4-5. Plaintiff resides in Florida (s*ee* Compl., ¶ 5), and any alleged actions by Jelly Belly directed at Plaintiff were not directed towards Massachusetts. Indeed, none of the events alleged in the Complaint took place in Massachusetts. The only allegation in the Complaint even tangentially involving Massachusetts is a reference to an article on NBC Boston's website. *See id*. at ¶ 42; Thomas Dec., ¶ 8 and Ex. G attached thereto. However, the article confirms on its face that Jelly Belly did not take any action directed at Massachusetts. Rather, the article specifically states that it is simply a repost of an article that first appeared on TODAY.com (*see* Thomas Dec., ¶ 9 and Ex. H attached thereto; https://www.today.com/food/jelly-belly-founder-giving-away-factory-treasure-hunt-t191212) (last visited Nov. 1, 2022), and the specific portion of the article upon which Plaintiff relies quotes what a "Jelly Belly spokesperson said in a statement to TODAY Food." *See* Thomas Dec., ¶ 8 and Ex. G attached thereto. The article by TODAY (an NBC program) was reposted on the websites of various NBC affiliates. *See, e.g.*,

---

[4] Plaintiff's conclusory assertion that "venue is proper due the Companies [*sic*] substantial business dealings, and ever-present interests throughout the state" (Compl., ¶ 3) should not be taken as true. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) (in assessing venue, "the law does not require us struthiously to credit conclusory allegations[.]"). Indeed, that allegation is false. *See* Swaigen Dec., ¶ 5. (Jelly Belly has no office in this state, is not "at home" in Massachusetts, and sales in Massachusetts only account for less than 2.5% of Jelly Belly's total annual sales).

[5] Jelly Belly's removal of this action to District Court does not waive its objection to lack of personal jurisdiction. *See In re Lupron Mktg. & Sales Pracs. Litig.*, 245 F. Supp. 2d 280, 302 (D. Mass. 2003) (*citing Nationwide Engineering & Control Systems, Inc. v. Thomas*, 837 F.2d 345, 347-48 (8th Cir. 1988)) ("[R]emoval from state to federal court does not waive the right to object to a lack of personal jurisdiction.").

https://www.nbcsandiego.com/entertainment/entertainment-news/jelly-belly-inventor-giving-away-1-of-his-factories-in-willy-wonka-style-treasure-hunt/2402969/ (last visited Nov. 1, 2022)**;** https://www.nbcnewyork.com/entertainment/entertainment-news/jelly-belly-inventor-giving-away-1-of-his-factories-in-willy-wonka-style-treasure-hunt/2611289/ (last visited Nov. 1, 2022). That one of those affiliates happens to be in Massachusetts is not a basis for this Court to exercise personal jurisdiction over Jelly Belly.  *See Brown v. Dash*, No. 20-cv-10980-FDS, 2020 WL 6806433, at *11 (D. Mass. Nov. 18, 2020) (holding that defendants were not subject to personal jurisdiction in Massachusetts where "there is no indication that defendants 'reached into the forum' of Massachusetts or 'reached out beyond their [home] state,' other than by posting videos and writings that were available in all fifty states, including Massachusetts."); *see also Lin v. TipRanks, Ltd*., No. 19-cv-11517, 2019 WL 6211246, at *5-6 (D. Mass. Nov. 21, 2019) (defamatory publication on website available in Massachusetts did not satisfy purposeful-availment test, because the "website is available to anyone with internet access and . . . is no more likely to solicit customers in Massachusetts than anywhere else").[6]

For the same reasons, venue is not proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged events giving rise to Plaintiff's claim did not occur in Massachusetts. *See Van Deelen v. Bloomberg, L.P*., No. 20-cv-00239-TFM-B, 2021 WL 401201, at *3 (S.D. Ala. Jan. 8, 2021) ("Despite the difficulty of applying section 1391(b)(2) to internet defamation cases, courts have stressed that 'the purpose of the venue statute [is to] protect[] *defendants* from having to litigate in jurisdictions far from where they reside or where the underlying conduct occurred,' which is why 'courts often focus on the relevant activities of the defendant . . . in determining where a substantial part of the underlying events occurred.") (*quoting Corsi v. Stone*, 2020 U.S.

---

[6] The Complaint is also subject to dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff also did not serve a Summons on Jelly Belly.  *See* Thomas Dec., ¶ 10 and Ex. I attached thereto.

Dist. LEXIS 34852 *6, 2020 WL 999053, *2 (D.D.C. Mar. 1, 2020)).  No evidence or witnesses are located in Massachusetts.[7]  Massachusetts is not a convenient forum for Jelly Belly, which would be required to undertake cross-country travel to litigate this dispute here.  *See United States v. Hess*, 302 F.R.D. 283, 284 (D. Mass. 2014) (noting that defendant would be inconvenienced if required to travel from California to Massachusetts for trial); *see also Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (holding that "Massachusetts is undoubtedly an inconvenient forum for [defendant] . . . rather than in its home state of North Carolina.").[8]

**B.    Transfer Of Venue To The Eastern District of California Is In The Interest Of Justice**

Where venue is improper, the action can be transferred to a proper venue in the interest of justice.  *See* 28 U.S.C. § 1406(a).  Venue in the Eastern District of California is proper under 28 U.S.C. § 1391(b)(1) because the defendant (Jelly Belly) is incorporated and headquartered there. Compl., ¶ 6.  Venue in California is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged events (*e.g.*, all of Jelly Belly's alleged actions) occurred in California.  The Eastern District of California would also be convenient for Jelly Belly and the majority of the party witnesses.  Plaintiff is the only party who resides outside of California, but his choice of venue here is not entitled to any weight or deference because Plaintiff engaged in obvious forum shopping.  *See, e.g., Dress v. Cap. One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 184 (D. Mass.

---

[7] None of the party witnesses are in Massachusetts, and none of the third parties referred to in the Complaint are in Massachusetts.  For example, Plaintiff cites articles by The Washington Post (from Washington, D.C.) and Refinery29 (from New York), and emails with Newswire (from New York).  Plaintiff also alleges a relationship with a company called Meta-G, whose principles and employees are from Missouri, California, Pennsylvania, and Florida.  *See* https://www.globenewswire.com/en/news-release/2022/04/01/2415117/0/en/David-Klein-is-the-Latest-to-Join-the-NFT-Craze-With-Jellyz-NFT-Release.html (last visited Nov. 1, 2022).  Plaintiff also refers to a treasure hunt contest and a book about the contest, both of which were by Tricky Treasures, Inc., a Delaware company.  *See* https://thegoldticket.com/pages/terms-and-conditions) (last visited Nov. 1, 2022); https://www.amazon.com/s?i=stripbooks&rh=p_27%3ATricky+Treasures+Inc&s=relevancerank&text=Tricky+Treasures+Inc&ref=dp_byline_sr_book_1) (last visited Nov. 1, 2022).

[8] The Complaint is also subject to dismissal for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

2019) ("Where it appears the plaintiff forum shopped, plaintiff's selection of forum is not entitled to any weight."); *see also Johnson v. New York Life Ins. Co.*, No. C.A. 12-11026-MLW, 2013 WL 1003432, at *3 (D. Mass. Mar. 14, 2013) ("[T]he usual weight given to the plaintiffs' choice of forum is not justified…[where] to give it such weight would abet . . . forum shopping."). In any event, Plaintiff has already demonstrated that he is not inconvenienced by litigating far away from Florida (*e.g.*, New York or Massachusetts).

Moreover, there is already an action pending in California between the parties involving the dispute raised in the Complaint. The complaint in California was filed on August 26, 2022, more than a month before the Complaint here, and both actions involve the same parties (Jelly Belly and Plaintiff) and the same issues. For example, in this action, Plaintiff's claims are based on his assertion that Jelly Belly made defamatory statements about him, and in the California action, Jelly Belly seeks a declaratory judgment that its statements, which underlie Plaintiff's claims here, are true. *See* Thomas Dec., ¶ 7 and Ex. F attached thereto. Jelly Belly's "first filed action is 'generally preferred in a choice-of-venue decision.'" *See EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012) (quoting *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)). Given the "strong presumption" in favor of the Eastern District of California, Plaintiff "must bear the burden of proving . . . that considerations of convenience and judicial efficiency strongly favor litigating the claim in" Massachusetts. *See Biolitec, Inc. v. AngioDynamics, Inc.*, 581 F. Supp. 2d 152, 158 (D. Mass. 2008) (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996)) (ellipses in original).[9] As discussed above, he cannot.

---

[9] The "first to file" rule "dictate[s] not only which forum is appropriate, but also which forum should *decide* which forum is appropriate." *See EMC Corp.*, 914 F. Supp. 2d at 129 (emphasis in original). Accordingly, the Court may stay these proceedings and allow the court in the California action to resolve whether venue is appropriate in California or Massachusetts. *Id.* at 129-30 (noting that "[c]ourts in nearly every circuit have held that the court in which the second action was filed should defer to courts in the first-filed action," and staying action to allow plaintiff to file motion for transfer of venue in first-filed action).

## II.      THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.      Plaintiff's Claims Are Barred In Part By The Statutes Of Limitations

Notwithstanding Plaintiff's forum shopping, Plaintiff's claims are barred in part by Massachusetts' three-year statutes of limitations applicable to defamation, tortious interference, and civil conspiracy.  *See* G. L. c. 260 § 4; G. L. c. 260, § 2A; G. L. c. 260, § 2A.  One of the three statements at issue (the April 4, 2019 Refinery29 article) was published more than three years before Plaintiff filed the Complaint, and Plaintiff's claims based on that statement are time-barred.

### B.      Plaintiff's Defamation Per Se Claim Should be Dismissed

#### 1.      The Complaint Does Not Allege A False Or Defamatory Statement

To state a claim for defamation, Plaintiff must first allege "a false statement about the plaintiff to others."  *See Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 225 (D. Mass. 2017) (quoting *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 522 (2013)).[10]  Thus, "if a statement is 'substantially true,' it cannot be defamatory" and cannot support a defamation claim.  *See Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010) (quoting *Reilly v. Assoc. Press*, 59 Mass.App.Ct. 764, 770 (2003)).[11]  Whether an alleged statement is "substantially true" is an issue of law that is properly decided on a motion to dismiss.  *Id.* at 90-91.

Each of the three statements Plaintiff relies on are true.  Contrary to Plaintiff's bald assertion that Jelly Belly made statements disputing Plaintiff's claim that he is the "the inventor and founder of the Jelly Belly jelly beans" (Compl., ¶ 53), none of the statements cited in the Complaint address the inventor or founder of the Jelly Belly jelly bean (the product).  Rather, the

---

[10]  Jelly Belly does not concede that Massachusetts law applies, but California and Florida law are in accord.  *See* Cal. Civ. Code § 45; *see also Matonis v. Care Holdings Grp., L.L.C.*, 423 F. Supp. 3d 1304, 1315 (S.D. Fla. 2019).

[11]  California and Florida law are in accord.  *See Heller v. NBCUniversal, Inc.*, No. 15-CV-09631-MWF, 2016 WL 6583048, at *4 (C.D. Cal. June 29, 2016); *see also Smith v. Cuban American National Foundation*, 731 So. 2d 702, 706-07 (Fla. Dist. Ct. App. 1999).

three statements at issue only relate to the founder of Jelly Belly Candy Company.  Specifically,

the articles by The Washington Post and Refinery29 cited by Plaintiff stated that Jelly Belly Candy

Company, formerly known as Herman Goelitz Candy Company, was founded by Gustav Goelitz

(not Plaintiff).  *See id*. at ¶¶ 26-32; Thomas Dec., ¶¶ 11-12 and Exs. J, K attached thereto.

Similarly, although Plaintiff asserts that Newswire told him that Jelly Belly had somehow advised

"the press" not to describe him as the inventor of the Jelly Belly® jelly bean, the email he cites

contradicts that assertion, and demonstrates only that Jelly Belly issued a press release stating that

Jelly Belly Candy Company, formerly known as Herman Goelitz Candy company, was founded

by Gustav Goelitz.  *See* Compl., Tab A (citing https://news.jellybelly.com/the-gold-ticket-candy-

factory-giveaway-contest/).

These statements are true.  After Gustav Goelitz founded the Goelitz family candy business

in 1869, his son, Gustav A. Goelitz, incorporated the business as the Goelitz Confectionary Co. on

February 1, 1910.  *See* Thomas Dec., ¶ 13 and Ex. L attached thereto.[12]  On October 28, 1975,

members of the Goelitz family incorporated another entity, the Herman Goelitz Candy Company.

*See* Thomas Dec., ¶ 14 and Ex. M attached thereto.[13]  The Goelitz Confectionary Co. later merged

with the Herman Goelitz Candy Company on March 16, 2001, *see* Thomas Dec., ¶ 15 and Ex. N

---

[12]  The Court can take judicial notice of Jelly Belly's corporate documents.  *See Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d 25, 28, n.7 (D. Mass. 2014) (taking judicial notice of merger and name change of bank as lender in mortgage loan); *see also In re New England Confectionery Co., Inc.*, No. 18-11217-MSH, 2020 WL 520894, at *1 (Bankr. D. Mass. Jan. 31, 2020) ("The court may take judicial notice of the certificate of incorporation in deciding a motion to dismiss."); *see also McAllister v. Countrywide Home Loans, Inc.*, No. CV 16-10911-GAO, 2017 WL 1173925, at *3 (D. Mass. Mar. 29, 2017) (document evidencing merger between two corporations "is subject to judicial notice.").

[13]  The Goelitz Confectionary Co. was incorporated by Gustav A. Goelitz, Herman Goelitz, and Edward Kelly.  *See* Thomas Dec., ¶ 13 and Ex. L attached thereto.  The Herman Goelitz Candy Company was incorporated by Herman Rowland, Ernest Rowland, and Aloyse Rowland.  *See* Thomas Dec., ¶ 14 and Ex. M attached thereto.  Plaintiff was not involved in the formation or incorporation of either entity (nor has he ever owned or operated either entity), and cannot conceivably be called a "founder" of any of the Goelitz family candy businesses.  Thus, The Washington Post's statement that Plaintiff was "misidentified" as the "founder" of the Jelly Belly Candy Company, formerly known as the Herman Goelitz Candy Company, is true irrespective of which members of the Goelitz family is considered the actual "founder" of that particular entity.

attached thereto, and the resulting entity changed its name to Jelly Belly Candy Company on March 20, 2001.  *See* Thomas Dec., ¶ 16 and Ex. O attached thereto.

Acknowledging that this indisputable fact is fatal to his claims, Plaintiff baldly asserts that he also "founded the Jelly Belly Candy Company."  Compl., ¶ 33.  Not only is this obviously false statement contradicted by Jelly Belly's formation documents, but it is also contradicted by Plaintiff's allegations in the in the very next paragraph of the Complaint, where Plaintiff admits that, before he sold the trademark to Jelly Belly, he only "[did] business as The Jelly Belly" and wrote checks in the name "The Jelly Belly," entirely different than founding Jelly Belly Candy Company.  *Id*. at ¶¶ 34-35, Tab C.  The 1980 Trademark Assignment and Marketing Agreement – which was between Jelly Belly and Plaintiff, Plaintiff's partner, and their entity, Garvey Nut House, Inc., but not any entity founded by Plaintiff with the name "The Jelly Belly" or "Jelly Belly Candy Company" – further confirms that Plaintiff did not found Jelly Belly Candy Company.  *See* Thomas Dec., ¶ 2 and Ex. A attached thereto.  Thus, the Court should not accept as true Plaintiff's bald assertion that he was the founder of Jelly Belly Candy Company.  *See James v. Cox*, No. 21-cv-12098-AK, 2022 WL 2905367, at *6 (D. Mass. July 22, 2022) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.") (quoting Wright & Miller, Federal Practice and Procedure § 1363 (3d ed. 1998).

Additionally, to support a defamation claim, the statements at issue must "hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community."  *See Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003) (quoting *Tartaglia v. Townsend*, 19 Mass.App.Ct. 693, 696 (1985)).  In applying this standard at the motion to dismiss stage, the Court "can only rule that [a statement] is defamatory if it could lead a reasonable [reader] to conclude that it

conveyed a defamatory meaning.  Forced or strained construction of the statement will not suffice to state a claim for defamation."  *See Damon v. Moore*, 520 F.3d 98, 105 (1st Cir. 2008) (applying Massachusetts law) (internal citations removed).  Courts routinely dismiss defamation claims where the allegedly defamatory statements, under a normal reading, do not plausibly defame the plaintiff.  *See, e.g.*, *Yohe*, 321 F.3d at 40 (affirming dismissal of defamation claim where the statement could not hold the plaintiff "up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community"); *see also Foley*, 404 Mass. at 197 (affirming dismissal of defamation claim because "the statement complained of, when read in the context of the entire article, was not capable of a defamatory meaning").

        None of the statements that Plaintiff attempts to attribute to Jelly Belly regarding the founder of Jelly Belly Candy Company plausibly place Plaintiff in a defamatory light.  They simply – and accurately – stated that Gustav Goelitz, not Plaintiff, was the founder of Jelly Belly Candy Company, which was formerly known as Herman Goelitz Candy Company.  A reasonable person reading these statements would not be caused to think anything negative about Plaintiff.  Indeed, as reflected in Jelly Belly's press release that Newswire emailed to Plaintiff, while Jelly Belly stated, accurately, that Plaintiff is not associated with the company, it also credited Plaintiff for coming up with the name, Jelly Belly.  *See* Compl., Tab A; https://news.jellybelly.com/the-gold-ticket-candy-factory-giveaway-contest/ (last visited Nov. 1, 2022).

        Notably, there is no allegation that Jelly Belly ran to the press simply to tell the world that Plaintiff is not its founder.  Rather, the articles Plaintiff cites relate to Plaintiff's products, which he promoted by representing that he was the founder of Jelly Belly Candy Company, leading to the misunderstanding in the marketplace that Jelly Belly was involved, and requiring Jelly Belly to issue clarifying press releases.  *See, e.g.*, https://news.jellybelly.com/the-gold-ticket-candy-

factory-giveaway-contest/ and https://news.jellybelly.com/jelly-belly-does-not-manufacture-cbd-jelly-beans/ (last visited Nov. 1, 2022).[14]  In this context, Plaintiff was not plausibly defamed.

    2.    *The Complaint Does Not Allege That Jelly Belly Authorized The Media's Statements*

Even if the Complaint alleged a false and defamatory statement (it does not), Plaintiff does not identify any statement by Jelly Belly itself.  Because Plaintiff's claim is based on statements made by media outlets, he must allege that Jelly Belly "authorized," "intended," or "reasonably[] expected" the republication.  *See Murphy v. Bos. Herald, Inc.*, 449 Mass. 42, 65 (2007).[15]

The Complaint contains no such allegations.  Indeed, the Complaint does not contain any factual allegations of any interactions between Jelly Belly and The Washington Post, Refinery29, or Newswire.  Instead, Plaintiff generally and conclusorily asserts that "Defendant contact[ed] publications and forc[ed] redactions or outright withdrawal of any article[] giving credit to [Plaintiff] for being the true founder and inventor of the Jelly Belly jelly bean."  Compl., ¶ 19.  Plaintiff does not plead any facts supporting his bald assertion, much less allege that Jelly Belly authorized the three specific statements upon which he bases his defamation claim.

    3.    *The Complaint Does Not Allege Actual Malice*

Where a plaintiff is a public figure, to state a claim for defamation, he must allege that the allegedly defamatory statement was "made with 'actual malice.'"  *See McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017).  Plaintiff is a limited-purpose public figure because he has, for years,

---

[14]  In assessing whether a statement is defamatory, the statement should be evaluated "in the context of the entire publication."  *See Butcher v. Univ. of Massachusetts*, 483 Mass. 742, 757(Mass. 2019).

[15]  California law similarly requires that a plaintiff plead that the allegedly defamatory statement was "reasonably foreseeable, authorized, or intended." *See Lund v. Gifford*, No. B259366, 2016 WL 7031517, at *12 (Cal. Ct. App. Dec. 2, 2016).  Florida law, however, does not recognize so-called "republication" defamation, and Plaintiff's claim is also barred to the extent Florida law applies.  *See Barbuto v. Miami Herald Media Co.*, No. 21-CV-20608, 2022 WL 123906, at *3 (S.D. Fla. Jan. 13, 2022) (rejecting republication theory of liability under Florida law).

aggressively sought media and public attention regarding the Jelly Belly® jelly bean.[16]   *See*

*Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011) (a "limited-purpose public

figure" is someone who "voluntarily injects himself or is drawn into a particular public controversy

and thereby becomes a public figure for a limited range of issues.") (quoting *Gertz v. Robert Welch,

Inc.*, 418 U.S. 323, 351 (1974)).

Plaintiff fails to plead that Jelly Belly acted with actual malice.  To plead actual malice, a

plaintiff is required to plead that the defendant made a statement "with knowledge that it was false

or with reckless disregard for whether it was false or not."  *See McKee*, 874 F.3d at 61.  Without

reference to any specific statement made by Jelly Belly, Plaintiff alleges that "Defendant Jelly

Belly Candy Company[] has published the information with reckless disregard as to its

offensiveness."  Compl., ¶ 54.  This bald conclusion is not supported by any factual allegations,

and is insufficient to state a claim for defamation.  *See Shay v. Walters*, 702 F.3d 76,  82-83 (1st

Cir. 2012) ("While the plaintiff's complaint contains conclusory allegations about 'ill-will' and

'actual malice,' it contains no factual assertions that in any way lend plausibility to these

conclusions. . . . In determining whether allegations cross the plausibility threshold, an inquiring

---

[16]  For example, (a) Plaintiff's son created a feature-length documentary about Plaintiff's purported involvement in the history of the Jelly Belly® jelly bean, (b) Plaintiff maintains websites, social media accounts, and YouTube channels all dedicated to portraying himself as the inventor of the Jelly Belly® jelly bean, and (c) Plaintiff has been interviewed by numerous media outlets regarding his claims regarding the history of the Jelly Belly® jelly bean and the company itself.   *See, e.g.*, https://www.imdb.com/title/tt1524107/ (last visited Nov. 1, 2022); https://twitter.com/wwwcandyinvento (last visited Nov. 1, 2022); https://www.youtube.com/channel/UC3BIxLnLP0Xp9C_YefNX7UA (last visited Nov. 1, 2022); https://candymankitchens.com/about-us/ (last visited Nov. 1, 2022); https://www.ouramericanstories.com/podcast/business/candyman-the-story-of-jelly-belly-founder-david-klein (last visited Nov. 1, 2022); https://www.laweekly.com/q-a-with-jelly-belly-inventor-david-klein-on-getting-his-jelly-belly-due-his-new-line-of-jelly-beans-the-astro-pop-connection/ (last visited Nov. 1, 2022); https://www.dailyrepublic.com/all-dr-news/solano-news/local-features/local-lifestyle-columns/back-in-the-day-mr-jelly-belly-wants-to-sue-jelly-belly-candy-company/ (last visited Nov. 1, 2022).  The Court may take judicial notice of this the public attention and media coverage (not the truth of the content) when deciding whether Plaintiff is a limited public figure on this motion to dismiss.  *See, e.g.*, *Pircio v. Toland*, No. 92-cv-0913, 1998 WL 22074, at *5 (Mass. App. Ct. Jan. 2, 1998) (noting that "[w]ether a plaintiff is a public official or a public figure is a question of law for the court to determine" and that the court may take "judicial notice" of documents to assist in this assessment "to determine a motion to dismiss").

court need not give weight to bare conclusions, unembellished by pertinent facts."); *see also Edwards v. Commonwealth*, 477 Mass. 254, 266 (2017) (reversing denial of motion to dismiss defamation claim where assertions of malice "require[d] a fact finder to jump from one inference to another absent any of the necessary factual support" and plaintiff's "assertions regarding [defendant's] likely state of mind, based on [a third party's] alleged statement to [plaintiff], are too speculative to support a claim of actual malice.").

### C.     Plaintiff's Tortious Interference With An Advantageous Relationship Claim Should Be Dismissed

To state a claim for tortious interference with an advantageous relationship, Plaintiff must allege facts showing that: "(1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or [business] relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *See Hamann v. Carpenter*, 937 F.3d 86, 93 (1st Cir. 2019).[17]

Plaintiff's general allegation that he believes that he "would have attained positive exposure" but for Jelly Belly's alleged actions, and that that "[e]xposure would have more likely than not, resulted in new revenue streams and business opportunities" (Compl., ¶¶ 64-65) do not plead any actual advantageous relationship.   Neither does Plaintiff's vague allegation that unidentified "business ventures and contracts were halted midway through negotiation."  *Id*. at ¶ 44.  These allegations are not sufficient to state a claim for tortious interference.  *See Malden Transportation, Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 282 (D. Mass. 2017) ("A plaintiff 'may not speculate about future business relationships when alleging this tort.' Instead, they must

---

[17] California and Florida law are in accord.  *See Korea Supply Co. v. Lockheed Martin*, 63 P.3d 937, 950 (Cal. 2003); *see also GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431-CIV, 2018 WL 1393790, at *21 (S.D. Fla. Jan. 26, 2018).

allege 'a specific business relationship that was interfered with by [defendant].'").

Aside from these general assertions, Plaintiff alleges only two actual purported advantageous relationships, but neither supports his claim for tortious interference. First, Plaintiff alleges that he planned to sell NTFs with a company called Meta-G, which he claims "should have been met with major success if not for the interference of Jelly Belly Candy Company with Newswire." Compl., ¶ 44, n.7. However, Plaintiff fails to allege that Jelly Belly even knew about the project when it allegedly took the actions Plaintiff claims constituted the interference. Indeed, the only conduct "with Newswire" alleged in the Complaint is reflected in emails from November 2020 (*see id*. at Tab A), and this venture was not even announced until April 2022. *See* https://www.globenewswire.com/en/news-release/2022/04/01/2415117/0/en/David-Klein-is-the-Latest-to-Join-the-NFT-Craze-With-Jellyz-NFT-Release.html (Meta-G press release announcing NTF project) (last visited Nov. 1, 2022). Thus, Plaintiff does not – and cannot – allege that Jelly Belly knew about Plaintiff's prospective NFT sales in 2020, much less that Jelly Belly somehow knowingly and intentionally interfered with Plaintiff's partnership with Meta-G or potential NTF sales, years before they were even announced. *See Comeau v. Town of Webster*, Mass., 881 F. Supp. 2d 177, 191-92 (D. Mass. 2012) ("Plaintiffs fail to support their claims for interference with advantageous business relations with any factual allegations that [defendant] knew of any business relationships, or that he purposefully interfered with those relationships, when he [committed the allegedly tortious actions]. Without facts to bolster their formulaic allegations, Plaintiffs' interference claims must be dismissed.").

Second, Plaintiff alleges that he "expected to generate revenue from the sale of tickets and publicity from the Willy Wonka-Styled treasure hunt, directly from the sale of tickets and the book *The Orb Travelers* released by the Plaintiff's business partner," but that after "[t]he release of the

correction to the NBC article caused a slew of negative publicity, the sales fell to nearly fifty percent of the expected value."  Compl., ¶¶ 45, 46.  The NBC article upon which Plaintiff relies describes a treasure hunt contest (which offered a candy factory to the winner, and which Plaintiff promoted by claiming he was the founder of Jelly Belly Candy Company), and stated:

> To be clear, though, Klein is not giving away a key to an official Jelly Belly factory.  The company is not involved in Klein's treasure hunt.
>
> "Due to confusion in the marketplace, Jelly Belly Candy Company would like to take this opportunity to clear up the misconception that it is involved with a contest that purportedly offers a candy factory as its grand prize," a Jelly Belly spokesperson said in a statement to TODAY Food.  "Jelly Belly Candy Company, formerly known as Herman Goelitz Candy Company, has candy making roots back to 1869. It was founded by brothers Gustav and Albert Goelitz and remains family-owned and operated today."
>
> "David Klein, the sponsor of the 'treasure hunt' contest gaining attention within the media this weekend, is not associated with Jelly Belly Candy Company, its brands, or products," the statement continued.  "In 1976, Mr. Klein, an independent third party, came up with the name 'Jelly Belly' and other novel marketing ideas. Jelly Belly Candy Company has not had a relationship with Mr. Klein since 1980 when it acquired the trademark."

*See* Thomas Dec., ¶ 8 and Ex. G attached thereto (cited at Compl., ¶ 46, n.8).

Notably, Plaintiff does not allege that Jelly Belly's statement reprinted in that article was defamatory or false.  Indeed, Plaintiff fails to plead that Jelly Belly acted with any improper motive, and his allegations that the NBC article preceded a reduction in his anticipated sales do not support a claim for tortious interference.  To the contrary, it is clear from the statement that Jelly Belly sought only to protect its brand, given confusion in the marketplace that Jelly Belly was giving away a candy factory.  This is not tortious interference:

> [Where] the defendant's purpose was the legitimate advancement of its own economic interest, that motive is not 'improper' for purposes of a tortious interference claim.  That the plaintiff may have suffered a loss as a consequence of the defendant's pursuit of its own interest

18

is a by-product of a competitive marketplace; it does not render the defendant's effort tortious.

*See Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 62 Mass.App.Ct. 34, (2004) (internal citations omitted); *see also Spencer Cos., Inc. v. Chase Manhattan Bank, N.A.*, 81 B.R. 194, 204 (D. Mass. 1987) ("Interference which is merely incidental to another purpose and not the intended result of a party's action is not a sufficient basis for liability in tort.").[18]

### D.    Plaintiff's Civil Conspiracy Claim Should Be Dismissed

To state a claim for a conspiracy, a plaintiff must plead "(1) 'a common design or an agreement . . . between two or more persons to do a wrongful act' and (2) 'proof of some tortious act in furtherance of the agreement.'"  *See Bassett v. Jensen*, 459 F. Supp. 3d 293, 312 (D. Mass. 2020).[19]  The Complaint does neither.  Plaintiff's civil conspiracy claim is based on his defamation claim: that Jelly Belly "has conspired with press release companies and other third parties to further portray Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean."  Compl., ¶ 73. Thus, Plaintiff's failure to state a claim for defamation is fatal to his civil conspiracy claim.  *See*

---

[18] Plaintiff's claim for tortious interference with the treasure hunt fails for other reasons.  For example, Plaintiff alleges that the NBC article interfered with anticipated sales of a book about the treasure hunt.  However, Plaintiff concedes that the book was "released by the Plaintiff's business partner," who is not a plaintiff here.  Moreover, the book was not released until March 27, 2021 (*see* https://www.amazon.com/s/?i=stripbooks&rh=p_27%3ATricky+Treasures+Inc&s=relevancerank&text=Tricky+Treasures+Inc&ref=dp_byline_sr_book_1) (last visited Nov. 1, 2022), and Jelly Belly could not have knowingly or intentionally interfered with its sales by its statement to TODAY in September 2020.

[19] California and Florida law are in accord.  *See Creatively Disruptive, LLC v. Nat'l Incorporation Network, Inc.*, No. 18-cv-720-WQH-KSC, 2018 WL 4897212, at *7 (S.D. Cal. Oct. 5, 2018); *see also Vista Mktg., LLC v. Burkett*, 999 F. Supp. 2d 1294, 1297 (M.D. Fla. 2014).  However, in addition to conspiracy based on an underlying tort, Massachusetts also recognizes a cause of action for "true conspiracy," which is not recognized under California and Florida law.  *See Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780, 790 (N.D. Cal. 2012) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."); *see also Samara v. Juice Plus+ Co., LLC*, No. 6:20-CV-520 (GAP) (EJK), 2021 WL 8894301, at *3 (M.D. Fla. Mar. 1, 2021) (Florida law "does not recognize a separate cause of action for civil conspiracy [and] instead requires a plaintiff to allege an underlying illegal act or tort on which the alleged conspiracy is based").  As discussed above, Massachusetts has no connection to this action, and Massachusetts law should not apply in the event of a conflict of law.  *See Bergin v. Dartmouth Pharm. Inc.*, 326 F. Supp. 2d 179, 183 (D. Mass. 2004) ("tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action.").  Thus, Plaintiff's civil conspiracy claim should be dismissed to the extent Plaintiff seeks to assert a claim for true conspiracy under Massachusetts law.

*inVentiv Health Consulting, Inc. v. Equitas Life Scis.*, 289 F. Supp. 3d 272, 286 (D. Mass. 2017).

Moreover, Plaintiff does not allege any agreement between Jelly Belly and any third party. Instead, Plaintiff merely recites this element in a conclusory assertion that "there was an agreement between the press and Defendant to censor Plaintiff from being the true inventor of the Jelly Belly jelly bean." Compl., ¶ 25.  This conclusory assertion is not sufficient to state a claim.  *See Tracey v. Champeon*, 15-P-1469, 2017 WL 633778, at *3 (Mass. App. Ct. Feb. 16, 2017) (affirming dismissal of conspiracy claim because "[plaintiff] failed to allege the defendants acted in concert beyond his conclusory allegation that they had 'a common design or agreement.'"); *see also City of Bos. v. Purdue Pharma, L.P.*, No. 1884CV02860, 2020 WL 977056, at *7 (Mass. Super. Jan. 31, 2020) (dismissing civil conspiracy claim where "[c]omplaint fails to allege, in more than conclusory terms, any common designs or agreements among [defendants]").

## **CONCLUSION**

For the foregoing reasons, Jelly Belly respectfully requests that its motion be granted.

Date:  November 1, 2022         Respectfully Submitted,

JELLY BELLY CANDY COMPANY

By its attorneys:

*/s/ David G. Thomas*

David G. Thomas (BBO # 640854)
Kurt Kappes (*pro hac vice* application forthcoming)
Eric Wong (*pro hac vice* application forthcoming)
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

*Attorneys for Defendant*
*Jelly Belly Candy Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent all those non-registered participants on November 1, 2022.

*/s/ David G. Thomas*