**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID KLEIN,<br><br>            Plaintiff,<br><br>      v.<br><br>JELLY BELLY CANDY COMPANY,<br><br>            Defendant. | Civil Action No. 22-cv-11825-AK<br><br>**DECLARATION OF<br>DAVID G. THOMAS** |

I, David G. Thomas, being of full age, hereby declare as follows:

1.      I am over the age of 18.  I am a Shareholder of Greenberg Traurig, P.A.  I am in good standing as a member of the bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.  I, along with others, represent Jelly Belly Candy Company ("**Jelly Belly**").  I make this Declaration based on my personal knowledge.  If called and sworn as a witness, I could and would testify competently under oath as to what I declare herein.

2.      Attached hereto as **Exhibit A** is a genuine copy of the Trademark Assignment and Marketing Agreement, dated October 16, 1980.

3.      Attached hereto as **Exhibit B** is a genuine copy of Plaintiff's Complaint filed in the Supreme Court of the State of New York, County of New York, styled *David Klein v. Jelly Belly Candy Company*, Index. No. 154444/2022, dated May 23, 2022.

4.      Attached hereto as **Exhibit C** is a genuine copy of Jelly Belly's Memorandum of Law in support of its Motion to Dismiss Plaintiff's New York Complaint, dated July 22, 2022.

5.      Attached hereto as **Exhibit D** is a genuine copy of Plaintiff's Notice of Voluntary Dismissal of Plaintiff's New York Complaint, dated August 26, 2022.

6.      Attached hereto as **Exhibit E** is a genuine copy of Plaintiff's Letter to the District Court for the Southern District of New York seeking leave to move to transfer venue of Plaintiff's New York Complaint to the District Court for the District of Massachusetts, dated August 10, 2022.

7.      Attached hereto as **Exhibit F** is a genuine copy of Jelly Belly's Complaint filed in the District Court for the Eastern District of California, styled *Jelly Belly Candy Company v. David Klein*, Civil Action No. 2:22-cv-01509-DAD-JDP, dated August 26, 2022.

8.      Attached hereto as **Exhibit G** is a genuine copy of an article by NBC Boston, titled "Jelly Belly Inventor Giving Away 1 of His Factories in Willy Wonka-Style Treasure Hunt," and dated September 10, 2020. The article can also be accessed at https://www.nbcboston.com/entertainment/entertainment-news/jelly-belly-inventor-giving-away-1-of-his-factories-in-willy-wonka-style-treasure-hunt/2192472/.

9.      Attached hereto as **Exhibit H** is a genuine copy of an article by TODAY.com, titled "Jelly Belly inventor giving away 1 of his factories in Willy Wonka-style treasure hunt," and dated September 8, 2020.  The article can also be accessed at https://www.today.com/food/jelly-belly-founder-giving-away-factory-treasure-hunt-t191212.

10.     Attached hereto as **Exhibit I** is a genuine copy of CT Corporation's Service of Process Transmittal Summary relating to this action, dated October 5, 2022.  The documents included in this Service of Process Transmittal Summary comprise all documents that Jelly Belly received from CT Corporation.

11.     Attached hereto as **Exhibit J** is an article by The Washing Post, titled "A Colorado man found a winning golden ticket. He passed on owning a candy factory," and dated September 20, 2021.  The article can also be accessed at https://www.washingtonpost.com/nation/2021/09/20/andrew-maas-gold-ticket-competition/.

12.     Attached hereto as **Exhibit K** article by Refinery29, titled "We Planned The Menu For Kim Kardashian's 'Zen-Like CBD-Themed' Baby Shower," and dated April 28, 2019.  The article can also be accessed at https://www.refinery29.com/en-us/2019/04/231059/kim-kardashian-hosts-zen-cbd-themed-baby-shower.

13.     Attached hereto as **Exhibit L** is a genuine copy of the Articles of Incorporation for the Goelitz Confectionary Co., dated February 1, 1910.

14.     Attached hereto as **Exhibit M** is a genuine copy of the Articles of Incorporation for the Herman Goelitz Candy Company, dated October 28, 1975.

15.     Attached hereto as **Exhibit N** is a genuine copy of the Agreement of Merger of the Goelitz Confectionary Co. into the Herman Goelitz Candy Company, Inc., and the Certificates of Approval of the Agreement of Merger by the Goelitz Confectionary Co. and the Herman Goelitz Candy Company, Inc., dated March 16, 2001.

16.     Attached hereto as **Exhibit O** is a genuine copy of the Certificate of Amendment of Articles of Incorporation of the Herman Goelitz Candy Company, Inc., dated March 20, 2001.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on November 1, 2022, in Boston, Massachusetts.


Date:  November 1, 2022

                                                            */s/  David G. Thomas*
                                                            David G. Thomas

3

# EXHIBIT

# A

CONTRACT FOR TRANSFER OF TRADEMARK AND MARKETING
AGREEMENT PERTAINING TO "JELLY BELLY"

THIS AGREEMENT is entered into by and between
DAVID KLEIN (hereafter KLEIN), JAY C. LIEBERMAN (hereafter
LIEBERMAN), GARVEY NUT HOUSE, INC., a California corporation
(hereafter GARVEY), and HERMAN GOELITZ CANDY CO., INC., a
California corporation (hereafter GOELITZ), and is entered
into in reference to the following circumstances:

1.   "JELLY BELLY" is a trademark presently
owned by LIEBERMAN, but KLEIN asserts an interest therein which
LIEBERMAN acknowledges.  Said trademark is a presently valid
and existing mark recognized by the United States Patent Office,
and has been issued registration No. ~~19443 in Proceeding No.~~ 1,132,323 granted April 1, 1980.
~~193160.~~

2.   GARVEY is a corporation duly organized in
and existing in the State of California.  LIEBERMAN owns all of
the outstanding stock of GARVEY.  KLEIN asserts an equitable
interest in a portion thereof.

3.   HERMAN GOELITZ CANDY CO. is a corporation
duly organized in and existing in the State of California.

4.   GOELITZ is a manufacturer of candy products.
For many years past, GOELITZ has manufactured jelly beans under
a variety of tradenames and trademarks.  Amongst such names has
been "JELLY BELLY" by arrangement with KLEIN and LIEBERMAN.
GOELITZ paid a royalty to KLEIN and/or LIEBERMAN and/or GARVEY
as to those jelly beans marketed under the trademark "JELLY
BELLY".

5.   KLEIN, for many years last past, has been
active in the promotion of "JELLY BELLY", and appeared at trade
shows and on radio and television programs for purposes of
promoting "JELLY BELLY", and the mark has also been exploited
in connection with novelty items including t-shirts, hats and
the like.

6.    The parties hereto intend by this agreement to supersede all previous agreements, and to agree for a marketing of "JELLY BELLY" by GOELITZ and transfer of ownership of the mark "JELLY BELLY" to GOELITZ, subject to the payments herein set forth.

NOW, THEREFORE, the parties to this agreement hereby agree as follows:

FIRST:    The trademark "JELLY BELLY" shall as soon as practical, be, through appropriate action filed with the patent office, transferred to GOELITZ; pending such official transfer, and effective November 1, 1980, all beneficial rights pertaining to such trademark shall be deemed transferred to GOELITZ, together with all rights and interests pertaining to the name, and the right to exploit it, the goodwill of the mark, and the right to use the unique design and style of printing of the "JELLY BELLY" logo, the exclusive right to exploit the mark "JELLY BELLY" in any manner whatsoever, including but not limited to the use of such design and style on novelties including t-shirts, hats and the like, and all goodwill connected with "JELLY BELLY". Any right which KLEIN, LIEBERMAN, GARVEY, or any of them heretofore had or claimed in the phrase "The Original Gourmet Jelly Bean", together with any rights, if any pertaining to the humorous instructions which heretofore were printed by GOELITZ on the jelly bean bags, as well as any rights to the character "Mr. Jelly Belly" likewise are hereby transferred to GOELITZ.

SECOND:    Contemporaneously with the execution of this agreement, GOELITZ has paid One Thousand Dollars ($1,000.00) to ~~KLEIN~~ GARVEY, the receipt of which is hereby acknowledged. Commencing November 1, 1980, GOELITZ shall pay to GARVEY or its

-2-

nominee at the rate of $.17 per pound of all jelly beans sold
by GOELITZ under the mark of "JELLY BELLY", shipped either from
the Oakland plant or shipped by GOELITZ CONFECTIONERY CO. of
North Chicago, an Illinois corporation, whom GOELITZ intends to
license to use the mark "JELLY BELLY".  Provided, however, that
if any shipment is not paid within one hundred twenty days, the
royalty paid on that shipment shall either be refunded to GOELITZ,
or credited.  The payments provided for herein shall be made
monthly by GOELITZ to GARVEY or its nominee, on or before the
15th day of the month, reflecting sales made in the preceding
month.  Provided, further, however, that the monthly payments
shall not exceed Twenty Thousand Dollars ($20,000.00) (such
ceiling pertaining to the aggregate of sales made by both the
Oakland and Chicago plants).  The royalty payments shall continue
through the month of October, 2000, and thereupon shall cease
and no further payments shall be due by reason of this trans-
action.

        THIRD:        If for any two consecutive calendar
months the payments to be made pursuant to paragraph SECOND hereof
have not amounted to at least One Thousand Dollars ($1,000.00) per
month, the mark of "JELLY BELLY" and all rights pertaining
thereto shall, at the option of GARVEY, revert to it or its
nominee, and thereafter the agreement shall be of no further
force and effect, and no further payments would thereafter be
payable pursuant to the agreement.  Unless GARVEY exercises the
option within sixty days next following the expiration of the date
on which the option first may be exercised pursuant to this
paragraph, the rights so to exercise the option shall be deemed
terminated unless and until a subsequent failure to pay at least
One Thousand Dollars ($1,000.00) per month over a consecutive two
months period triggers a new right to exercise such option.

-3-

FOURTH:     During the period in which payments are made in accordance with paragraph SECOND above, KLEIN, LIEBERMAN and GARVEY each shall refrain from promoting in any manner jelly beans manufactured or distributed by any other seller.  If KLEIN, during the period in which payments are made in accordance with paragraph SECOND above, engages in any promotional work pertaining to "JELLY BELLY", he shall do so without additional compensation.

FIFTH:     KLEIN, LIEBERMAN and GARVEY, and each of them, hereby warrant the accuracy of all statements made in paragraphs 1 and 2 of the preamble to this agreement.  They further warrant that they have the right to enter into the agreement set forth in this document, that no other person or entity has any rights whatever in the mark hereinabove referred to or the rights being transferred to GOELITZ by this agreement. Without in any way limiting the generality of the foregoing, they specifically warrant that F. ROBERT FOSSELMAN or "FOSSELMAN'S" has waived or reconveyed any rights he or it may heretofore have been granted in the mark or rights which are the subject of this agreement.

SIXTH:     The parties shall execute all other documents which may be necessary, appropriate or desirable to give effect to the terms of this agreement, including but not limited to documents required to transfer the mark "JELLY BELLY" with the United States Patent Office.

SEVENTH:     GOELITZ shall continue to maintain the quality of the jelly beans under the name "JELLY BELLY". This agreement has effect solely on jelly beans marketed under the name of "JELLY BELLY", and has no effect on that portion of

-4-

its production of jelly beans marketed under its own or some other name. During the period in which payments are made in accordance with paragraph SECOND above, GOELITZ will not produce another starch mini jelly bean in straight (as contrasted to assorted) flavors or colors to replace, substitute or put into direct competition with the "JELLY BELLY". GOELITZ agrees that in the event of the sale of the business of GOELITZ or a part of said business, the successor will agree to the above restrictions.

EIGHTH:     This agreement incorporates all of the warranties and agreements made between the parties. Each of the parties hereby confirms that no representation has been made by any of them inconsistent with the terms of this agreement. The corporate officers executing this agreement on behalf of parties hereto which are corporations hereby represent and warrant that they have the right to bind the corporations on whose behalf they execute this agrement.

IN WITNESS WHEREOF, the parties hereto have executed this agrement this _16th_ day of October, 1980.

_____
DAVID KLEIN

_____
JAY C. LIEBERMAN

GARVEY NUT HOUSE, INC., A Corporation

By: _____
    President

HERMAN GOELITZ CANDY CO., INC.
A California Corporation

By: _____
   (President

-5-

SPOUSAL CONSENT

The undersigned, HELENE S. LIEBERMAN, wife of JAY C. LIEBERMAN, one of the parties to the foregoing agreement states:

To the extent that said agreement deals with any property rights in which she has an interest joins in the foregoing agreement, consents thereto and agrees to be bound thereby.

Dated: _Oct. 16-1980_

_Helene S. Lieberman_
HELENE S. LIEBERMAN

**Herman Goelitz** INC.

947-61ST STREET   OAKLAND, CALIFORNIA 94608

| DATE | INVOICE | AMOUNT |
|------|---------|--------|
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |

11-24/080
1210(8)

3743

PAY   HERMAN GOELITZ INC.   I ⬤⬤⬤ DOLS ⬤⬤ CTS   Dollar-

| CHECK NO. | TO THE ORDER OF | DATE | GROSS AMOUNT | DISCOUNT | CHECK AMOUN |
|-----------|-----------------|------|--------------|----------|-------------|
| 3743 | GARVEY NUT HOUSE, INC. | 10/18/80 | | | $1,000 |

WELLS FARGO BANK
Oakland City Center Office    Oakland, CA 94612

⑈0037430⑈ ⑆121000248⑆0080 042872⑈

# A S S I G N M E N T

WHEREAS, I, JAY C. LIEBERMAN, a citizen of the United States of America, doing business as Garvey Nut House, at 9533 E. Garvey Avenue, So. El Monte, CA  91733, have adopted, used and am using the trademark "JELLY BELLY" for candy; and

WHEREAS, I, JAY C. LIEBERMAN, am the owner of United States Patent and Trademark Office Registration Number 1,132,333 granted April 1, 1980 for the trademark "JELLY BELLY" for candy; and

WHEREAS, HERMAN GOELITZ CANDY CO., INC., a corporation organized under the laws of the State of California whose principal place of business is situated at 947 61st Street, Oakland, CA  94608 is desirous of acquiring said trademark and the registration thereof; together with the goodwill of the business with which said trademark is used and which is symbolized by said trademark and any and all registrations and applications for registration of said trademark;

NOW THEREFORE, for good and valuable consideration, as stated in our "Agreement and Assignment" dated  *October 16, 1980* , receipt of which is hereby acknowledged, said JAY C. LIEBERMAN does hereby sell, transfer, convey and assign unto said HERMAN GOELITZ CANDY CO., INC., its heirs, assigns or other legal representatives, the entire right, title and interest in and to the said trademark and the registration, thereof, No. 1,132,333, and all registrations and applications for registration of said trademark; including the right to apply for the registration of the trademark in foreign countries in its own name and

-1-

to claim any priority rights for such foreign applications to which such
applications are entitled under international conventions, treaties or
otherwise, together with the goodwill of the business in connection with
which said trademark is used and which is symbolized by said trademark.

This Assignment is executed at _Rosemead, Calif._
_____ this _16_ day of _October_ _____, 1980.

By: _Jay C. Lieberman_
JAY C. LIEBERMAN

WITNESS:

_____
_D. K. Klein_

CERTIFICATE OF ACKNOWLEDGEMENT OF EXECUTION OF INSTRUMENT

State of _California_ ) ss
County of _Los Angeles_ )

On this _16th_ day of _October_ _____, 19 _80_, before me
_Beverley J Marzo_ , a Notary Public in and for the said
County and State, residing therein, duly commissioned and sworn,
personally appeared JAY C. LIEBERMAN known to me to be the person whose
name is subscribed to the within instrument, and acknowledged to me that
he executed the same.  IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my official seal the day and year in this certificate first
above written.

OFFICIAL SEAL
BEVERLEY J MARZO
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires MAR 25, 1983

_Beverley J Marzo_
NOTARY PUBLIC

(SEAL)

-2-

# EXHIBIT

# B

Case 1:22-cv-11825-AK   Document 9   Filed 11/01/22   Page 15 of 161

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------x
DAVID KLEIN,

                           Plaintiff,              *Index No.:*

       -against-                      *Plaintiff designates New York*
                                               *County as the place of trial.*

                                               *The basis of the venue is that*
                                             *Defendant conducts business in*
                                             *New York County.*

JELLY BELLY CANDY COMPANY            **SUMMONS**


                          Defendant.
--------------------------------------------------------x
*To the above named Defendant:*

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive  of the day of service (or within 30 days after the service is complete if this summons is not  personally delivered to you within the State of New York); and in case of your failure to appear or  answer, judgment will be taken against you by default for the relief demanded herein.

Dated: May 23, 2022

*Defendant's Address:*
One Jelly Belly Lane,
Fairfield, CA 94533-674

**JAFRI LAW FIRM**

*/s/Esmeralda Famutimi*

By: Esmeralda Famutimi, Esq.
LLM
50 Evergreen Row
Armonk, New York 10504
esmeralda@jafrilawfirm.com
*Attorney for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DAVID KLEIN, <br><br> Plaintiff, <br><br> v. <br><br> JELLY BELLY CANDY COMPANY, <br><br> Defendant. | |

<u>COMPLAINT</u>

NOW COMES Plaintiff David Klein, represented by Jafri Law Firm, and brings this suit against Defendant Jelly Belly Candy Company for libel and collusion with civil conspiracy. This is an action for monetary damages to redress Plaintiff's irreparable damage and loss caused by Defendant.

<u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over this matter in that Defendant duly operates and conducts a substantial amount of business in the State of New York. As such, venue is proper in this county.

<u>BACKGROUND</u>

I.  Factual Background

Plaintiff David Klein is the original founder of the Jelly Belly Company. On October 16, 1980, Plaintiff, Jay C. Lieberman and Herman Goelitz Candy Co., Inc. were parties to a Trademark Assignment and Marketing Agreement. Pursuant to the agreement, Herman Goelitz Candy Co., acquired a trademark for use of the Jelly Belly U.S trademark (number 1,132,233.) Defendant Herman Rowland Sr., the Jelly Belly Candy Company has published false and

Case 1:22-cv-11825-AK   Document 9   Filed 11/01/22   Page 18 of 161

defamatory information about Plaintiff in an effort to rewrite the history and origin of the Jelly Belly jelly bean. Defendant has portrayed Plaintiff as a fake and not the true inventor and founder of the Jelly Belly jelly beans, therefore portraying Plaintiff in a misleading light, which is highly offensive or embarrassing to a reasonable person of ordinary sensibilities. Defendant Jelly Belly Candy Company has published the information with reckless disregard as to its offensiveness.

Defendant Jelly Belly Candy Company has conspired with press release companies and other third parties to further portray Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean. Furthermore, Defendant has attempted to silence Plaintiff and prohibit him from making true statements and representing himself as the original inventor and founder of the Jelly Belly jelly bean in any press release to further Defendant's own economic gain. Newswire has disclosed through reliable sources that Defendant Jelly Belly Candy Company has advised the press not to mention Plaintiff David Klein as the inventor and founder of the Jelly Belly jelly beans and has disputed the earlier press releases issued by Plaintiff. Thus, colluding to misinform the public regarding the true inventor of the Jelly Belly jelly bean. Newswire has informed Plaintiff that they are not permitted to spread truthful information stating that Plaintiff invented the Jelly Belly jelly bean in any of the press releases that he or his partners have sent to Newsire or other media sources. *See* Tab A.

Newswire sent an email to Plaintiff stating:

"We are unable to include mentions of Mr. Klein being the inventor of the Jelly Bean due to the Jelly Bean company advising - after we published a previous release from him - that it disputed said claim." Therefore, further establishing that there was an agreement between the press and Defendant to censor Plaintiff from being the true inventor of the Jelly Belly jelly bean.

On September 20, 2021, The Washington Post published an article titled "A Colorado man found a winning golden ticket. He passed on owning a candy factory." The article identified Plaintiff David Klein as the inventor of the Jelly Belly jelly bean.[1]  However, soon after publication, a correction was added to the article stating:

> *"An earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company. Gustav Goelitz was the founder of the company, which was formally known as the Herman Goelitz Candy Company. The article has been corrected."*

On April 3, 2019, Refinery29 published an article titled "We Planned The Menu For Kim Kardashian's "Zen-Like CBD-Themed" Baby Shower."[2] This article discussed Plaintiff David Klein's candy, referring to him as "Mr. Jelly Belly himself.", with a link to an article discussing the invention of Jelly Belly. Soon after publication, a correction was published on April 4, 2019. The correction stated:

> *"An earlier version of this story incorrectly stated that the creator of Spectrum Confections was the founder of Jelly Belly Candy Company. He came up with the name, Jelly Belly but did not found the company. We regret the error."*

Furthermore, Defendant Jelly Belly Candy Company uses Plaintiff's photo in their factory tour. Evidently, Defendant seems to acknowledge Plaintiff when it comes to economic gain, however, continuously misrepresents to the media the true identity of Plaintiff. *See* Tab B,

## II.    Legal Standard

Defamation is the injury to one's reputation either by written expression, which is *libel*, or by oral expression, which is slander. *See* <u>Morrison v. Nat'l Broad. Co.</u>, 227 N.E.2d 572, 574 (N.Y. 1967). The law of defamation serves to protect an individual's right to one's reputation. *See*

*Gertz v. Welch*, 418 U.S. 323, 343–45 (1974). To establish libel, a plaintiff must prove five elements: "(1) a written defamatory factual statement [of and] concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) damages or per se actionability." *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014). Falsity is a necessary element of a defamation cause of action and because "only 'facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." *Rosner v. Amazon.com*, 18 N.Y.S.3d 155, 157 (2d Dep't 2015). "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Celle v. Filipino Rep. Enters.*, Inc., 209 F.3d 163, 176 (2d Cir. 2000).

To establish a claim of collusion with civil conspiracy, a plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and, (4) resulting damage or injury. *See Treppel v. Biovail Corp.*, Dist. Court, SD, New York (2005).

III.    Analysis

Plaintiff has established multiple written defamatory factual statements concerning the Plaintiff which have been published to a third party. The published articles with corrections instructed by Defendant portray and explicitly state that Plaintiff is not the true inventor and founder of the Jelly Belly jelly bean, this is inarguably false. This misrepresentation and lie is a direct attack on Plaintiff's reputation which he has spent decades building and has caused damage. Thus, Plaintiff has established a cause of action for libel.

Plaintiff has established a claim for collusion with civil conspiracy. An agreement was made between Defendant Jelly Belly Candy Company and Refinery29. This agreement prohibits

Refinery29, a press company to spread truthful information stating that Plaintiff invented the Jelly Belly jelly bean. An overt act in furtherance of this agreement was established on April 3, 2019, when Refinery29 published a correction. This correction misrepresented the original founder and creator of the Jelly Belly Candy Company. This overt act and the intentional participation of it was intended to further the economic gain of Defendant and further misrepresent the actual founder and creator of the jelly bean. An agreement was also made by The Washington Post on September 20, 2021  when the Washington Post retracted Plaintiff as the founder and creator of the Jelly Belly Candy Company. An overt act in furtherance of this agreement was established when a correction was published at the direction of Defendant. This act was intentional, deliberate, and not the first instance of Defendant's mischaracterization of the foundation of the Jelly Belly Company simply for economic advantage. Thus, resulting in the economic and reputational harm of Plaintiff. Defendant's intentional actions have resulted in irreparable damage and loss to Plaintiff David Klein. Newswire received specific instructions that it is not allowed to give Plaintiff any media coverage that accurately and truthfully describes his role in inventing and founding the Jelly Belly jelly bean. Defendant also misinformed Google that the inventor of Jelly Belly Jelly Beans is Gustav Goelitz and not Plaintiff David Klein.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein constitutes libel, collusion and civil conspiracy.

B. An injunction and order permanently restraining Defendant from prohibiting the publication of Plaintiff as the founder and creator of the Jelly Belly jelly bean.

Case 1:22-cv-11825-AK   Document 9   Filed 11/01/22   Page 22 of 161

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of identifying as the creator of Jelly Belly jelly bean.

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages.

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable  attorney's fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,


                                                                       JAFRI LAW FIRM

Dated: May 23, 2022
          Armonk, NY
                                          By: /s/ Esmeralda Famutimi
                                           Esmeralda Famutimi,
                                           Esq., LLM
                                           50 Evergreen Row
                                           Armonk, NY 10504
                                           Esmeralda@jafrilawfirm.com
                                           t: (800)593-7491
                                           f: (224)228-6721
                                           *Counsel for Plaintiff*

# TAB A

Case 1:22-cv-11825-AK Document 8 Filed 01/04/23 Page 24 of 161

4/16/22, 9:16 AM                    Gmail - Fwd: ACTION REQUIRED: Your Press Release is on HOLD

 Gmail                              Stephanie Thirtyacre <tyblossom@gmail.com>

---

### Fwd: ACTION REQUIRED: Your Press Release is on HOLD

5 messages

---

**Ashley Thirtyacre** <ashley@thegoldticket.com>              Thu, Nov 12, 2020 at 5:53 PM
To: tyblossom@gmail.com

---------- Forwarded message ---------
From: **Newswire** <editorial-system@newswire.com>
Date: Thu, Nov 12, 2020 at 5:10 PM
Subject: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

---

## NEWSWIRE

Hi Ashley,

Thank you for your latest submission, The Hunt for the Candyman's Treasure
Continues. We have reviewed your press release and our editorial team has
requested additional actions be taken:

**General comments:**

Thank you for sharing your news with us. Before we can send this release
to our distribution partner, we just need this sentence in the fourth
paragraph revised by replacing "founder" with "creator". Our partner may
require said change, per guidance they provided following the publication
of a previous Tricky Treasures press release that was submitted to
Newswire under a different account --

"David Klein, The Candyman and founder of Jelly Belly® jelly beans, has
been overjoyed at the reception everyone has had to the Candyman's
Treasure Hunt."

Please revise and resubmit when ready, and we'll then send the release to
our partner for their own review.

Your release will remain on HOLD until action has been taken. Please feel free to
revise/edit your press release here:

Case 1:22-cv-11825-AK Document 8 Filed 11/01/22 Page 25 of 161

https://tricky-treasures.newswire.com/manage/publish/pr/edit/21255421

For any questions please contact us by replying back to this message or emailing editorial@newswire.com for further clarification.

Once changes have been made and resubmitted, we will review the press release for approval. If changes meet our acceptability guidelines, we will approve and schedule your release for the previously requested date/time unless provided with an updated date/time.

Please note any email campaigns created coinciding with this release may not reflect changes suggested/processed by editorial team. Please revise your email campaign accordingly.

Thank you!

Best Regards,

Newswire Editorial Team

Newswire.com
5 Penn Plaza, 23rd Floor
New York, NY 10001



Server Time: 2020-11-12 22:10:02

 Virus-free. www.avast.com

---

**tyblossom** <tyblossom@gmail.com>
To: Ashley Thirtyacre <ashley@thegoldticket.com>

Thu, Nov 12, 2020 at 5:59 PM

Hi,

Can we please get a copy of what you're basing the needed change on?

Thank you,

Ashley

[Quoted text hidden]

---

**Ashley Thirtyacre** <ashley@thegoldticket.com>
To: tyblossom@gmail.com

Fri, Nov 13, 2020 at 10:04 AM

---------- Forwarded message ---------
From: **Jackson Falconer (Newswire.com)** <editorial@newswire.com>
Date: Fri, Nov 13, 2020, 1:02 AM
Subject: [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

Case 1:22-cv-11825-AK   Document 8   Filed 11/04/22   Page 26 of 161

##- Please type your reply above this line -##

Your request (59814) has been updated. To add additional comments, reply to this email.



**Jackson Falconer** (Newswire.com)

Nov 13, 2020, 1:02 AM EST

Hi Ashley,

Apologies for the delay in reply. We've heard back from our distribution partner, and they advised that they would want the change I mentioned in my first message (replacing "founder" with "creator" in this sentence:

"David Klein, The Candyman and founder of Jelly Belly® jelly beans, has been overjoyed at the reception everyone has had to the Candyman's Treasure Hunt."

They did not provide an elaborate reply, however, they advised us in September that they would be sensitive mentions of the word "founder" when concerning Jelly Bean or their products in new TGT press releases, due to a release that JB published following the first release's publication: https://news.jellybelly.com/the-gold-ticket-candy-factory-giveaway-contest

Let us know if you're fine with said change, and if you have any other questions.



**Jackson Falconer** (Newswire.com)

Nov 12, 2020, 6:55 PM EST

Hi Ashley,

Thank you for your prompt reply. We're asking our distribution partner for clarification on the mentioned guidance. Once we have that we'll relay it to you. Sorry for any inconvenience, but we simply want to be sure that your release is accepted by them without issue prior to scheduling it for distribution.



**Ashley Thirtyacre**

Nov 12, 2020, 6:02 PM EST

Hi,

Can we please get a copy of what you're basing the needed change on?

Thank you,

Ashley

Virus-free. www.avast.com (https://www.avast.com/sig-email?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail&utm_term=link)

On Thu, Nov 12, 2020 at 5:10 PM Newswire <editorial-system@newswire.com> wrote:

Hi Ashley,

Thank you for your latest submission, The Hunt for the Candyman's Treasure Continues. We have reviewed your press release and our editorial team has requested additional actions be taken:

General comments:

Thank you for sharing your news with us. Before we can send this release to our distribution partner, we just need this sentence in the fourth paragraph revised by replacing "founder" with "creator". Our partner may require said change, per guidance they provided following the publication of a previous Tricky Treasures press release that was submitted to Newswire under a different account --

"David Klein, The Candyman and founder of Jelly Belly® jelly beans, has been overjoyed at the reception everyone has had to the Candyman's Treasure Hunt."

Please revise and resubmit when ready, and we'll then send the release to our partner for their own review.

Your release will remain on HOLD until action has been taken. Please feel free to revise/edit your press release here:

https://tricky-treasures.newswire.com/manage/publish/pr/edit/21255421

For any questions please contact us by replying back to this message or emailing editorial@newswire.com for further clarification.

Once changes have been made and resubmitted, we will review the press release for approval. If changes meet our acceptability guidelines, we will approve and schedule your release for the previously requested date/time unless provided with an updated date/time.

Please note any email campaigns created coinciding with this release may not reflect changes suggested/processed by editorial team. Please revise your email campaign accordingly.

Thank you!

Best Regards,

Newswire Editorial Team

Newswire.com (https://www.newswire.com/)
5 Penn Plaza, 23rd Floor
New York, NY 10001

Server Time: 2020-11-12 22:10:02

Virus-free. www.avast.com (https://www.avast.com/sig-email?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail&utm_term=link)

Case 1:22-cv-11825-AK   Document 8   Filed 11/04/22   Page 28 of 161

This email is a service from Newswire.com. Delivered by Zendesk

**Ashley Thirtyacre** <ashley@thegoldticket.com>                 Mon, Nov 16, 2020 at 8:58 AM
To: Stephanie Thirtyacre <tyblossom@gmail.com>

---------- Forwarded message ---------
From: **Jackson Falconer (Newswire.com)** <editorial@newswire.com>
Date: Mon, Nov 16, 2020 at 1:15 AM
Subject: [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

##- Please type your reply above this line -##

Your request (59814) has been updated. To add additional comments, reply to this email.



**Jackson Falconer** (Newswire.com)
Nov 16, 2020, 1:15 AM EST

Hi Ashley,

"Is there a way we are allowed to submit a "Correction" to their press release?" – Our distribution partners would not want to step into the ring, so to speak, on such a dispute. Also, I do not think they would consider changing their mind about their requirement. I am sorry for any inconvenience.



**Ashley Thirtyacre**
Nov 14, 2020, 1:40 PM EST

Hello Jackson,

Is there any way that we can submit information that proves our statement is correct in order to get our press release used as it stands or is there a way we are allowed to submit a "Correction" to their press release?

Please watch Candyman The David Klein Story which can be seen on Amazon Prime for free.

We can also send a copy of the contract where The Jelly Belly® Co bought the trademark from David and his partner.

We can also show a book reference that he owned The Jelly Belly Co. as well as a canceled check from 1976.

[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]

Virus-free. www.avast.com

Case 1:22-cv-11825-AK   Document 8-6   Filed 11/04/22   Page 29 of 161
4/18/22, 9:16 AM                    Gmail - [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD



**Ashley Thirtyacre** <ashley@thegoldticket.com>                    Mon, Apr 26, 2021 at 2:00 PM
To: Stephanie Thirtyacre <tyblossom@gmail.com>

---------- Forwarded message ---------
From: **David T. (Newswire.com)** <editorial@newswire.com>
Date: Thu, Nov 19, 2020, 5:51 PM
Subject: [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

##- Please type your reply above this line -##

Your request (59814) has been updated. To add additional comments, reply to this email.



**David T**. (Newswire.com)
Nov 19, 2020, 5:50 PM EST

Hello Ashley,

I hope you are doing well today. Thank you for reaching out to us with your request.

After reviewing your account, you have been issued a refund in the amount of $404.10 for your purchase of the Newswire Digital Plus distribution per your request. You should have received a separate email to the email address on file with an updated receipt. Please allow 3 – 7 business days for your credit issuer to process this request and for your refund to appear on your credit statement.

Please let me know if you have any additional questions or concerns and I will be happy to assist you. :)

Warmest Regards,

David Tadros
*Client Success Specialist*
Newswire
Office: (800)-713-7278
Direct: (917)-809-6701
Website: www.newswire.com
Facebook: Online Press Release Distribution

*We are rated #1 in Customer Service by G2 Crowd*

*We are rated the #1 PR Software for 2018*

Please consider the environment prior to printing this e-mail. Thank you.

The information contained in this communication is confidential. This communication is intended only for the use of the individual or entity named as recipient. If the reader of this communication is

Case 1:22-cv-11825-AK Document 8 Filed 01/05/23 Page 30 of 161

not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.



**Jackson Falconer** (Newswire.com)
Nov 19, 2020, 2:34 PM EST

Hi Ashley,

Thank you for the update. I'll go ahead and forward your request to our Client Services team, who will address within 1–4 business days. Please let us know if you need anything else.



**Ashley Thirtyacre**
Nov 19, 2020, 12:56 PM EST

Hello Jackson,

After discussing it with our team, we've actually decided that we would like to cancel the press release for now so that we can rewrite it and submit a new one in the future. Is it possible to get a refund for the press release?

Thank you,
Ashley

Virus-free. www.avast.com (https://www.avast.com/sig-email?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail&utm_term=link)



**Jackson Falconer** (Newswire.com)
Nov 18, 2020, 11:21 PM EST

Hi Ashley,

We saw that you resubmitted with new timing instructions and just want to be sure that we're in the clear to proceed. Can you please confirm that you're fine with the mentioned revision in the fourth paragraph's first sentence?

[Quoted text hidden]

[Quoted text hidden]

# TAB B



**People weekly** — October 17, 1977 • 60¢

The tube's not so boob: Dick Cavett is back
Debby Boone lights up the pop charts
'J' writes a 2nd sensuous book

*People Magazine*
*David Klein*
*October 17, 1977*

## STYLE IN

FINANCIALLY SPEAKING, DAVID KLEIN WILL NEVER TAKE A BATH WITH HIS GOURMET JELLY BEANS

"Mr. Jelly Belly" will go to any lengths to convince the world that his candy is worth a stiff $2.50 a pound.

CONTINUED

### Style CONTINUED

## There are 25 flavors now, but watch for pumpkin pie

Jelly beans, a French and Turkish invention of the mid-19th century, are going modern after 125 years. Their plain Jane image has been replaced by Jelly Bellies, called "the Rolls-Royce of jelly beans." Their renaissance is the handiwork of David Klein, an eccentric 31-year-old Californian who used to be a lawyer and now wants only to be known as Mr. Jelly Belly.

Klein makes his gourmet jelly beans smaller and, using mostly natural ingredients, in 25 flavors, such as chocolate banana, root beer, cream soda and mai-tai. Watermelon (green outside, pink inside) is the most popular new taste.

So far this year Klein has shipped more than 20 million Jelly Bellies to Bloomingdale's in New York. When Marshall Field sends out its Christmas catalogue offering Jelly Bellies, Klein predicts enough business to make him a millionaire before the year is over. He will also ship his beans at $2.50 a

pound postage free anywhere in the U.S. from his Alhambra headquarters.

Growing up in Van Nuys, Calif, Klein was a precocious, overweight child who loved math and comic books (he hasn't changed much). He graduated from UCLA in economics with straight A's while paying his way with his first business, Big Dave's Popcorn. Moving on to the Southwestern University School of Law in Los Angeles, Klein passed the California bar in 1972, but then checked the Yellow Pages. "I just didn't want to be another name on a huge list of lawyers," Klein explains. "Besides, I would have had to buy a suit and a tie." In the same phone book, he noticed only a few wholesale nut suppliers. Soon he was selling nuts to ice cream makers and health food stores. ("It's a great business," he enthuses. "Once you get an account you keep it.") Pecans inspired a business friendship with Wally "Famous" Amos, the chocolate chip

cookie king, and Klein decided to launch his own elite single-product line in July 1976.

Business was slow at first. "Some days I gave away more samples than I sold." An AP story that appeared in more than 100 newspapers in October 1976 was the turning point. Klein continues to work far into the night in the rented tract house he shares with wife Rebecca, 26, and son Bert, 2, in Temple City. "When you own a business, if you don't keep thinking, you're dead," Klein says. He's thinking. There will be a pumpkin pie Jelly Belly by Halloween and a sugar-free variety by Christmas. Some flavors, like Coca Cola and pizza, never made it past the drawing board. So how to tell a real Jelly Belly from the competition? Bite the bean in half, Klein urges. "If the inside is white, it's a fake."

— SUZY KALTER

Klein, who tends the store as well as runs the business, helps a fellow jelly bean freak pick from among the 25 flavors.

Photographs by Mark Sennet/Camera 5

85

# EXHIBIT

# C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID KLEIN, | Civil Action No. 22-cv-05629-JPC |
| Plaintiff, | |
| v. | |
| JELLY BELLY CANDY COMPANY, | |
| Defendant. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## JELLY BELLY CANDY COMPANY'S MOTION TO DISMISS

---

GREENBERG TRAURIG, LLP
Eric D. Wong, Esq.
One Vanderbilt Avenue
New York, NY 10017
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

-and-

Kurt Kappes (*pro hac vice* application forthcoming)
GREENBERG TRAURIG, LLP
1201 K Street
Suite 1100
Sacramento, CA 95814
(916) 442-1111
(916) 448-1709 (fax)

*Attorneys for Defendant*
*Jelly Belly Candy Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

STANDARD OF REVIEW ..................................................................................... 5

LEGAL ARGUMENT ............................................................................................ 6

I.      Plaintiff's Libel Claim Should Be Dismissed ................................................ 6

        A.      Plaintiff's Libel Claim Is Barred By The Statute Of Limitations ............ 6
        B.      The Complaint Does Not State A Claim For Libel ................................ 8

                1.      The Complaint Does Not Allege A False And Defamatory
                        Statement ............................................................................. 8

                        a.      The Complaint Does Not Allege A False Statement ...................... 9
                        b.      The Complaint Does Not Allege A Plausibly Defamatory
                                Statement ................................................................... 11

                2.      The Complaint Does Not Allege A Statement By Jelly Belly ................. 13
                3.      The Complaint Does Not Allege Actual Malice ....................................... 14

II.     Plaintiff's Civil Conspiracy Claim Should Be Dismissed ............................. 16

        A.      Plaintiff's Civil Conspiracy Claim Is Barred By The Statute Of
                Limitations ................................................................................... 17
        B.      Plaintiff's Civil Conspiracy Claim Should Be Dismissed Because Plaintiff
                Fails To State A Claim For The Underlying Tort ................................. 17
        C.      Plaintiff's Civil Conspiracy Claim Should Be Dismissed Because Plaintiff
                Does Not Allege Any Agreement By Jelly Belly ................................. 18

III.    To The Extent Any Portion Of Plaintiff's Complaint Survives, Plaintiff Should Be
        Required To Replead In Compliance With Fed. R. Civ. P. 10 ......................... 20

CONCLUSION ..................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alan v. Wells Fargo Bank, N.A.*,
  604 Fed. App'x 863 (11th Cir. 2015) ...................................................................................8

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001) ................................................................................................8

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (Cal. 1994) ................................................................................................17

*Armstrong v. Simon & Schuster, Inc.*,
  721 N.Y.S.2d 340 (N.Y. App. Div. 1st Dep't 2001) .........................................................16

*Arnold v. KPMG LLP*,
  543 F. Supp. 2d 230 (S.D.N.Y. 2008) ..............................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................5, 6

*Aslin v. Univ. of Rochester*,
  No. 17-CV-06847, 2019 WL 4112130 (W.D.N.Y. Aug. 28, 2019) ...................................12

*AW Indus., Inc. v. Sleepingwell Mattress Inc.*,
  No. 10-CV-04439 (NGG) (RER), 2011 WL 4404029 (E.D.N.Y. Aug. 31, 2011) ..............................................................................................................................10

*Babiker v. Ross Univ. Sch. of Med.*,
  No. 98-CV-1429 (SHS) (THK), 1999 WL 33290 (S.D.N.Y. Jan. 22, 1999) .........................19

*Barbuto v. Miami Herald Media Co.*,
  No. 21-CV-20608, 2022 WL 123906 (S.D. Fla. Jan. 13, 2022) .........................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................5, 14, 20

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ................................................................................9

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) ..................................................................6, 15, 16

*Brady v. Lynes*,
  No. 05-CV-6540 (DAB), 2008 WL 2276518 (S.D.N.Y June 2, 2008) ..............................17

*Building Indus. Elec. Contractors Ass'n v. City of New York*,
  678 F.3d 184 (2d Cir. 2012) ................................................................................................6

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021) ..............................................................................14

*Cafferty v. Southern Tier Publishing Co.*,
  226 N.Y. 87 (N.Y. 1919) ..................................................................................................11

*Celle v. Filipino Reporter Enters.*,
    209 F.3d 163 (2d Cir. 2000)...........................................................................13

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998) ................................................................13

*Clear Marine Ventures, Ltd. v. Brunswick Corp.*,
    No. 08-CV-22418, 2009 WL 10667096 (S.D. Fla. Oct. 8, 2009)...................19

*Cohn v. National Broadcasting Co.*,
    50 N.Y.2d 885 (N.Y. 1980) ...........................................................................11

*Couloute v. Ryncarz*,
    No. 11-CV-5986 (HB), 2012 WL 541089 (S.D.N.Y. Feb. 17, 2012) ....................12

*Deluca v. Accessit Group, Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)................................................................4

*Dillon v. City of New York*,
    704 N.Y.S.2d 1 (N.Y. App. Div. 1st Dep't 1999) .........................................8, 11, 12

*Egiazaryan v. Zalmayev*,
    No. 11-CV-2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011).................16

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016).............................................................14

*Erie R.R. v. Tompkins*,
    304 U.S. 64 (1938).........................................................................................6

*Esoimeme v. Wells Fargo Bank*,
    No. 10-CV-2259 (JAM) (EFB), 2012 WL 3647786 (E.D. Cal. Aug. 22, 2012) ....................19

*Fairstein v. Netflix, Inc.*,
    553 F. Supp. 3d 48 (S.D.N.Y. 2021)..............................................................9, 12

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002)..............................................................................13

*Foster v. Churchill*,
    87 N.Y.2d 744 (N.Y. 1996) ...........................................................................9, 11

*Gargiulo v. Forster & Garbus Esqs.*,
    651 F. Supp. 2d 188 (S.D.N.Y. 2009)...............................................................8

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).......................................................................................14

*Gibson v. SCE Grp., Inc.*,
    391 F. Supp. 3d 228 (S.D.N.Y. 2019).............................................................15

*Ginx, Inc. v. Soho Alliance*,
    720 F. Supp. 2d 342 (S.D.N.Y. 2010).............................................................10

*Guccione v. Hustler Mag., Inc.*,
    800 F.2d 298 (2d Cir. 1986)............................................................................9

*Heller v. NBCUniversal, Inc.*,
    No. 15-CV-09631-MWF, 2016 WL 6583048 (C.D. Cal. June 29, 2016) ..................9

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)..................................................................................6

*Jacquemyns v. Spartan Mullen Et Cie, S.A.*,
  No. 10-CV-1586 (CM) (FM), 2011 WL 348452 (S.D.N.Y. Feb. 1, 2011) ............................19

*James v. Gannett Co.*,
  40 N.Y.2d 415 (N.Y. 1976) ...................................................................................9

*Karedes v. Ackerley Grp., Inc.*,
  423 F.3d 107 (2d Cir. 2005)...................................................................................9

*Karedes v. Vill. of Endicott*,
  No. 01-CV-1395, 2004 WL 1683146 (N.D.N.Y. Mar. 22, 2004) ..........................................12

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
  494 Fed. App'x 153 (2d Cir. 2012)...........................................................................10

*Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting Sys., Inc.*,
  844 F.2d 955 (2d Cir. 1988)...................................................................................9

*Lerman v. Flynt Distrib. Co.*,
  745 F.2d 123 (2d Cir. 1984)..................................................................................14

*Lian v. Sedgwick James of N.Y., Inc.*,
  992 F. Supp. 644 (S.D.N.Y. 1998) .......................................................................9, 11

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001).........................................................................6

*Lund v. Gifford*,
  No. B259366, 2016 WL 7031517 (Cal. Ct. App. Dec. 2, 2016) ............................................13

*Marino v. Grupo Mundial Tenedora, S.A.*,
  810 F. Supp. 2d 601 (S.D.N.Y. 2011).......................................................................18

*Matonis v. Care Holdings Grp., L.L.C.*,
  423 F. Supp. 3d 1304 (S.D. Fla. 2019) ......................................................................8

*Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*,
  913 F. Supp. 2d 780 (N.D. Cal. 2012) ......................................................................17

*Murphy v. Morlitz*,
  No. 15-CV-7256 (VSB), 2017 WL 4221472 (S.D.N.Y. Sept. 21, 2017) ...............................17

*Offor v. Mercy Med. Ctr.*,
  98 N.Y.S.3d 69 (N.Y. App. Div. 1st Dep't 2019) ....................................................7

*Orenstein v. Figel*,
  677 F. Supp. 2d 706 (S.D.N.Y. 2009)........................................................................16

*Ostrer v. Aronwald*,
  567 F.2d 551 (2d Cir. 1977)..................................................................................19

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019)...................................................................................8

*Papasan v. Allain*,
  478 U.S. 265 (1986)..............................................................................................6

iv

*Perez v. Lopez*,
　948 N.Y.S.2d 312 (N.Y. App. Div. 2nd Dep't 2012) .......................................................18

*Perez v. Violence Intervention Program*,
　984 N.Y.S.2d 348 (N.Y. App. Div. 1st Dep't 2014) ......................................................15

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
　No. 08-CV-466, 2010 WL 1408391 (M.D. Fla. Apr. 6, 2010)........................................19

*PQ Labs, Inc. v. Yang Qi*,
　No. 12-CV-0450 (CW), 2012 WL 2061527 (N.D. Cal. June 7, 2012)...................................19

*Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*,
　822 N.Y.S.2d 375 (Sup. Ct. New York Co. 2006) ...........................................................7

*Ray Legal Consulting Grp. v. DiJoseph*,
　37 F. Supp. 3d 704 (S.D.N.Y. 2014)..............................................................................18

*Reich v. Lopez*,
　38 F. Supp. 3d 426 (S.D.N.Y 2014)...............................................................................17

*Rothstein v. UBS AG*,
　708 F.3d 82 (2d Cir. 2013)................................................................................................6

*Samara v. Juice Plus+ Co., LLC*,
　No. 6:20-CV-520 (GAP) (EJK), 2021 WL 8894301 (M.D. Fla. Mar. 1, 2021) ....................17

*Shamley v. ITT Corp.*,
　869 F.2d 167 (2d Cir. 1989)..............................................................................................7

*Smith v. Cuban American National Foundation*,
　731 So. 2d 702 (Fla. Dist. Ct. App. 1999) ......................................................................9

*Staehr v. Mack*,
　No. 07-CV-10368, 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011) .........................................10

*Star Funding, Inc. v. Vault Mins., LLC*,
　No. 15-CV-03026 (GBD), 2016 WL 10951285 (S.D.N.Y. Sept. 1, 2016) .............................19

*Summit Bank v. Rogers*,
　206 Cal. App. 4th 669 (2012) .........................................................................................9

*Tosti v. Silver Star Auto Res. LLC*,
　No. 18-CV-06640 (DLI) (CLP), 2020 WL 5912398 (E.D.N.Y. Oct. 6, 2020) .......................6

*Vasile v. Dean Witter Reynolds Inc.*,
　20 F. Supp. 2d 465 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)...........................17

**Statutes and Rules**

Cal. Civ. Pro. Code § 45 ........................................................................................................8

Fed. R. Civ. P. 10.............................................................................................................1, 20

Fed. R. Civ. P. 10(b) ...........................................................................................................20

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 5

Fed. R. Civ. P. 12(e) .......................................................................................................1, 20

N.Y. C.P.L.R. 215(3) .................................................................................................................6

Defendant Jelly Belly Candy Company ("Jelly Belly") respectfully submits this Memorandum of Law in support of its motion to dismiss the Complaint filed by plaintiff David Klein ("Plaintiff") with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for a more definitive statement pursuant to Fed. R. Civ. P. 12(e).

## PRELIMINARY STATEMENT

This baseless lawsuit is merely the latest in a long series of public relations stunts by Plaintiff to capitalize off of Jelly Belly's name and goodwill for his own gain. The parties have not had any relationship for decades, but the disgruntled Plaintiff continues to complain that he has not received the recognition he believes he is owed related to Jelly Belly® jelly beans. Now, Plaintiff concocts a broad conspiracy against him, claiming that Jelly Belly purportedly colluded with "the press" and defamed him by "portray[ing] Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean" and "misrepresent[ing] the original founder and creator of the Jelly Belly Candy Company." Compl., at pp. 2, 5 of 6.[1] Plaintiff's claims for libel and civil conspiracy are barred in part by the statute of limitations, and otherwise fail to state a claim because they are not supported by factual allegations in the Complaint.

Under New York law, Plaintiff's libel claim is subject to a one-year statute of limitations, which runs from the publication of each allegedly defamatory statement. Plaintiff bases his claims on three statements: an article published on April 4, 2019, emails sent on November 12, 2020 through November 19, 2020, and an article published on September 20, 2021. The statute of limitations based on the April 4, 2019 article and the November 2020 e-mails expired long before

---

[1] Plaintiff's Complaint, submitted herewith as Exhibit A to the Affirmation of Eric D. Wong ("Wong Aff.") for the Court's convenience, eschews numbered paragraphs in violation of Fed. R. Civ. P. 10, and is simply a ranting, narrative argument unsupported by factual allegations.

Plaintiff filed the Complaint on May 23, 2022.  Plaintiff's claims based on those alleged statements are time-barred.

Plaintiff also fails to plead the elements of a claim for libel.  Plaintiff does not allege any false or defamatory statement about him.  The September 20, 2021 article (the only statement published within the statute of limitations) accurately states that Plaintiff was not a founder of the Jelly Belly Candy Company.  Specifically, The Washington Post stated that an earlier version of an article it published about Plaintiff "misidentified David Klein as the founder of the Jelly Belly Candy Company" and that "Gustav Goelitz was the founder of the company, which was formally [*sic*] known as the Herman Goelitz Candy Company."  *Id*. at p. 3 of 6.  This is true.  David Klein is not the founder of the Jelly Belly Candy Company, formerly known as the Herman Goelitz Candy Company.  The Goelitz family candy business is more than 100 years old and was originally founded by Gustav Goelitz.  These facts are confirmed by the corporate documents of Jelly Belly and its predecessor entities (of which the Court should take judicial notice).  Indeed, Plaintiff has acknowledged these facts in various interviews.  Moreover, there is no plausible way to read a defamatory connotation into The Washington Post's statement that Gustav Goelitz was the founder of the Jelly Belly Candy Company, which was formerly known as the Herman Goelitz Candy Company.  In deciding a motion to dismiss, a court may not strain to find defamation where none exists, and none exists here.

Plaintiff only recites the remaining elements of a libel claim and does not plead any facts to state his claim.  For example, the statements at issue were all made by third parties (media organizations), not Jelly Belly, and Plaintiff's claim against Jelly Belly rests solely on his bald assertion that the statements were made at Jelly Belly's direction.  However, Plaintiff does not allege any facts supporting this assertion, much less plead, as he must, facts plausibly suggesting

that Jelly Belly was responsible for or ratified the media's publications. Similarly, because he is a public figure, Plaintiff must plead that Jelly Belly acted with actual malice, *i.e.*, that Jelly Belly knew the statement was false or had serious doubts about its truth. Plaintiff's conclusory assertion that Jelly Belly was "reckless" is not sufficient, and the Complaint is devoid of any factual allegations stating that element of a libel claim.

Plaintiff similarly fails to state a claim for civil conspiracy. The claim is derivative of Plaintiff's libel claim, so the same statute of limitations applies, and Plaintiff's failure to plead the elements of the underlying libel claim also requires the dismissal of his civil conspiracy claim. Moreover, Plaintiff fails to plead any agreement between Jelly Belly and a third party that might state a claim for civil conspiracy. Instead, he merely recites the legal elements of the claim, without pleading any facts. Courts uniformly dismiss such attempts to state a conspiracy claim. Accordingly, Plaintiff's claims against Jelly Belly for libel and civil conspiracy should be dismissed.

## **STATEMENT OF FACTS**

Jelly Belly is a candy manufacturer most well-known for its Jelly Belly® jelly beans. More than forty years ago, Jelly Belly, then called the Herman Goeltez Candy Company, acquired the Jelly Belly® trademark from Plaintiff pursuant to a Trademark Assignment and Marketing Agreement dated October 16, 1980. *See* Compl., at p. 1 of 6.

Plaintiff alleges that he is the "original founder of the Jelly Belly Company" and the "original inventor and founder of the Jelly Belly jelly bean," and claims that Jelly Belly "has published false and defamatory information about Plaintiff in an effort to rewrite the history and origin of the Jelly Belly jelly bean" by "portray[ing] Plaintiff as a fake and not the true inventor and founder of the Jelly Belly jelly beans." *Id*. at pp. 1-2 of 6.

First, the Complaint quotes an April 4, 2019 correction to an article published by Refinery29, in which Refinery29 stated, "[a]n earlier version of this story incorrectly stated that the creator of Spectrum Confections was the founder of Jelly Belly Candy Company." *Id*. at p. 3 of 6; *see also* Wong Aff. Ex. B.[2] Plaintiff alleges that this correction "misrepresented the original founder and creator of the Jelly Belly Candy Company." Compl., at p. 5 of 6. The Complaint does not identify any statement made by Jelly Belly. Rather, Plaintiff conclusorily asserts that there was some unidentified "agreement" between Jelly Belly and Refinery29 that purportedly "prohibit[ed]" Refinery29 from "stating that Plaintiff invented the Jelly Belly jelly bean." *Id*. at pp. 4-5 of 6. The Complaint does not allege any facts that support that contention.

Second, the Complaint alleges that Jelly Belly "has advised the press not to mention Plaintiff David Klein as the inventor and founder of the Jelly Belly jelly beans." *Id*. at p. 2 of 6. Plaintiff does not identify any communications between Jelly Belly and "the press" and does not identify any statements by Jelly Belly at all. Rather, Plaintiff claims that this was conveyed to him by Newswire, a press release distribution company, in e-mails dated November 12, 2020 through November 19, 2020, and that Newswire purportedly heard it from "reliable sources." *See id*. at p. 2 of 6 and Tab A. However, the e-mails Plaintiff attached to the Complaint contradict that story, and instead reveal that the statement Plaintiff attempts to attribute to Jelly Belly was actually made by one of Newswire's press release distributors. Specifically, Newswire advised Plaintiff that its distributor "may require" a change to a press release submitted by Plaintiff for distribution, "per guidance they [the distributor] provided following the publication of a previous [] press release" by Plaintiff. *See id*. at Tab A. Indeed, contrary to Plaintiff's allegation that Jelly Belly "advised the press" to do anything, when Plaintiff's representative asked Newswire for more information,

---

[2] The articles are incorporated into the Complaint by reference and can be considered by the Court in deciding this motion to dismiss. *See Deluca v. Accessit Group, Inc*., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).

Newswire confirmed that neither it nor its distributor received instructions from Jelly Belly, but rather that its distributor simply saw a press release by Jelly Belly, which accurately stated that the Jelly Belly Candy Company was founded by Gustov Goelitz (the release also accurately credited Plaintiff for coming up with the name "Jelly Belly"). *See id.* (November 12, 2020 and November 13, 2020 emails, and link to https://news.jellybelly.com/the-gold-ticket-candy-factory-giveaway-contest/ contained therein).

Third, the Complaint quotes a correction to a September 20, 2021 article by The Washington Post, in which Plaintiff alleges The Washington Post "retracted Plaintiff as the founder and creator of the Jelly Belly Candy Company." *Id.* at p. 5 of 6. The correction stated:

> An earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company. Gustav Goelitz was the founder of the company, which was formally [*sic*] known as the Herman Goelitz Candy Company. The article has been corrected.

*Id.* at p. 3 of 6; *see also* Wong Aff. Ex. C.

The Complaint does not allege any statement by Jelly Belly. Instead, Plaintiff baldly asserts that the "correction was published at the direction of Defendant." Compl., at p. 5 of 6. The Complaint does not allege any facts that support that contention.

Plaintiff attempts to assert claims for libel and civil conspiracy. *See id.* at pp. 3-5 of 6.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a

plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

While a court should accept well-pleaded factual allegations contained within a complaint as true, *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 188 (2d Cir. 2012), it "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig*., 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id*. at 405-06 (citing *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1095 (2d Cir. 1995)).

## **LEGAL ARGUMENT**

### I.   **Plaintiff's Libel Claim Should Be Dismissed**

Plaintiff's libel claim should be dismissed because (A) it is barred in part by the applicable statute of limitations, and (B) the Complaint fails to plead:  (1) a false and defamatory statement; (2) by Jelly Belly; or (3) actual malice by Jelly Belly.

#### A.   **Plaintiff's Libel Claim Is Barred By The Statute Of Limitations**

Libel claims are subject to a one-year statute of limitations.  *See* NY CPLR 215(3).[3] "Under New York law, "[a] cause of action for defamation accrues when the material is

---

[3] Plaintiff cites New York law in his Complaint (*see* Compl., at pp. 3-4 of 6), but New York has no connection to any of the alleged facts or claims in this action.  Regardless, "[w]hen jurisdiction in a case is premised upon diversity of citizenship, the . . . statutes of limitations of the state in which the court sits are applied."  *Tosti v. Silver Star Auto Res. LLC*, No. 18-CV-06640 (DLI) (CLP), 2020 WL 5912398, at *2 (E.D.N.Y. Oct. 6, 2020) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

published." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989)); *see also Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*, 822 N.Y.S.2d 375, *2 (Sup. Ct. New York Co. 2006) ("This period runs from the date of the initial publication of the defamatory writing, and not from the date of the publication's distribution."). A separate statute of limitations applies to each allegedly defamatory statement. *See Offor v. Mercy Med. Ctr.*, 98 N.Y.S.3d 69, 69 (N.Y. App. Div. 1st Dep't 2019) (dismissing defamation claim in its entirety where "[t]he majority of the alleged defamatory statements . . . were made outside the one-year statute of limitations" and the more recent statements did not support the claim for other reasons).

Two of the three allegedly defamatory statements that Plaintiff cites in the Complaint were published outside the one-year statute of limitations and therefore cannot be the basis for Plaintiff's libel claim. The Refinery29 correction was published on April 4, 2019. *See* Compl., at p. 3 of 6. Thus, the statute of limitations for a defamation claim based on the Refinery29 correction expired on April 4, 2020. Similarly, Plaintiff alleges that Newswire's allegedly defamatory statement was made in e-mails exchange dated November 12, 2020 through November 19, 2020. *See id.* at p. 2 of 6 and Tab A. Thus, the statute of limitations for a defamation claim based on Newswire's statements expired on November 19, 2021.

Plaintiff filed the Complaint on May 23, 2022, more than two years after the expiration of the statute of limitations for a libel claim based on the Refinery29 correction and more than six months after the expiration of the statute of limitations for a libel claim based on the Newswire e-mails. Thus, Plaintiff's libel claim based on these statements is time-barred and should be dismissed with prejudice.[4]

---

[4] The Complaint also contains a passing reference to an alleged statement by Jelly Belly to Google in which Jelly Belly allegedly "misinformed Google that the inventor of Jelly Belly Jelly Beans is Gustav Goelitz and not Plaintiff

## B.    The Complaint Does Not State A Claim For Libel

Plaintiff fails to state a substantive claim for libel based on the single alleged statement published within the statute of limitations.[5]   Libel is defamation in written or printed form.  *See Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001).  To state a claim for libel, Plaintiff must allege "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).[6]   The Complaint fails to plead these elements, and Plaintiff's libel claim should be dismissed.

### 1.    The Complaint Does Not Allege A False And Defamatory Statement

To state a claim for libel, Plaintiff "must allege [] a false statement about the plaintiff." *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1st Dep't 1999)).  The allegedly false statement must "tend[] to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their

---

David Klein."  *See* Compl., at p. 5 of 6.  Plaintiff does not allege any details regarding this alleged statement, including the date it was purportedly made.  However, on September 4, 2018, Plaintiff recorded a video of himself, in which he states:  "Ask Google who invented the Jelly Belly jelly beans.  Up until about a week ago, . . . it said David Klein invented the Jelly Belly jelly bean, now it says Gustov Goelitz, and I think that's wrong."  *See* https://www.youtube.com/watch?v=e9-N4x63mhg (last visited July 22, 2022).  Any libel claim based on a purported statement to Google is also time-barred.

[5] While the correction published by The Washington Post on September 20, 2021 is the only statement for which the statute of limitations has not run, Plaintiff also fails to state a substantive claim for libel based on the older statements.
[6] As noted above, Plaintiff's reliance on New York law is misplaced because none of the events at issue in this action took place in New York, and none of the parties are or were located in New York.  Rather, Jelly Belly acted from its headquarters in California and Plaintiff resides in Florida.  Regardless, California and Florida law are in accord.  *See* Cal. Civ. Code § 45 ("Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."); *Matonis v. Care Holdings Grp., L.L.C.*, 423 F. Supp. 3d 1304, 1315 (S.D. Fla. 2019) ("Under Florida law, law, to state a claim for defamation—libel or slander—the plaintiff must allege that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to the plaintiff.") (quoting *Alan v. Wells Fargo Bank, N.A.*, 604 Fed. App'x 863, 865 (11th Cir. 2015)).

friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751 (N.Y. 1996) (internal quotations omitted).

### a.    The Complaint Does Not Allege A False Statement

"If an allegedly defamatory statement is 'substantially true,' a claim of libel is 'legally insufficient and . . . should [be] dismissed.'" *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (ellipsis and alteration in original) (quoting *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 301 (2d Cir. 1986)).[7]  Whether an alleged statement is "substantially true" is "an issue of law properly decided on a motion to dismiss." *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 65 (S.D.N.Y. 2021).

The Washington Post article, entitled "A Colorado man found a winning golden ticket. He passed on owning a candy factory," reported on the winner of Plaintiff's "Gold Ticket" contest, in which Plaintiff sold entries to a treasure hunt and offered a candy factory as the grand prize. *See* Wong Aff. Ex. C.[8]  Plaintiff asserts that "the Washington Post retracted Plaintiff as the founder and creator of the Jelly Belly Candy Company."  Compl., at p. 5 of 6.  Specifically, The Washington Post issued a correction that stated:

---

[7]  California and Florida law are in accord.  *See Heller v. NBCUniversal, Inc.*, No. 15-CV-09631-MWF, 2016 WL 6583048, at *4 (C.D. Cal. June 29, 2016) (substantial truth defense protects allegedly defamatory speech where "the imputation is substantially true so as to justify the 'gist or sting' of the remark.") (citing *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012)); *Smith v. Cuban American National Foundation*, 731 So. 2d 702, 706-07 (Fla. Dist. Ct. App. 1999) ("Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true. . . . [F]alsity only exists if the publication is substantially and materially false, not just if it is technically false.").

[8]  In assessing whether a statement is substantially true, "[t]he accuracy of the report should be assessed on the publication as a whole, not isolated portions of it." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (quoting *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting Sys., Inc.*, 844 F.2d 955, 959 (2d Cir. 1988)). The allegedly defamatory statement should also be "read against the background of its issuance with respect to the circumstances of its publication." *Lian v. Sedgwick James of N.Y., Inc.*, 992 F. Supp. 644, 649 (S.D.N.Y. 1998) (quoting *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (N.Y. 1976)).  Here, Plaintiff promoted the Gold Ticket contest by representing that he was the "founder" of the Jelly Belly Candy Company, which led to significant confusion by consumers and the media that the grand prize would be a Jelly Belly candy factory and required Jelly Belly to issue a press release clarifying that the winner would not receive a Jelly Belly factory. *See, e.g.*, https://www.npr.org/2020/09/09/911006011/jelly-belly-founder-david-klein-offers-candy-factory-as-a-prize (last visited July 22, 2022); https://news.jellybelly.com/the-gold-ticket-candy-factory-giveaway-contest/ (last visited July 22, 2022).

> An earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company. Gustav Goelitz was the founder of the company, which was formerly known as the Herman Goelitz Candy Company. The article has been corrected.

Wong Aff. Ex. C.

These statements are true.  After Gustav Goelitz founded the Goelitz family candy business in the mid-1800s, his son, Gustav A. Goelitz, incorporated the business as the Goelitz Confectionary Co. on February 1, 1910.  *See* Wong Aff. Ex. D.[9]  On October 28, 1975, members of the Goelitz family incorporated another entity, the Herman Goelitz Candy Company.  *See* Wong Aff. Ex. E.[10]  The Goelitz Confectionary Co. later merged with the Herman Goelitz Candy Company on March 16, 2001 (*see* Wong Aff. Ex. F), and the resulting entity changed its name to the Jelly Belly Candy Company on March 20, 2001.  *See* Wong Aff. Ex. G.

Indeed, Plaintiff has publicly acknowledged that Gustav Goelitz founded the Herman Goelitz Candy Company and that the Herman Goelitz Candy Company later changed its name to

---

[9]  The Court can take judicial notice of Jelly Belly's corporate documents.  *See Staehr v. Mack*, No. 07-CV-10368, 2011 WL 1330856, at *6 n.5 (S.D.N.Y. Mar. 31, 2011) ("Courts may take judicial notice of a certificate of incorporation on a motion to dismiss.") (citation omitted); *AW Indus., Inc. v. Sleepingwell Mattress Inc*., No. 10-CV-04439 (NGG) (RER), 2011 WL 4404029, at *4 (E.D.N.Y. Aug. 31, 2011) ("[C]ertificates of amendment and incorporation are public documents of which it is permissible to take judicial notice.").  The Court can also consider these facts in deciding this motion to dismiss because Plaintiff was admittedly aware of them and they "give the lie" to Plaintiff's allegation that the correction was false.  *See Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 352 (S.D.N.Y. 2010) ("When plaintiffs fail to include any reference to documents that they knew of that are integral to their claim, there is no need for the court to convert the motion to a summary judgment motion in order to take them into account. Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion. . . . [T]he Court can consider the text of . . . critically important documents that Plaintiffs' counsel has elected not to refer to in the complaint (I assume because they give the lie to several key allegations of 'fact' in the amended pleading).") (internal citations and quotations omitted); *see also Karmilowicz v. Hartford Fin. Servs. Grp., Inc*., 494 Fed. App'x 153, 156 (2d Cir. 2012) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

[10] The Goelitz Confectionary Co. was incorporated by Gustav A. Goelitz, Herman Goelitz, and Edward Kelly.  *See* Wong Aff. Ex. D.  The Herman Goelitz Candy Company was incorporated by Herman Rowland, Ernest Rowland, and Aloyse Rowland.  *See* Wong Aff. Ex. E.  Plaintiff was not involved in the formation or incorporation of either entity (nor has he ever owned or operated either entity), and cannot conceivably be called a "founder" of any of the Goelitz family candy businesses.  Thus, The Washington Post's statement that Plaintiff was "misidentified" as the "founder" of the Jelly Belly Candy Company formerly known as the Herman Goelitz Candy Company is true irrespective of which member of the Goelitz family is considered the actual "founder" of that particular entity.

the Jelly Belly Candy Company.  *See, e.g.*, https://www.youtube.com/watch?v=C3oajuKYX0E (in a November 12, 2020 video, Plaintiff admits that Gustav Goelitz founded the Herman Goelitz Candy Company and that the Herman Goelitz Candy Company later changed its name to the Jelly Belly Candy Company) (last visited July 22, 2022); https://incitemag.wordpress.com/2012/01/14/interview-with-the-candyman/ (in a January 14, 2012 interview, Plaintiff acknowledged:  "Herman Goelitz is what they were called then. . . .  They now changed their name to Jelly Belly Company") (last visited July 22, 2022).[11]

### b.      The Complaint Does Not Allege A Plausibly Defamatory Statement

In addition to the statements' truth, Plaintiff's libel claim should be dismissed because the statements about which Plaintiff complains are not plausibly defamatory.  To support a libel claim, the allegedly defamatory statement must "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons." *Foster*, 87 N.Y.2d at 751.  Courts apply an "ordinary person" standard, and "consider whether an ordinary person would find the statement reasonably susceptible of a defamatory connotation." *Lian*, 992 F. Supp. at 649.  In applying this standard at the motion to dismiss stage, "[c]ourts will not strain to find defamation where none exists." *Dillon*, 704 N.Y.S.2d at 5 (quoting *Cohn v. National Broadcasting Co.*, 50 N.Y.2d 885, 887 (N.Y. 1980)); *see Cafferty v. Southern Tier Publishing Co.*, 226 N.Y. 87, 93 (N.Y. 1919) (if "the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done").  Thus:

> In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of

---

[11]   The two other statements upon which Plaintiff attempts to base his claim—which are barred by the statute of limitations—also relate to the founder of the Jelly Belly Candy Company and are also true.  Thus, Plaintiff fails to state a claim based on those statements, in addition to any such claim being barred by the statute of limitations.

the entire statement or publication as a whole, tested against the
understanding of the average reader, and if not reasonably
susceptible of a defamatory meaning, they are not actionable and
cannot be made so by a strained or artificial construction.

*Couloute v. Ryncarz*, No. 11-CV-5986 (HB), 2012 WL 541089, at *5 (S.D.N.Y. Feb. 17, 2012)

(quoting *Dillon*, 704 N.Y.S.2d at 5).

Applying this standard, courts routinely dismiss defamation claims where the allegedly

defamatory statements, under a normal reading, do not plausibly defame the plaintiff. *See, e.g.*,

*Fairstein v. Netflix, Inc*., 553 F. Supp. 3d at 67 (dismissing defamation claim based on a scene in

a documentary depicting plaintiff because, "[v]iewing the scene in the context of the entire series

and construing the allegations in the light most favorable to [plaintiff], the Complaint does not

allege a defamatory meaning to the scene. [The allegedly defamatory portions of the documentary]

could not plausibly expose [plaintiff] to public contempt, ridicule, or disgrace, or an induce an evil

opinion of her."); *Aslin v. Univ. of Rochester*, No. 17-CV-06847, 2019 WL 4112130, at *23

(W.D.N.Y. Aug. 28, 2019) ("The plaintiffs ask the Court to strain the plain words of this statement

to impute a defamatory meaning. The statement mentions only cooperation with the investigation

and does not even suggest that the plaintiffs made any false accusations. It does not accuse the

plaintiffs of fabricating evidence, dishonest conduct that threatens the core of their fitness as

academics. Without that, the statement is not defamatory, let alone defamatory *per se*, and the

plaintiffs' claims based on this statement therefore are dismissed."); *Karedes v. Vill. of Endicott*,

No. 01-CV-1395, 2004 WL 1683146, at *4 (N.D.N.Y. Mar. 22, 2004) (granting motion for

judgment on the pleadings where "there are no set of facts from which Plaintiff could prove that

the statements in the broadcast that concern him are defamatory").

The Washington Post's correction to its article about Plaintiff cannot be read to place

Plaintiff in a defamatory light.  It simply—and accurately—stated that Gustav Goelitz, not

Plaintiff, was the founder of the Jelly Belly Candy Company, which was formerly known as the Herman Goelitz Candy Company. An ordinary person reading this statement would not be caused to think anything negatively about Plaintiff. The statement does not plausibly defame Plaintiff.

### 2. The Complaint Does Not Allege A Statement By Jelly Belly

Even if the Complaint alleged a false and defamatory statement (it does not), Plaintiff's claim still fails because he does not allege that Jelly Belly made the allegedly defamatory statement. A libel claim must be based on a statement "that was published by the defendant to a third party." *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000). The Complaint does not identify any statement by Jelly Belly. Rather, Plaintiff's libel claim against Jelly Belly is based exclusively on statements by media outlets. Under such circumstances, Plaintiff must allege that Jelly Belly "was responsible for or ratified the publication." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 351 (S.D.N.Y. 1998) ("[A] libel plaintiff must allege that the party had authority or control over, or somehow ratified or approved, the republication.").[12]

The Complaint contains no such allegations. Plaintiff does not allege that Jelly Belly was responsible for The Washington Post correcting its article regarding Plaintiff, or that Jelly Belly ratified the correction in any way. Indeed, the Complaint does not contain any factual allegations of any interactions between Jelly Belly and The Washington Post.[13] Instead, Plaintiff conclusorily asserts that the correction by The Washington Post "was published at the direction of Defendant."

---

[12] California law similarly requires that a plaintiff plead that the allegedly defamatory statement was "reasonably foreseeable, authorized, or intended." *Lund v. Gifford*, No. B259366, 2016 WL 7031517, at *12 (Cal. Ct. App. Dec. 2, 2016). Florida law, however, does not recognize so-called "republication" libel, and Plaintiff's claim is also barred to the extent Florida law applies. *See Barbuto v. Miami Herald Media Co.*, No. 21-CV-20608, 2022 WL 123906, at *3 (S.D. Fla. Jan. 13, 2022) (rejecting republication theory of liability under Florida law).

[13] The other two statements alleged in the Complaint—which were both published outside the applicable statute of limitations—are also not by Jelly Belly, and Plaintiff similarly does not allege that Jelly Belly was responsible for or ratified those statements. Thus, Plaintiff fails to state a claim based on those statements, in addition to the claim being barred by the statute of limitations.

Compl., at p. 5 of 6.  Plaintiff does not plead any alleged facts supporting his bald assertion.  Simply parroting the legal elements of the claim is not sufficient.  *See Twombly*, 550 U.S. at 555 ("[F]ormulaic recitation of the elements of a cause of action will not do.").

### 3. The Complaint Does Not Allege Actual Malice

Where a plaintiff is a public figure, to state a claim for libel, he must allege that the "allegedly libelous statement was made with actual malice."  *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021).  Plaintiff is a limited-purpose public figure, and therefore must plead that Jelly Belly acted with actual malice.

There are two types of public figures who must plead actual malice.  The first is a "general-purpose public figure," which is someone who has "assumed [a] role[] of especial prominence in the affairs of society."  *Id.* at 818-19 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)).  The second is a "limited-purpose public figure," which is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  *Id*. at 819 (quoting *Gertz*, 418 U.S. at 345).  In assessing whether a plaintiff is a limited-purpose public figure, courts consider whether the plaintiff:  "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media."  *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 288 (S.D.N.Y. 2016) (quoting *Lerman v. Flynt Distrib. Co*., 745 F.2d 123, 136-37 (2d Cir. 1984)).

Plaintiff has, for years, aggressively sought media and public attention regarding the Jelly Belly® jelly bean.  For example, (a) Plaintiff's son created a feature-length documentary about Plaintiff's purported involvement in the history of the Jelly Belly® jelly bean, (b) Plaintiff

maintains websites, social media accounts, and YouTube channels all dedicated to portraying himself as the inventor of the Jelly Belly® jelly bean, and (c) Plaintiff has been interviewed by numerous media outlets regarding his claims regarding the history of the Jelly Belly® jelly bean and the company itself.[14]

Thus, Plaintiff is a limited-purpose public figure. *See Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 254 (S.D.N.Y. 2019) (finding individual was limited-purpose public figure where she "successfully and voluntarily invited public attention to her modeling career, which is the subject of this litigation"); *Biro*, 963 F. Supp. 2d 255, 271 (S.D.N.Y. 2013) (finding plaintiff was limited-purpose public figure where, among other things, he had been "interviewed for a feature-length documentary," he made a "myriad" of "public appearances," and he "voluntarily injected himself" into the public sphere); *Perez v. Violence Intervention Program*, 984 N.Y.S.2d 348, 348 (N.Y. App. Div. 1st Dep't 2014) (finding plaintiff was limited public figure where she "took affirmative steps to attract public attention" by "not only granting news interviews, but driving media members to the property in question and posing for a photograph in front of it, attending a press conference, answering questions in connection with the drafting of an open letter calling for

---

[14] *See, e.g.*, https://www.imdb.com/title/tt1524107/ (2010 documentary entitled "Candyman, the David Klein Story") (last visited July 22, 2022); https://twitter.com/wwwcandyinvento (Plaintiff's Twitter handle is "David Klein Candyman Jelly Belly® Inventor") (last visited July 22, 2022); https://www.youtube.com/channel/UC3BIxLnLP0Xp9C_YefNX7UA/videos?app=desktop (Plaintiff's YouTube channel contains extensive videos regarding Jelly Belly®) (last visited July 22, 2022); https://candymankitchens.com/about-us/ (Plaintiff's company's website, purporting to describe his history with Jelly Belly) (last visited July 22, 2022); https://www.ouramericanstories.com/podcast/business/candyman-the-story-of-jelly-belly-founder-david-klein (May 2, 2022 podcast interview of Plaintiff regarding Jelly Belly) (last visited July 22, 2022); https://www.laweekly.com/q-a-with-jelly-belly-inventor-david-klein-on-getting-his-jelly-belly-due-his-new-line-of-jelly-beans-the-astro-pop-connection/ (July 9, 2012 interview of Plaintiff regarding Jelly Belly) (last visited July 22, 2022); https://www.dailyrepublic.com/all-dr-news/solano-news/local-features/local-lifestyle-columns/back-in-the-day-mr-jelly-belly-wants-to-sue-jelly-belly-candy-company/ (September 21, 2018 article about Plaintiff's plan to sue Jelly Belly) (last visited July 22, 2022). The Court may take judicial notice of this the public attention and media coverage (not the truth of the content) when deciding whether Plaintiff is a limited public figure on this motion to dismiss. *See, e.g.*, *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013) ("[T]he Court can take judicial notice of the existence of articles written by and about Biro, though not for the truth of the matter asserted in the documents themselves. Courts in this Circuit have employed judicial notice in making determinations about whether plaintiffs are public figures at the motion to dismiss stage.").

her reinstatement"); *Armstrong v. Simon & Schuster, Inc.*, 721 N.Y.S.2d 340 (N.Y. App. Div. 1st Dep't 2001) (finding criminal defense attorney to be limited-purpose public figure where he had "not hesitated to seek media attention, and did so repeatedly to influence public opinion in connection with his representation of an individual embroiled in a highly publicized insider trading prosecution").

Plaintiff fails to plead that Jelly Belly acted with actual malice. To plead actual malice, a plaintiff is required to plead that the defendant "either knew that its statements were false or had serious doubts about their truth and dove recklessly ahead anyway." *Biro*, 963 F. Supp. 2d at 279. Without reference to any specific publication or statement made by Jelly Belly, Plaintiff alleges that "Defendant Jelly Belly Candy Company has published the information with reckless disregard as to its offensiveness." Compl., at p. 2 of 6. This bald conclusion is not supported by any factual allegations, and Plaintiff's conclusory assertion is insufficient to state a claim for libel. *See, e.g.*, *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) ("Here, Orenstein alleges that Figel . . . acted 'knowingly,' 'recklessly,' and 'maliciously' in writing the March 20, 2009 letter. . . . The complaint provides neither factual support for these conclusions nor any explanation of why either Figel or his law firm would have an interest in acting maliciously toward Orenstein."); *Egiazaryan v. Zalmayev*, No. 11-CV-2670 (PKC), 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) ("Egiazaryan fails plausibly to allege actual malice in the publication of this or any other fact in the letters. Egiazaryan's repeated assertion that Zalmayev acted with malice is unavailing because it is a legal conclusion not entitled to presumption of truth, and he alleges no facts plausibly supporting that conclusion.").

## II.   Plaintiff's Civil Conspiracy Claim Should Be Dismissed

Because none of the allegedly defamatory statements were made by or attributed to Jelly Belly (and so a libel claim against Jelly Belly cannot stand), Plaintiff asserts that Jelly Belly

conspired with the entities that actually made the statements in order to assert a claim for civil conspiracy against Jelly Belly. This attempt to bootstrap a claim against Jelly Belly also fails.

### A. Plaintiff's Civil Conspiracy Claim Is Barred By The Statute Of Limitations

"The statute of limitations for civil conspiracy is the same as that for the underlying tort." *Murphy v. Morlitz*, No. 15-CV-7256 (VSB), 2017 WL 4221472, at *8 (S.D.N.Y. Sept. 21, 2017) (quoting *Brady v. Lynes*, No. 05-CV-6540 (DAB), 2008 WL 2276518, at *9 (S.D.N.Y June 2, 2008)) (internal quotation marks omitted). Thus, as discussed above, Plaintiff's claim based on the Refinery29 correction and the Newswire e-mails are barred by the statute of limitations.

### B. Plaintiff's Civil Conspiracy Claim Should Be Dismissed Because Plaintiff Fails To State A Claim For The Underlying Tort

Civil conspiracy is not "an independent cause of action." *Reich v. Lopez*, 38 F. Supp. 3d 426, 460 (S.D.N.Y 2014). Rather, a claim for civil conspiracy is derivative of a separate claim for an underlying tort. *See Vasile v. Dean Witter Reynolds Inc*., 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).[15] Thus, where a complaint fails to state a claim for the tort underlying a claim for civil conspiracy, the claim for civil conspiracy should also be dismissed. *See Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 723 (S.D.N.Y. 2014) ("Plaintiff's failure to plead an actionable underlying tort for its civil conspiracy claim necessitates the dismissal of that claim."); *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011) ("Claims of civil conspiracy which do not allege, or which insufficiently allege, an underlying tort must be dismissed for failure to state a claim under Rule 12(b)(6)."). As

---

[15] California and Florida law are in accord. *See Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc*., 913 F. Supp. 2d 780, 790 (N.D. Cal. 2012) (under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration") (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 510-11 (Cal. 1994)); *Samara v. Juice Plus+ Co., LLC*, No. 6:20-CV-520 (GAP) (EJK), 2021 WL 8894301, at *3 (M.D. Fla. Mar. 1, 2021) (Florida law "does not recognize a separate cause of action for civil conspiracy [and] instead requires a plaintiff to allege an underlying illegal act or tort on which the alleged conspiracy is based").

discussed above, Plaintiff fails to state a claim for libel, and therefore, his claim for civil conspiracy should also be dismissed.

### C. Plaintiff's Civil Conspiracy Claim Should Be Dismissed Because Plaintiff Does Not Allege Any Agreement By Jelly Belly

To state a claim for civil conspiracy, "the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Perez v. Lopez*, 948 N.Y.S.2d 312, 312 (N.Y. App. Div. 2nd Dep't 2012). Plaintiff does not plead these elements. Rather, Plaintiff conclusorily asserts that "[a]n agreement was [] made by The Washington Post on September 20, 2021 when the Washington Post retracted Plaintiff as the founder and creator of the Jelly Belly Candy Company." Compl., at p. 5 of 6. Plaintiff does not allege any facts that might support this bare assertion; indeed, Plaintiff does not even allege any facts that support his assumption that Jelly Belly was involved in, or even had knowledge of, the correction at all.[16]

Courts uniformly reject and dismiss civil conspiracy claims where the agreement is only conclusorily asserted. *See, e.g.*, *Arnold v. KPMG LLP*, 543 F. Supp. 2d 230, 237 (S.D.N.Y. 2008) ("Bald, conclusory allegations of a vast conspiracy are insufficient."); *Star Funding, Inc. v. Vault Mins., LLC*, No. 15-CV-03026 (GBD), 2016 WL 10951285, at *2 (S.D.N.Y. Sept. 1, 2016) (dismissing conspiracy claim where complaint failed to "allege individual acts" that "permit[ted] the reasonable inference that [the defendant] participated in the purported fraudulent conspiracy" and noting that "bare allegations are insufficient to support a reasonable inference that [a

---

[16] Plaintiff also only asserts that an agreement existed between Jelly Belly and Newswire and Refinery29 related to their alleged statements. *See* Compl., at pp. 4-5 of 6. Not only is Plaintiff's civil conspiracy claim based on these purported agreements time-barred, but Plaintiff fails to plead any facts to support his conclusory assertion. To the contrary, the documents attached to the Complaint confirm that Newswire did not receive instructions from or reach any agreement with Jelly Belly. *See* Compl., at Tab A (November 12, 2020 and November 13, 2020 emails confirming that the requested revision to Plaintiff's proposed press release was based on a request from Newswire's press release distributor, which also did not communicate with Jelly Belly).

defendant] entered into a conspiracy"); *Jacquemyns v. Spartan Mullen Et Cie, S.A.*, No. 10-CV-1586 (CM) (FM), 2011 WL 348452, at *7 (S.D.N.Y. Feb. 1, 2011) ("Bare allegations of conspiracy are not enough to state a claim; a pleader must allege particular facts supporting a meeting of the minds. . . . Plaintiffs make no attempt to allege facts indicative of an agreement among defendants to defraud plaintiffs. Without more, the court is not required to presume that plaintiffs' conclusory statements are true."); *Babiker v. Ross Univ. Sch. of Med.*, No. 98-CV-1429 (SHS) (THK), 1999 WL 33290, at *2 (S.D.N.Y. Jan. 22, 1999) ("Plaintiff's wholly conclusory allegation of conspiracy is facially insufficient and subject to dismissal."); *see also Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (noting that the Second Circuit "has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of conspiracy . . . will be dismissed").[17]

Indeed, the sum and substance of Plaintiff's civil conspiracy claim only parrots the elements of the claim, without alleging any actual facts. Plaintiff simply asserts that there was an "agreement," that the publication was "[a]n overt act in furtherance of this agreement," and that "this act was intentional." Compl., at p. 5 of 6. Plaintiff's recitation of the elements of a claim for civil conspiracy does not state a claim under *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555 ("[F]ormulaic recitation of the elements of a cause of action will not do.").

---

[17] California and Florida law are in accord. *See PQ Labs, Inc. v. Yang Qi*, No. 12-CV-0450 (CW), 2012 WL 2061527, at *8 (N.D. Cal. June 7, 2012) (a "claim of unlawful conspiracy must contain enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. . . . A bare allegation that a conspiracy existed does not suffice"); *Esoimeme v. Wells Fargo Bank*, No. 10-CV-2259 (JAM) (EFB), 2012 WL 3647786, at *3 (E.D. Cal. Aug. 22, 2012) (dismissing "bare allegations" as "insufficient to state claim for civil conspiracy" and explaining that plaintiff must "allege facts demonstrating the formation of a conspiracy (an agreement to commit wrongful acts), the operation of a conspiracy (commission of the wrongful acts), and damage resulting from operation of a conspiracy, as well as facts demonstrating the role each defendant allegedly played in the conspiracy"); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 08-CV-466, 2010 WL 1408391, at *23 (M.D. Fla. Apr. 6, 2010) ("[C]onclusory allegations of an agreement are not sufficient to state a cause of action for conspiracy."); *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-CV-22418, 2009 WL 10667096, at *3 (S.D. Fla. Oct. 8, 2009) ("Although the conspiracy count states repeatedly that Defendants 'acted in concert and agreed not to disclose,' such conclusory allegations are insufficient to support a conspiracy claim.").

**III.    To The Extent Any Portion Of Plaintiff's Complaint Survives, Plaintiff Should Be Required To Replead In Compliance With Fed. R. Civ. P. 10**

Rule 10 of the Federal Rules of Civil Procedure requires that "[a] party must state its claims or defenses in numbered paragraphs" and that each claim "be stated in a separate count."  Fed. R. Civ. P. 10(b).  The Complaint does not comply with that requirement.  Thus, to the extent any of Plaintiff's claims are allowed, Plaintiff should be required to replead the Complaint in the required form pursuant to Federal Rule of Civil Procedure 12(e).

## CONCLUSION

For the foregoing reasons, Jelly Belly respectfully requests that its motion to dismiss be granted in its entirety and that the Complaint be dismissed with prejudice.

Date:  July 22, 2022

> /s/Eric D. Wong
> Eric D. Wong
> GREENBERG TRAURIG, LLP
> One Vanderbilt Avenue
> New York, NY 10017
> (973) 360-7900
> (973) 301-8410 (fax)
>
> -and-
>
> Kurt Kappes (*pro hac vice* application forthcoming)
> GREENBERG TRAURIG, LLP
> 1201 K Street
> Suite 1100
> Sacramento, CA 95814
> (916) 442-1111
> (916) 448-1709 (fax)
>
> *Attorneys for Defendant*
> *Jelly Belly Candy Company*

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____X

DAVID KLEIN,

         Plaintiff,

            V.

JELLY BELLY CANDY COMPANY,

         Defendant.
_____X

Civil Action No. 22-cv-05629-JPC

**NOTICE OF VOLUNTARY DISMISSAL**

      Pursuant to Fed. R. Civ. P. 41, and permitted by this Court[1], David Klein ("Plaintiff")
notice's dismissal of this action. Rule 41(a)(1)(A)(i) provides that a plaintiff may voluntarily
dismiss an action without a court order by filing "a notice of dismissal before the opposing party
serves either an answer or a motion for summary judgment." The United States accordingly
notices voluntary dismissal of this action, without prejudice. *See,* Fed. R. Civ. P. 41(a)(1)(B).

      In alternative, Pursuant to Fed. R. Civ. P. 41(a)(2) Plaintiff notice's dismissal of this
action. Rule 41(a)(2) provides that an action may be dismissed at the plaintiff's request only by
court order, on terms that the court considers proper. Unless the order states otherwise, a
dismissal is without prejudice. The United States accordingly notices voluntary dismissal of this
action, without prejudice. *See,* Fed. R. Civ. P. 41(a)(1)(B). *See,* Fed. R. Civ. P. 41(a)(2).

        [continued]

---

[1] *See,* Doc. No.: 27

[continued]

Respectfully submitted,

Date: 8/26/2022

/s/ Farva Jafri
Farva Jafri, Esq.
*Jafri Law Firm*
50 Evergreen Row
Armonk, NY 10504
(800) 593-7491 (Telephone)
farva@jafrilawfirm.com
*Attorney for Plaintiff*
*David Klein*

cc: Counsel of record (by ECF)

# EXHIBIT

# E

**BY ECF**                                                                    August 10, 2022

Hon. John P. Cronan
Unite States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St. New York, NY 10007

    **Re:**    *David Klein v. Jelly Belly Candy Company* Civil Action No. 22-cv-05629-JPC

Dear Judge Cronan:

    I, Farva Jafri, Esq., represent David Klein, the ("Plaintiff") in the above-referenced action. I am submitting this pre-motion letter pursuant to Rule 6(A) of Your Honor's Individual Rules.  Pursuant to 28 U.S.C. 1404(a), Plaintiff seeks leave to transfer venue, or in the alternative, pursuant to Rule 41(a)(2) to voluntarily dismiss this action without prejudice.

    *Jelly Belly Candy Company* ("Defendant"), a conglomerate represented in all 50 states, has taken steps to paint the Plaintiff in a negative light, and publicly question his truthful status as the founder and inventor of the Jelly Belly jelly bean. *See,* Compl. Pg. 1, 2. The Defendant has filed a Motion to Dismiss.  Dkt. 10, Notice of Motion to Dismiss.

    In the Complaint, we asserted three instances where the Defendant committed acts of Libel. On April 3, 2019, Mr. Klein learned about an article that was published by Refinery29 giving him credit for coming up with the Jelly Bean, referring to him "Mr. Jelly Belly himself.". *See,* Compl. Pg 3. Shortly after, on April 4, 2019, the publication issued a redaction stating that the Plaintiff was not the founder and simply came up with the name. Disparaging the Plaintiff's achievement of inventing the product. On another occasion, September 2, 2021, the Defendant once more caused an article giving credit to Mr. Klein as the founder of the jelly bean to be "corrected". *Id.* Changing to articles in such a manner was meant for a reader to interpret the initial statement to be read as false. Mr. Klein also had an email exchange with Newswire

representative where they refused to publish anything in which Mr. Klein took credit as an inventor of the Jelly Bean. *See,* Compl. Pg 4.

Lastly, according to Mr. Klein's honest knowledge and belief The Washington Post retracted a statement acknowledging the Plaintiff as the founder and creator of the Jelly Belly jelly bean on September 20, 2021 on the behest of the Defendant. *See,* Compl. Pg 5.

The Mr. Klein is also aware of Newswire receiving specific instructions to disallow him to accurately and truthfully explain his role in inventing and founding of the Jelly Belly Jelly Bean. The plaintiff further suspects that the Defendant has taken other steps in precluding the truth of Plaintiff's involvement in creation of the Jelly Bean from reaching the public. *Id.*

The Defendant claims that the first two instances that Mr. Klein asserted fall outside of the one-year statute of limitation, the article published on April 4, 2019 and email sent November 19, 2020, and failure to meet statutory requirements of libel. While we disagree with the Defendant that statutory elements were not met in order to survive the motion to dismiss, the Plaintiff respectfully requests the court to consider pursuant to 28 U.S.C. 1404(a) that this action is transferred to the United States District Court of the District of Massachusetts for the following reasons:

First, it is reasonable to consider the convenience of the plaintiff and possible future witnesses when deciding if the change of venue is warranted.

Second, In the interest of justice, this action could have been brought in the United States District Court of the District of Massachusetts by the Plaintiff.

Fourth, our filing in this Court was not made in bad faith or with any intent to cause undue expense to any of the parties of the Court.

Fifth, there would be no undue harm to Defendant as a result of the transfer.

**Should the court deny our Motion to Change Venue, in the alternative, we ask the court to exercise its discretion in allowing the Plaintiff to dismiss the case without prejudice per *Rule 41. Dismissal of Actions* of the Federal Rules of Civil Procedure.**

Sixth, a plaintiff may be able to voluntarily dismiss the action and then refile it in a jurisdiction with a longer statute of limitations.[1]

Seven, Courts generally will allow a plaintiff to dismiss a claim without prejudice so long as the defendant will not suffer "clear legal prejudice" as a result.[2]

Eight, whether, and on what conditions, to grant a motion for voluntary dismissal without prejudice is within the "sound discretion of the trial court."[3]

Nine, when a plaintiff's lawyer files a time-barred claim, the defendant does not acquire a vested interest in that jurisdiction, the defendant acquires a procedural advantage.[4]

Ten, the "extreme" sanction of dismissal with prejudice is appropriate only in cases where lesser protections would not serve the interests of justice.[5]

David Klein respectfully submits the following briefing schedule for the anticipated motion:

> David Klein shall file and serve his moving brief: August 11, 2022
> Defendant shall file and serve an opposition brief: August 25, 2022
> David Klein may file and serve a reply brief: September 1, 2022

We appreciate the court's attention to this matter and its consideration of this letter.

---

[1] See FED. R. CIV. P. 41(a); infra note 67
[2] See, e.g., Metro. Fed. Bank, 999 F.2d at 1262;
[3] Phillips v. Ill. Cent. Gulf R.R., 874 F.2d 984, 986 (5th Cir. 1989); accord Tucker v. Tucker, 434 N.E.2d 1050, 1052 (N.Y. 1982); Bradshaw v. Ewing, 376 S.E.2d 264, 267 (S.C. 1989).
[4] See Germain, 79 F.R.D. at 86 (rejecting defendant's claim of prejudice, stating that a defendant does not acquire a vested interest when plaintiff's counsel files a lawsuit in a jurisdiction where the statute of limitations has expired).
[5] See, e.g., Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985) (finding dismissal with prejudice was appropriate where the plaintiff "engaged in a pattern of delay and deliberately refused to comply with the directions of the court" because any lesser sanction would not have served the interests of justice).

Respectfully submitted on August 10, 2022.

JAFRI LAW FIRM

*s/ Farva Jafri*
Farva Jafri
50 Evergreen Row
Armonk, NY 10504
(800) 593-7491
farva@jafrilawfirm.com

*Attorney for Plaintiff*

cc: Counsel of record (by ECF)

# EXHIBIT F

1  KURT A. KAPPES – SBN 146384
   MICHAEL D. LANE – SBN 239517
2  GREENBERG TRAURIG, LLP
   1201 K Street, Suite 1100
3  Sacramento, CA  95814-3938
   Telephone:  (916) 442-1111
4  Facsimile:  (916) 448-1709
   kappesk@gtlaw.com
5  lanemd@gtlaw.com

6  Attorneys for Plaintiff,
   JELLY BELLY CANDY COMPANY
7

8                  IN THE UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JELLY BELLY CANDY COMPANY,              Civil Action No.

12                       Plaintiff,

13              v.

14  DAVID KLEIN,                            **COMPLAINT**

15                       Defendant.

16

17

18      Plaintiff Jelly Belly Candy Company ("Jelly Belly"), by and though its counsel, Greenberg

19  Traurig, LLP, as and for its Complaint against Defendant David Klein ("Defendant") alleges as follows:

20                        **NATURE OF THE ACTION**

21      1.   This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,

22  seeking a declaratory judgment that certain statements allegedly attributed to Jelly Belly are true and did

23  not defame Defendant, and seeking an injunction prohibiting Defendant from referring to himself as the

24  "founder" of the Jelly Belly Candy Company.

25                           **THE PARTIES**

26      2.   Plaintiff Jelly Belly Candy Company is a California corporation incorporated under the laws

27  of California with its principal place of business in Fairfield, California.

28
                                                            Case No.

                              COMPLAINT

3.     Upon information and belief, Defendant David Klein is an individual who resides in Ocala, Florida.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000.

5.     This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with Jelly Belly in California relative to the dispute at issue.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) because     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## GENERAL ALLEGATIONS

**A. Background**

7.     Jelly Belly is a confections manufacturer most well-known for its Jelly Belly® jelly beans.

8.     Defendant was not a founder of the Jelly Belly Candy Company.

9.     Jelly Belly is a family-owned and family-operated business with roots dating back more than a century.  After Gustav Goelitz founded the Goelitz family candy business in 1869, his son, Gustav A. Goelitz, incorporated the business as the Goelitz Confectionary Co. on February 1, 1910.  In 1921, a member of the Goelitz family started another business, which later became Herman Goelitz Candy Company, incorporated on October 28, 1975.  The Goelitz Confectionary Co. later merged with and into the Herman Goelitz Candy Company on March 16, 2001, and the resulting entity changed its name to the Jelly Belly Candy Company on March 20, 2001.

10.     In 1976, Defendant came up with the name "Jelly Belly" and hired Jelly Belly, then called the Herman Goelitz Candy Company, to manufacture gourmet jelly beans.  Upon information and belief, during their brief manufacturing relationship between 1976 and 1980, Defendant used the "Jelly Belly" name in connection with his unincorporated business venture.  In 1980, Jelly Belly acquired the Jelly Belly® trademark from Defendant and his business partner for $4.8 million pursuant to a Trademark Assignment and Marketing Agreement dated October 16, 1980.  Since then, Defendant has not been involved with Jelly Belly.

**B. Defendant's Marketing Causes Public Confusion And Requires Correction By Jelly Belly**

11.     Nevertheless, Defendant has attempted to market himself and his own candy products by touting his purported connection with Jelly Belly, including by referring to himself in media reports and promotional material as the "founder" of the Jelly Belly Candy Company.

12.     Because of the confusion in the marketplace caused by Defendant's misleading marketing, Jelly Belly has often been forced to issue public statements clarifying that it is not involved with Defendant or the products Defendant seeks to sell.

13.     For example, in 2019, Defendant launched a line of CBD-infused jelly beans.  In connection with his advertising of that product, Defendant attempted to market them by incorrectly asserting that he was the "founder" of the Jelly Belly Candy Company.  As he intended, Defendant's marketing generated significant media attention, and caused consumers and Jelly Belly's customers to believe, incorrectly, that Jelly Belly was entering the legally-murky CBD and marijuana food product market.  This risked significant legal and reputational harm to Jelly Belly.

14.     Accordingly, on March 19, 2019, Jelly Belly issued a press release, entitled "JELLY BELLY DOES NOT MANUFACTURE CBD JELLY BEANS."  In the release, Jelly Belly stated:

> Due to confusion in the marketplace, Jelly Belly Candy Company would like to take this opportunity to clear up the misconception that it is involved with CBD jelly beans.  David Klein, the creator of the CBD jelly bean product gaining attention within the media this week, is not associated with Jelly Belly Candy Company, its brands, or products.  In 1976, Mr. Klein, an independent third party, came up with the name "Jelly Belly" and other novel marketing ideas.  Jelly Belly Candy Company has not had a relationship with him since 1980 when it acquired the trademark.

> While Jelly Belly does not publicly discuss research and development projects, it can state that it is not pursuing the development of any CBD products at this time, as such products would currently be illegal for Jelly Belly according to the U.S. Food and Drug Administration.

15.     Jelly Belly also sought to correct inaccurate media reports regarding Defendant's CBD products that described Defendant as the "founder" of the Jelly Belly Candy Company.  One such report was an April 3, 2019 article published by Refinery29.  Through its public relations firm, Jelly Belly contacted Refinery29 regarding the incorrect description, and the publication issued a correction to the

article on April 4, 2019, stating:  "An earlier version of this story incorrectly stated that the creator of Spectrum Confections was the founder of Jelly Belly Candy Company."

16.     Defendant's misleading marketing continued.

17.     In 2020, Defendant began to promote a "Gold Ticket" contest, in which Defendant sold entries to a treasure hunt with a candy factory as the grand prize.  Defendant promoted the contest by representing that he was the "founder" of the Jelly Belly Candy Company, which led to significant confusion by consumers and the media that the grand prize would be a Jelly Belly candy factory.  This confusion led to negative speculation about Jelly Belly and risked significant reputational harm risk to Jelly Belly.

18.     Thus, again, Jelly Belly was required to issue a press release clarifying that it was not involved in Defendant's contest and that the winner would not receive one of Jelly Belly's candy factories.

19.     The release, entitled "Jelly Belly has no affiliation with the Gold Ticket Contest," stated:

> Due to confusion in the marketplace, Jelly Belly Candy Company would like to take this opportunity to clear up the misconception that it is involved with a contest that purportedly offers a candy factory as its grand prize. Jelly Belly Candy Company, formerly known as Herman Goelitz Candy Company, has candy making roots back to 1869. It was founded by Gustav Goelitz and remains family owned and operated today.
>
> David Klein, the sponsor of the "treasure hunt" contest gaining attention within the media this weekend, is not associated with Jelly Belly Candy Company, its brands, or products. In 1976, Mr. Klein, an independent third party, came up with the name "Jelly Belly" and other novel marketing ideas. Jelly Belly Candy Company has not had a relationship with Mr. Klein since 1980 when it acquired the trademark.

20.     Jelly Belly also sought to correct inaccurate media reports regarding the Gold Ticket contest describing Defendant as the "founder" of the Jelly Belly Candy Company.

21.     The initial media attention subsided in late-2020, but the story gained traction again in 2021 when a winner was announced.  A September 20, 2021 article published by The Washington Post regarding the winner's decision to decline acceptance of the candy factory offered by Defendant incorrectly described Defendant as the "founder" of the Jelly Belly Candy Company.  The Washington Post subsequently issued a correction to that article, stating:  "An earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company. Gustav Goelitz was the founder of the

company, which was formerly known as the Herman Goelitz Candy Company. The article has been corrected."

22.     In addition to the two above examples of instances where Defendant's misleading marketing required correction by Jelly Belly to prevent reputational harm, since receiving the last installment of his $4.8 million payment, Defendant has consistently harassed Jelly Belly.  For example, in 2010, Defendant and his son arranged for a documentary about Defendant to be made, in which Defendant portrays himself as a victim of Jelly Belly, implying that the 1980 trademark acquisition was improper (but admitting that he simply regrets his choice to sell).  In 2016, in connection with his attempts to raise funds purportedly to develop new products, Defendant engaged in a public relations campaign to attempt to associate himself with Jelly Belly.  In 2018, when a change in Google's search function caused a picture of Gustav Goelitz to appear when one Googled "who invented Jelly Belly jelly beans," Defendant started a GoFundMe campaign to raise funds to sue Jelly Belly (notwithstanding the donations he received, no such suit was filed).  Defendant has also publicly accused Jelly Belly of defaming him.  These actions have caused false and bullying online attacks by Defendant's "followers," to which Jelly Belly must consistently respond.

**C.  Defendant's Defamation Lawsuit In New York**

23.     Most recently, Defendant instituted an action in New York State Court alleging that Jelly Belly defamed him by seeking to correct inaccurate reports that he was the "founder" of the Jelly Belly Candy Company in connection with Defendant's CBD product and his Gold Ticket contest (the "New York Action").

24.     Specifically, the Complaint in the New York Action (the "New York Complaint") purported to describe three allegedly defamatory statements that Defendant attempted to attribute to Jelly Belly.

25.     First, the New York Complaint quoted Refinery29's April 4, 2019 correction to its article regarding Defendant's CBD product, stating that "[a]n earlier version of this story incorrectly stated that the creator of Spectrum Confections was the founder of Jelly Belly Candy Company."

26.     Second, the New York Complaint alleged that Jelly Belly caused Newswire, a press release distribution company, to reject a press release submitted for distribution by Defendant because it referred to Defendant as the "founder" of the Jelly Belly Candy Company.  E-mails that Defendant attached to the Complaint in the New York Action confirmed that Newswire did not receive instructions from Jelly Belly,

but rather that one of Newswire's distributors raised the issue after reviewing Jelly Belly's press release regarding the Gold Ticket contest, which accurately stated that the Jelly Belly Candy Company was founded by Gustav Goelitz.

27.    Third, the New York Complaint quoted the September 20, 2021 correction to The Washington Post article, which advised that "[a]n earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company" and reported that "Gustav Goelitz was the founder of the company, which was formerly known as the Herman Goelitz Candy Company."

28.    Jelly Belly welcomed the opportunity to defend itself in the New York Action and, hopefully, put an end to years of Defendant's spurious conduct.  Thus, Jelly Belly accepted service of the New York Complaint, timely removed the action to the Southern District of New York, and on July 22, 2022, filed a motion to dismiss Defendant's baseless claims.

29.    In its motion to dismiss, Jelly Belly argued, *inter alia*, that two of the three allegedly defamatory statements upon which the New York Complaint was based were published outside of New York's one-year statute of limitations, and that all three allegedly defamatory statements regarding the identity of the founder of the Jelly Belly Candy Company could not be a basis for a defamation claim because they were true.

30.    Rather than oppose the motion to dismiss, acknowledging that the majority of his claims were barred by the statute of limitations, Defendant sought permission to file a motion to transfer the New York Action to Massachusetts, or in the alternative, for leave to voluntarily dismiss the New York Complaint without prejudice so that he could refile his claims in Massachusetts.  Massachusetts has no relationship to the parties or events giving rise to the New York Action, and Defendant admitted that the sole reason he sought to transfer the New York Action there was to take advantage of Massachusetts' longer statute of limitations applicable to defamation claims.  Defendant recently dismissed the New York Action without prejudice, and Jelly Belly anticipates that Defendant will refile the same claims in Massachusetts.

## **COUNT ONE**

### **(Declaratory Judgment)**

31.    Jelly Belly restates and realleges each of the assertions set forth in the paragraphs above.

32.     Defendant asserts that he has been defamed by Jelly Belly, and in the New York Action, cited three alleged statements he attributes to Jelly Belly that he was not the "founder" of the Jelly Belly Candy Company, which he asserts were false and defamatory.

33.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Jelly Belly and Defendant concerning whether the three statements at issue are false and defamatory.

34.     There is also an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Jelly Belly and Defendant concerning whether Defendant is the "founder" of the Jelly Belly Candy Company, formerly known as the Herman Goelitz Candy Company.

35.     Jelly Belly is therefore entitled to a declaratory judgment that the three statements Defendant attributes to Jelly Belly regarding the "founder" of the Jelly Belly Candy Company are true and are not defamatory as to Defendant, and that Defendant is not the "founder" of the Jelly Belly Candy Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Jelly Belly respectfully requests the following relief:

A.  A judgment declaring that the three statements Defendant attributes to Jelly Belly regarding the "founder" of the Jelly Belly Candy Company are true and are not defamatory as to Defendant;

B.  A judgment declaring that Defendant is not the "founder" of the Jelly Belly Candy Company;

C.  An order permanently enjoining Defendant from referring to himself as the "founder" of the Jelly Belly Candy Company;

D.  An award to Jelly Belly of damages, pre- and post-judgment interest, attorneys' fees and costs, and any and all other relief to which Jelly Belly may show itself to be entitled; and

E.  An award to Jelly Belly of any other relief that the Court may deem just and proper under the circumstances.

Date:  August 26, 2022                    **GREENBERG TRAURIG, LLP**

                                          */s/Kurt Kappes*
                                          Kurt Kappes
                                          Michael D. Lane

                                          *Attorneys for Plaintiff*
                                          *Jelly Belly Candy Company*

# EXHIBIT

# G



62°

# Jelly Belly Inventor Giving Away 1 of His Factories in Willy Wonka-Style Treasure Hunt

A gold necklace that looks like a ticket will be hidden in each state

By Drew Weisholtz • Published September 10, 2020



*Getty Images*

Jelly beans are shown at the Jelly Belly candy factory June 10, 2004 in Fairfield, California. The late former U.S. President Ronald Reagan was known for his fondness for jelly beans during his political career and claims the candy helped him quite smoking when he was governor of California



Case 1:22-cv-11825-AK   Document 8   Filed 11/01/22   Page 79 of 161

It looks like we may have a real-life Willy Wonka. Jelly Belly jelly beans inventor and candy maker David Klein is giving away a key to one of his candy factories.

No longer affiliated Jelly Belly, Klein now operates Candyman Kitchens, which sells edible sand art and custom candies.

Here's how it works: A gold necklace that looks like a ticket will be hidden in each state. People interested can pay $49.98 to get a clue for their state. Only 1,000 tickets will be sold per state.

"You will be looking for a Gold Ticket in the form of a necklace with a tag that includes a code you need to use to verify your find. Winners will receive $5,000," a description of the contest reads.

The clue that players receive will assist people in tracking down the ticket. Whoever finds the necklace will get a code that they have to email to TrickyTreasures@gmail.com in order to confirm it's correct. If that happens, the person will win $5,000.

After the necklace has been found in each state, though, the real fun begins.



"We're going to have the ultimate treasure hunt where the winner will be receiving a key to one of our candy factories," Klein said in a YouTube video announcing the promotion. It's not clear which factory the winner will receive, but he wrote in the contest Facebook group that the factory is somewhere in Florida.

Anyone who competed in the initial hunt — not just the winners in each state — can compete for the key.

### Entertainment News



**JUL 19**
6 New England Restaurants Make List of Best Outdoor Dining Options in US



**1 HOUR AGO**
This Lobster Bake Shows Why Foxboro's Got Some of the Best Tailgates in the NFL

"We're looking for you, Charlie, out there," Klein added, in a nod to "Willy Wonka and the Chocolate Factory."

To be clear, though, Klein is not giving away a key to an official Jelly Belly factory. The company is not involved in Klein's treasure hunt.

"Due to confusion in the marketplace, Jelly Belly Candy Company would like to take this opportunity to clear up the misconception that it is involved with a contest that purportedly offers a candy factory as its grand prize," a Jelly Belly spokesperson said in a statement to TODAY Food. "Jelly Belly Candy Company, formerly known as Herman Goelitz Candy Company, has candy making roots back to 1869. It was founded by brothers Gustav and Albert Goelitz and remains family-owned and operated today."

Watch Sheinelle Jones get 'BeanBoozled' by weird jelly bean flavors



"David Klein, the sponsor of the 'treasure hunt' contest gaining attention within the media this weekend, is not associated with Jelly Belly Candy Company, its brands, or products," the statement continued. "In 1976, Mr. Klein, an independent third party, came up with the name 'Jelly Belly' and other novel marketing ideas. Jelly Belly Candy Company has not had a relationship with Mr. Klein since 1980 when it acquired the trademark."

Reaction to the contest has been mixed, with fans chiming in on the Facebook page claiming they've had some issues.

"I am getting a message 'Sorry, it seems that there are no available payment methods for your state. Please contact us if you require assistance or wish to make alternate arrangements'. Anyone know what the alternative is?" one person asked.

"Has anyone else not received a confirmation email regarding their order?" another asked.

Klein himself responded to some of the negative feedback.

Inside the Jelly Belly factory, where colorful beans are made



"We started this to have fun and to bring excitement to a world that is so troubled..So many people have responded favorably to what we are doing," he wrote.

"Unfortunately there have been a few haters that are attempting to take away the fun..I believe in freedom of speech but to be called a scam is so wrong...We will be removing members whose only intent is to take away any joy that this is giving everyone.."

**EDITOR'S NOTE** (Sept. 8, 2020, 9:49 p.m. EST): This article has been updated with a statement from Jelly Belly, clarifying that it is not involved in David Klein's treasure hunt.

This story first appeared on TODAY.com. More from TODAY:

- See Dylan Dreyer's adorable pics of Calvin's 1st day of school

- News anchor responds to viewer who complained about her cleavage

- Food blogger Gaby Dalkin is pregnant after having 4 miscarriages in 18 months

**Top Heart Surgeon: This Simple Trick Helps Empty Your Bowels Every Morning**
How To Clean Your Guts Every Day - Top Surgeon Explains

★ ★ ★ ★ ★

**Guthealthwellness** | Sponsored

Learn More

## Here Are the 25 Wealthiest ZIP Codes in Massachusetts

Here are the 25 wealthiest ZIP codes in Massachusetts

NBC Boston

**SPONSORED** · HEALTH HEADLINES

### Banned For 84 Years; Powerful Pain Reliever Legalized In Pennsylvania

**SPONSORED** · BRANDED LINKS

### New Senior Apartments In Livingston (Take a Look at th…

**SPONSORED** · ONLINE SHOPPING TOOLS

### Amazon Left Scrambling As

**SPONSORED · TRENDING GIFTS**

## Here Are 29 of the Coolest Gifts for This 2022

**SPONSORED · CAMPER VAN WAREHOUSE | SEARCH ADS**

## Most Affordable Camper Vans

**SPONSORED · CELL PHONE DEALS | SPONS...**

## Allentown: Unsold Phones Are Almost Being Given Away



Weather Forecast

BOSTON, MA

62°

Fog
0.57% Precip

TONIGHT

59°

TOMORROW

63°



**ABOUT NBC10 BOSTON**

**SUBMIT A TIP FOR**

**INVESTIGATIONS**

**CONNECT WITH US**

**NEWSLETTERS**

WBTS Public Inspection File

WBTS Accessibility

WBTS Employment Information

FCC Applications

NBC Non-Profit News Partnership Reports

Send Feedback

Terms of Service

Privacy Policy

Do Not Sell My Personal Information

CA Notice

Ad Choices

Advertise with us

Copyright © 2022 NBCUniversal Media, LLC. All rights reserved

# EXHIBIT H

DESSERTS

# Jelly Belly inventor giving away 1 of his factories in Willy Wonka-style treasure hunt

A gold necklace that looks like a ticket will be hidden in each state.

Sept. 8, 2020, 2:59 PM EDT / Updated Sept. 8, 2020, 9:49 PM EDT / Source: TODAY

**By Drew Weisholtz**

It looks like we may have a real-life Willy Wonka. Jelly Belly jelly beans inventor and candy maker David Klein is giving away a key to one of his candy factories.

No longer affiliated Jelly Belly, Klein now operates Candyman Kitchens, which sells edible sand art and custom candies.

Here's how it works: A gold necklace that looks like a ticket will be hidden in each state. People interested can pay $49.98 to get a clue for their state. Only 1,000 tickets will be sold per state.



*Watch TODAY All Day! Get the best news, information and inspiration from TODAY, all day long.*

"You will be looking for a Gold Ticket in the form of a necklace with a tag that includes a code you need to use to verify your find. Winners will receive $5,000," a description of the contest reads.

The clue that players receive will assist people in tracking down the ticket. Whoever finds the necklace will get a code that they have to email to TrickyTreasures@gmail.com in order to confirm it's correct. If that happens, the person will win $5,000.

After the necklace has been found in each state, though, the real fun begins.

"We're going to have the ultimate treasure hunt where the winner will be receiving a key to one of our candy factories," Klein said in a YouTube video announcing the promotion. It's not clear which factory the winner will receive, but he wrote in the contest Facebook group that the factory is somewhere in Florida.

Watch Sheinelle Jones get 'BeanBoozled' by weird jelly bean flavors



Anyone who competed in the initial hunt – not just the winners in each state – can compete for the key.

## Recommended



SHOP·BLACK FRIDAY DEALS
Target dropped new pre-Black Friday deals – shop Apple, Beats and more



SHOP·BLACK FRIDAY DEALS
Black Friday started early this year – how to save, plus 57 deals to shop from Target, Walmart, more

"We're looking for you, Charlie, out there," Klein added, in a nod to "Willy Wonka and the Chocolate Factory."

To be clear, though, Klein is not giving away a key to an official Jelly Belly factory. The company is not involved in Klein's treasure hunt.

"Due to confusion in the marketplace, Jelly Belly Candy Company would like to take this opportunity to clear up the misconception that it is involved with a contest that purportedly offers a candy factory as its grand prize," a Jelly Belly spokesperson said in a statement to TODAY Food. "Jelly Belly Candy Company, formerly known as Herman Goelitz Candy Company, has candy making roots back to 1869. It was founded by brothers Gustav and Albert Goelitz and remains family owned and operated today."

"David Klein, the sponsor of the 'treasure hunt' contest gaining attention within the media this weekend, is not associated with Jelly Belly Candy Company, its brands, or products," the statement continued. "In 1976, Mr. Klein, an independent third party, came up with the name 'Jelly Belly' and other novel marketing ideas. Jelly Belly Candy Company has not had a relationship with Mr. Klein since 1980 when it acquired the trademark."

Inside the Jelly Belly factory, where colorful beans are made



Reaction to the contest has been mixed, with fans chiming in on the Facebook page claiming they've had some issues.

"I am getting a message 'Sorry, it seems that there are no available payment methods for your state. Please contact us if you require assistance or wish to make alternate arrangements'. Anyone know what the alternative is?" one person asked.

"Has anyone else not received a confirmation email regarding their order?" another asked.

Klein himself responded to some of the negative feedback.

"We started this to have fun and to bring excitement to a world that is so troubled..So many people have responded favorably to what we are doing," he wrote.

"Unfortunately there have been a few haters that are attempting to take away the fun..I believe in freedom of speech but to be called a scam is so wrong...We will be removing members whose only intent is to take away any joy that this is giving everyone.."

**EDITOR'S NOTE** (Sept. 8, 2020, 9:49 p.m. EST): This article has been updated with a statement from Jelly Belly, clarifying that it is not involved in David Klein's treasure hunt.

# *Get the TODAY Food Newsletter!*
Make every day more delicious.

Enter your email

**SIGN UP**

THIS SITE IS PROTECTED BY RECAPTCHA PRIVACY POLICY | TERMS OF SERVICE

Drew Weisholtz

Drew Weisholtz is a reporter for TODAY Digital, focusing on pop culture, nostalgia and trending stories. He has seen every episode of "Saved by the Bell" at least 50 times, longs to perfect the crane kick from "The Karate Kid" and performs stand-up comedy, while also cheering on the New York Yankees and New York Giants. A graduate of Rutgers University, he is the married father of two kids who believe he is ridiculous.

## Sponsored Stories

by Taboola

THEGROMMET

Here Are The 31 Coolest Gifts of 2022

SWEETTH

The Best Walking Shoes For Women To Wear All Day Long Without Discomfort





SPONSORED / THEGROMMET

Here Are The 31 Coolest Gifts of 2022

SPONSORED / SWEETH

The Best Walking Shoes For Women To Wear All Day Long
Without Discomfort

SPONSORED / BLISSY

This Pillowcase is Becoming The Must-Have Holiday Gift of 2022

SPONSORED / MACULAR DEGENERATION | SEARCH ADS

Symptoms of Macular Degeneration - Catching It Early Matters

SPONSORED / LEAFFILTER PARTNER

The Permanent Solution To Clogged Gutters Is Found!

SPONSORED / ALL THINGS AUTO

Chevy Has Done It Again. This Year's Lineup Has Left Us Speechless

SPONSORED / SMART CONSUMER UPDATE

Sneaky Way Allentown Homeowners Are Getting Their Old Roof Replaced

SPONSORED / TRENDING GIFTS

Here Are 29 of the Coolest Gifts for This 2022

SPONSORED / DEXCOM

This Is the One Technology People with Diabetes Need

SPONSORED / NEWRETIREMENT

How Much Do You Really Get From a Reverse Mortgage?

SPONSORED / ULTIMATE PET NUTRITION

If Your Dog Eats Dry Food, Do This Everyday

SPONSORED / CAMPER VAN WAREHOUSE | SEARCH ADS

Most Affordable Camper Vans

SPONSORED / TECOVAS

Don't Miss Out On The Hottest Trend This Fall

SPONSORED / ONLINE SHOPPING TOOLS

Amazon Left Scrambling As Prime Users Find Out About Secret

ABOUT                                          TERMS OF SERVICE

CONTACT                                        CAREERS

HELP                                           CLOSED CAPTIONING

VISIT                                          TODAY SITEMAP

TODAY APPS                                     ADVERTISE

AD CHOICES                                     TODAY STORE

PRIVACY POLICY                                 SHOP TODAY

DO NOT SELL MY PERSONAL INFORMATION            SELECT SHOPPING

CA NOTICE                                      SELECT PERSONAL FINANCE

© 2022 NBC UNIVERSAL

NEWS                         MSNBC                          TODAY

# EXHIBIT

# I

 Wolters Kluwer

**CT Corporation
Service of Process Notification**
10/05/2022
CT Log Number 542435538

## Service of Process Transmittal Summary

TO:     Nancy Krystal
        JELLY BELLY CANDY COMPANY
        2400 N WATNEY WAY
        FAIRFIELD, CA 94533-6734

RE:     **Process Served in California**

FOR:    Jelly Belly Candy Company  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| TITLE OF ACTION: | DAVID KLEIN vs. JELLY BELLY CANDY COMPANY |
| CASE #: | None Specified |
| PROCESS SERVED ON: | C T Corporation System, GLENDALE, CA |
| DATE/METHOD OF SERVICE: | By Process Server on 10/05/2022 at 12:31 |
| JURISDICTION SERVED: | California |
| ACTION ITEMS: | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Nancy Krystal  nkrystal@jellybelly.com |
| REGISTERED AGENT CONTACT: | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 866-539-8692 |
| | CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:**        Wed, Oct 5, 2022
**Server Name:**     DROP SERVICE

| Entity Served | JELLY BELLY CANDY COMPANY |
|---|---|
| Case Number | NA |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



| Save as PDF | | Reset |
|---|---|---|

| | DOCKET NUMBER | | **Trial Court of Massachusetts** |
|---|---|---|---|
| **CIVIL ACTION COVER SHEET** | | | **The Superior Court** |
| | Help-Party Information | | COUNTY  Suffolk Superior Court (Boston) |

| **Plaintiff** | David Klein | | **Defendant:** | ✔ Jelly Belly Candy Company |
|---|---|---|---|---|
| ADDRESS: | 8749 NE Jacksonville  Rd. | | ADDRESS: | 1 Jelly Belly Lane |
| Anthony, Florida 32617 | | | Fairfield, CA  94533 | |
| | | | | |
| **Plaintiff Attorney:** ✔  Farva Jafri | | | **Defendant Attorney:** ✔ | |
| ADDRESS: | 50 Evergreen Row | | ADDRESS: | 500 Campus Drive Suite 400 |
| Armonk, NY 10504 | | | Florham Park, NJ 07932 | |
| | | | | |
| BBO: | | | BBO: | |
| | | | Add Parties | Remove Par |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B15 | Defamation | A | ○ YES   ◉ NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ○ YES   ○ NO | ○ YES   ○ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money dam
For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

   1. Total hospital expenses

   2. Total doctor expenses

   3. Total chiropractic expenses

   4. Total physical therapy expenses

   5. Total other expenses (describe below)

| | Subtotal (1-5): | $0.00 |
|---|---|---|
| B. Documented lost wages and compensation to date | | $1,000,000.00 |
| C. Documented property damages to date | | |
| D. Reasonably anticipated future medical and hospital expenses | | |
| E. Reasonably anticipated lost wages | | $9,000,000.00 |
| F. Other documented items of damages (describe below) | | |
| | TOTAL (A-F): | 10,000,000 |

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Defendant made defamatory actions/statements, caused a loss of opportunity and future wages, engaged in civil conspiracy to preclude the plaintiff
from taking credit for his accomplishments, and caused an ongoing emotional distress to the plaintiff.

### CONTRACT CLAIMS

☐  This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |
| | Add Claim | Delete C |

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Farva Jafri | Date: | 9/8/2022 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute reso

| Signature of Attorney/Unrepresented Plaintiff: X /s/ Farva Jafri | Date: 9/8/2022 |
|---|---|

SC0001: 1/22/2021                 www.mass.gov/courts                 Date/Time Printed:09-02-2022 1

[ Save as PDF ]                                                      [ Reset F ]

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality** *

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA, etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (A)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party** †

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (A)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/ Non-residential (F)

**RP Real Property**

C01 Land Taking (A)
C02 Zoning Appeal, G.L. c. 40A
C03 Dispute Concerning Title
C04 Foreclosure of a Mortgage
C05 Condominium Lien & Charges
C99 Other Real Property Action

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding
E97 Prisoner Habeas Corpus
E22 Lottery Assignment, G.L. c. 10, § 28

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A
E21 Protection from Harassment, G.L. c. 258

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency, G.L. c. 30A
E03 Certiorari Action, G.L. c. 249, § 4
E05 Confirmation of Arbitration Awards
E06 Mass Antitrust Act, G.L. c. 93, § 9
E07 Mass Antitrust Act, G.L. c. 93, § 8
E08 Appointment of a Receiver
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A
E10 Summary Process Appeal
E11 Worker's Compensation
E16 Auto Surcharge Appeal
E17 Civil Rights Act, G.L. c. 12, § 11H
E24 Appeal from District Court Commitment, G.L. c. 123, § 9(b)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c. 265, § 56
E95 Forfeiture, G.L. c. 94C, § 47
E99 Other Administrative Action
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B
Z02 Appeal Bond Denial

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12
E14 SDP Petition, G.L. c. 123A, § 9(b)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M
E27 Minor Seeking Consent, G.L. c.112, § 1

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☑ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as neces statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, includi statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except** otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**,DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendan file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**
**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY**
**MAY RESULT IN DISMISSAL OF THIS ACTION.**

SC0001: 1/22/2021                    www.mass.gov/courts                    Date/Time Printed:09-02-2022 1

[ Save as PDF ]                                                              [ Reset F ]

--No more pages!--

**COMMONWEALTH OF MASSACHUSETTS**

SUFFOLK, ss

SUPERIOR COURT

CIVIL ACTION NO.

——————————————————X

DAVID KLEIN,

COMPLAINT

        Plaintiff,

          V.

JELLY BELLY CANDY COMPANY,

        Defendant.

——————————————————X

## INTRODUCTION

The complaint of Plaintiff, David Klein, represented by Jafri Law Firm, respectfully

shows and alleges as follows:

## NATURE OF ACTION

1.     This action arises out of multiple publications at the behest and/or control of the

Defendant Plaintiff ("Company"), actively disparaging, presenting the Plaintiff in a false light,

and precluding David Klein from taking credit and accolades associated with being the founder

of the Jelly Belly Company and the jelly bean.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter in that Defendant duly operates and conducts

a substantial amount of business in the State of Massachusetts. As such, the venue is proper in

this county.

3.      The venue is proper due the Companies substantial business dealings, and ever-present

interests throughout the state.

4.      The projected monetary damages are expected to be well over the $50,000 bar to bring an

action in the Superior Court of The Commonwealth of Massachusetts.

## THE PARTIES

5.      The Plaintiff herein, David Klein, is an individual who resides at 8749 NE Jacksonville

Rd. Anthony, Florida 32617.

6.      The Company herein, has its headquarters located at 1 Jelly Belly Lane, Fairfield, CA

94533.

## FACTS

7.      On October 16, 1980, Plaintiff, Jay C. Lieberman[1] and Herman Goelitz Candy Co., Inc.

("HGCC") were parties to a Trademark Assignment and Marketing Agreement ("Agreement").

8.      Pursuant to the agreement, Herman Goelitz Candy Co., acquired a trademark for use of

the Jelly Belly U.S trademark number 1,132,233 ("Mark").

9.      Pursuant to the agreement HGCC acquired a twenty-year assignment of the trademark for

use of "Jelly Belly'" Mark.

---

[1] Mr. Klein's partner at the time of the trademark assignment. Mr. Lieberman passed away years ago. Mr. Klein founded The Jelly Belly Company and invented the Jelly Belly Jelly Bean in 1976, and his partner Mr. Lieberman was brought in, sometime in 1978.

10.     The assignment self-expired with the agreement on October 16, 2000.

11.     Notwithstanding the expiration of the agreement, HGCC continued to use the Mark without authority for the sale and distribution of candies.

12.     In order to avoid liability, the Defendants purportedly assigned the Mark to a "new" company, Jelly Belly Candy Company, on June 8, 2001.

13.     That assignment was invalid, as the Defendants ownership of the Mark had, by that time, expired, and the Defendant had no authority to transfer the Mark.

14.     Furthermore, the Agreement included a restrictive covenant so severe that it should have been void in the first place and unenforceable.[2]

15.     The Agreement prohibited Mr. Klein from "promoting in any manner jelly beans manufactured or distributed by any other seller."

16.     After blatantly pushing Mr. Klein out of the industry and reaping the rewards from years of his entrepreneurial success, the Defendant continues their attempts to change history and attribute all his accolades to themselves.

17.     The Defendant to this day is taking credit for inventing Jelly Belly brand, they publish the proof on their company website[3], despite only entering the agreement to use Jelly belly brand in 1980, and they have images backdated Jelly Belly company logo to 1976, claiming to have come up with "…the first eight flavors of Jelly Belly jelly beans, Root Beer, Green Apple, Licorice, Cream Soda, Lemon, Tangerine, Very Cherry, and Grape are introduced." *Id.*

---

[2] "Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made," or may "limit the application of any unconscionable clause." Cal. Civ. Code Ann section 1670(a); *AT&T LLC v. Concepcion*, 563 U.S. 33, 340, 131 S.Ct. 1740, 1746 (2011); and see Cal Bus & Prof Code Section 16600 ["every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"].

[3] Visited at August 31, 2022, https://www.jellybelly.com/company-history

18.   · Foregoing any mention that those same flavors were developed by Mr. Klein and his ·.
company or the "continu[ed] to push the flavor horizons with an ever-growing variety." Was
largely due to the acquisition of Jelly Belly and the flavors that were already developed by Mr.
Klein years before. (*See,* **Tab D** and **E**.)

19.   As far as the Plaintiff knows of so far, there have been at least three instances of the
Defendant contacting publications and forcing redactions or outright withdrawal of any articles
giving credit to Mr. Klein for being the true founder and inventor of the Jelly Belly jelly bean.

20.   Newswire has disclosed through reliable sources that Defendant Jelly Belly Candy
Company has advised the press not to mention Plaintiff, David Klein, as the inventor and
founder of the Jelly Belly jelly beans and has disputed the earlier press releases issued by
Plaintiff.

21.   The Plaintiff became apprised of The Defendant's interference per Newswires email
dated March 31, 2022.

22.   Colluding to misinform the public regarding the true inventor of the Jelly Belly jelly
bean.

23.   Newswire has informed Plaintiff that they are not permitted to spread truthful information
stating that Plaintiff invented the Jelly Belly jelly bean in any of the press releases that he or his
partners have sent to Newswire or other media sources. (*See,* **Tab A**).

24.   Newswire sent an email to Plaintiff stating:

> "We are unable to include mentions of Mr. Klein being the inventor of the
> Jelly Bean due to the Jelly Bean company advising - after we published a
> previous release from him - that it disputed said claim."

25.   Establishing that there was an agreement between the press and Defendant to censor
Plaintiff from being the true inventor of the Jelly Belly jelly bean.

26. On September 20, 2021, The Washington Post published an article titled "A Colorado man found a winning golden ticket. He passed on owning a candy factory."

27. The article identified Plaintiff David Klein as the inventor of the Jelly Belly jelly bean.

28. Soon after publication, a correction was added to the article stating:

> "An earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company. Gustav Goelitz was the founder of the company, which was formally known as the Herman Goelitz Candy Company. The article has been corrected."

29. This redaction was made for the benefit of Defendant, falsely taking credit for the invention, and by implication denouncing rightful historical claim to the invention and revolutionization of the jelly bean.

30. On April 3, 2019, Refinery29 published an article titled "We Planned The Menu For Kim Kardashian's "Zen-Like CBD-Themed" Baby Shower."

31. This article discussed Plaintiff David Klein's candy, referring to him as "Mr. Jelly Belly himself.", with a link to an article discussing the invention of Jelly Belly.

32. After publication, a correction was published on April 4, 2019. The correction stated:

> "An earlier version of this story incorrectly stated that the creator of Spectrum Confections was the founder of Jelly Belly Candy Company. He came up with the name, Jelly Belly but did not found the company. We regret the error."

33. Mr. Klein founded the Jelly Belly Candy Company and Gustov Goelitz founded the Goelitz Candy, the later acquisition of rights from the Plaintiff and renaming of Goelitz Candy company has no bearing on that fact.

34. Mr. Klein has been doing business under the name The Jelly Belly well before the acquisition deal was put into motion.

5

35.     As early as 1976, Mr. Klein has been signing checks[4] for rent and supplies well

before the 1980 deal went through. (*See*, **Tab C**)

36.     The Defendant, Jelly Belly Candy Company uses Plaintiff's photo in their factory tour.

37.     Defendant seems to acknowledge Plaintiff when it comes to economic gain, however,

continuously misrepresents to the media the true identity of Plaintiff. (*See*, **Tab B**).

38.     Defendant has directly or through its agents misinformed and caused Google to publicize

that the inventor of Jelly Belly Jelly Beans is Gustav Goelitz and not Plaintiff David Klein.

39.     The Defendant has attempted systematically irradicate any trace from the history of the

jelly bean product.

40.     Meanwhile, their factory tours still mention his name as the creator behind the success of

the jelly bean as we know it now.

41.     To this day, the Defendant has reaped the benefits of Mr. Klein's innovativeness,

ingenuity, and marketing he generated for the brand prior to the agreement, while at the same

time actively seeking to wipe out any public perception of his association with the Jelly Belly

brand. (*See*, **Tab D**)[5]

42.     An article was published by NBC Boston[6] September 10, 2020 that reflected the

Defendants actions, the correction that was issued at the direction of the Defendant prompted a

backlash from the community at large.

---

[4] The Herman Goelitz Candy Company was paid with the aforementioned checks until Jay Lieberman
became a partner.
[5] Article written about Mr. Klein prior to the executed Agreement; and an image from Jelly Belly company website
taking credit for events/exposure generated by Mr. Klein.
[6] https://www.nbcboston.com/entertainment/entertainment-news/jelly-belly-inventor-giving-away-1-of-his-
factories-in-willy-wonka-style-treasure-hunt/2192472/, "*Jelly Belly Inventor Giving Away 1 of His Factories in Willy
Wonka-Style Treasure Hunt*", Drew Weisholtz, Published September 10, 2020.

43.     Mr. Klein has received dozens of highly offensive messages and in some case out right

threats as the result of their intervention.

44.     As a further result, multiple business ventures and contracts[7] were halted midway through

negotiation due to the negative backlash Mr. Klein received, incurring a substantial loss of future

profits.

45.     Additionally, Mr. Klein was expected to generate revenue from the sale of tickets and

publicity from the Willy Wonka-Styled treasure hunt, directly from the sale of tickets and the

book *The Orb Travelers* released by the Plaintiff's business partner.

46.     The release of the correction to the NBC article caused a slew of negative publicity, the

sales fell to nearly fifty percent of the expected value.

47.     Any mention of Mr. Klein being the founder of his company is met with denials and

hostility.

48.     One of the articles that reflected the Defendants actions was published by NBC Boston[8],

the correction that was issued at the direction of the Defendant prompted a backlash from the

community at large.

49.     Mr. Klein has received dozens of highly offensive messages and in some cases outright

threats as the result of their intervention.

50.     Mr. Klein has never once stated that he was the owner or founder of Herman Goelitz

Candy Co., Inc.

---

[7] Mr. Klein partnered with Meta-G to announce a NFT project called Jellyz. Which by all intent and *purposes should* have been met with major success if not for the interference of Jelly Belly Candy Company with Newswire. The project was projected to generate 4 million dollars at a minimum and was actually put on hold due to the lack of media support and negative public perception.
[8] https://www.nbcboston.com/entertainment/entertainment-news/jelly-belly-inventor-giving-away-1-of-his-factories-in-willy-wonka-style-treasure-hunt/2192472/, *"Jelly Belly Inventor Giving Away 1 of His Factories in Willy Wonka-Style Treasure Hunt"*, Drew Weisholtz, Published September 10, 2020.

## COUNT I

### Defamation Per Se

51.     Plaintiff hereby repeats and re-alleges each and every allegation in Paragraphs 1 through 50, inclusive, as it fully set forth herein.

52.     Defendant Herman Rowland Sr., the Jelly Belly Candy Company has defamed Mr. Klein by publishing false and defamatory information about Plaintiff in an effort to rewrite the history and origin of the Jelly Belly jelly bean.

53.     Defendant has portrayed Plaintiff as a fake and not the true inventor and founder of the Jelly Belly jelly beans, therefore portraying Plaintiff in a misleading light, which is highly offensive or embarrassing to a reasonable person of ordinary sensibilities.

54.     Defendant, Jelly Belly Candy Company, has published the information with reckless disregard as to its offensiveness and how it would impact Mr. Klein.

55.     Defendant, Jelly Belly Candy Company, has conspired with press release companies and other third parties to further portray Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean.

56.     Defendant has attempted to silence Plaintiff and prohibit him from making true statements and representing himself as the original has disclosed through reliable sources inventor and founder of the Jelly Belly jelly bean in any press release to further Defendant's economic gain.

57.     Newswire that Defendant Jelly Belly Candy Company has advised the press not to mention Plaintiff, David Klein, as the inventor and founder of the Jelly Belly jelly beans and has disputed the earlier press releases issued by Plaintiff.

8

58.     On multiple occasions and at the behest of the Defendant, Klein was told by a third-party

publisher that they are unable or no longer willing to disseminate information of the Plaintiff

being the founder/inventor of Jelly Belly jelly bean.

59.     To any reasonable reader of the redactions, edits, and withdrawals of articles

systematically paint Mr. Klein as a sham, a liar, and a charlatan trying to have his last day in the

limelight.

60.     As a direct and proximate result of Defendant's unlawful and harmful actions Plaintiff

has suffered and continues to suffer emotional distress for which they are entitled to an award of

compensatory damages.

61.     As a direct and proximate result of Defendant's unlawful and harmful actions Plaintiff

has suffered and continues to suffer monetary and/or economic harm, including but not limited to

loss of revenue, compensation, and benefits for which they are entitled to an award of damages.


## COUNT II

### Tortious Interference with an Advantageous Relationship

62.     The Plaintiff hereby repeats and re-alleges each and every allegation in Paragraphs 1

through 61, inclusive, as it is fully set forth herein.

63.     The Plaintiff knows of at least three instances that the Defendant purposefully influenced

publications to redact and/or change factually true articles.

64.     The Plaintiff would have attained positive exposure which would have furthered his

business interests.

65.     Exposure would have more likely than not, resulted in new revenue streams and business

opportunities.

66.    The Defendant knew or should have known the positive exposure the articles would have had on the Plaintiff and his business.

67.    The Defendant willfully and maliciously interfered with the publication, causing retraction, edits, and in some, outright refusal of any further dealing with Mr. Klein.

68.    Such retraction/edits cause any reasonable reader to view the Plaintiff as a liar and a sham, someone trying to advantage of the Defendant's brand for the sake of notoriety.

68.    The negative public perception has caused economic harm and loss of prospective future business opportunities to the Plaintiff.

69.    As a direct and proximate result of Defendant's unlawful and harmful actions Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of revenue, compensation, and benefits for which they are entitled to an award of damages.


## COUNT III

### Civil Conspiracy

70.    The Plaintiff hereby repeats and re-alleges each and every allegation in Paragraphs 1 through 69, inclusive, as it is fully set forth herein.

71.    Upon the request to publish an explanation with a publication, Mr. Klein was met with an outright refusal and was told it was because of the publication's existing relationship with the Defendant.

72.    The Defendant's Action can only be interpreted as malicious and willful, with the primary goal of hurting Mr. Klein's reputation and minimalizing his contribution to inventing the jelly bean as we all know it now, and the Jelly Belly brand obtained by the Defendant in 1980 through the Agreement.

73.    Defendant, Jelly Belly Candy Company, has conspired with press release companies and other third parties to further portray Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean.

74.    The Defendant seeks to write out Mr. Klein and his contribution to the Jelly Belly Brand and his contribution in revolutionizing the jelly bean candy out of history by any means necessary, redacting and twisting historical facts on technicalities best suited to their native.

75.    The Plaintiff reputation and credibility has suffered greatly due to the direct and indirect interference by the Plaintiff through preexisting relationships and/or other persuasive means with publishers and other media outlets.

76.    As a direct and proximate result of Defendant's unlawful and harmful actions Plaintiff has suffered and continues to suffer emotional distress for which they are entitled to an award of compensatory damages.

77.    As a direct and proximate result of Defendant's unlawful and harmful actions Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of revenue, compensation, and benefits for which they are entitled to an award of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

78.    A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein constitutes libel, collusion, and civil conspiracy.

79.    An injunction and order permanently restraining Defendant from prohibiting the publication of Plaintiff as the founder and creator of the Jelly Belly jelly bean.

11

80.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of identifying as the creator of Jelly Belly jelly bean.

81.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages.

82.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

83.     An award of punitive damages;

84.     An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

85.     Such other and further relief as the Court may deem just and proper.


Respectfully submitted,


                                              JAFRI LAW FIRM,

Dated: September 8, 2022

                                              Armonk, NY
                                              By: /s/ Farva Jafri
                                              Farva Jafri Esq.,
                                              50 Evergreen Row
                                              Armonk, NY 10504
                                              farva@jafrilawfirm.com
                                              t: (800) 593-7491
                                              Counsel for Plaintiff

# Tab A

 Gmail

Stephanie Thirtyacre <tyblossom@gmail.com>

---

**Fwd: ACTION REQUIRED: Your Press Release is on HOLD**

5 messages

---

**Ashley Thirtyacre** <ashley@thegoldticket.com>
To: tyblossom@gmail.com

Thu, Nov 12, 2020 at 5:53 PM

———— Forwarded message ————
From: **Newswire** <editorial-system@newswire.com>
Date: Thu, Nov 12, 2020 at 5:10 PM
Subject: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

# NEWSWIRE

Hi Ashley,

Thank you for your latest submission, The Hunt for the Candyman's Treasure Continues. We have reviewed your press release and our editorial team has requested additional actions be taken:

**General comments:**

Thank you for sharing your news with us. Before we can send this release to our distribution partner, we just need this sentence in the fourth paragraph revised by replacing "founder" with "creator". Our partner may require said change, per guidance they provided following the publication of a previous Tricky Treasures press release that was submitted to Newswire under a different account —

"David Klein, The Candyman and founder of Jelly Belly® jelly beans, has been overjoyed at the reception everyone has had to the Candyman's Treasure Hunt."

Please revise and resubmit when ready, and we'll then send the release to our partner for their own review.

Your release will remain on HOLD until action has been taken. Please feel free to revise/edit your press release here:

https://tricky-treasures.newswire.com/manage/publish/pr/edit/21255421

For any questions please contact us by replying back to this message or emailing editorial@newswire.com for further clarification.

Once changes have been made and resubmitted, we will review the press release for approval. If changes meet our acceptability guidelines, we will approve and schedule your release for the previously requested date/time unless provided with an updated date/time.

Please note any email campaigns created coinciding with this release may not reflect changes suggested/processed by editorial team. Please revise your email campaign accordingly.

Thank you!

Best Regards,

Newswire Editorial Team

Newswire.com
5 Penn Plaza, 23rd Floor
New York, NY 10001



Server Time: 2020-11-12 22:10:02

Virus-free. www.avast.com

---

**tyblossom <tyblossom@gmail.com>**                                         Thu, Nov 12, 2020 at 5:59 PM
To: Ashley Thirtyacre <ashley@thegoldticket.com>

Hi,

Can we please get a copy of what you're basing the needed change on?

Thank you,

Ashley

[Quoted text hidden]

---

**Ashley Thirtyacre <ashley@thegoldticket.com>**                            Fri, Nov 13, 2020 at 10:04 AM
To: tyblossom@gmail.com

--------- Forwarded message ---------
From: **Jackson Falconer (Newswire.com)** <editorial@newswire.com>
Date: Fri, Nov 13, 2020, 1:02 AM
Subject: [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

##- Please type your reply above this line -##

Your request (59814) has been updated. To add additional comments, reply to this email.

---



**Jackson Falconer (Newswire.com)**
Nov 13, 2020, 1:02 AM EST

Hi Ashley,

Apologies for the delay in reply. We've heard back from our distribution partner, and they advised that they would want the change I mentioned in my first message (replacing "founder" with "creator" in this sentence):

"David Klein, The Candyman and founder of Jelly Belly® jelly beans, has been overjoyed at the reception everyone has had to the Candyman's Treasure Hunt."

They did not provide an elaborate reply, however, they advised us in September that they would be sensitive mentions of the word "founder" when concerning Jelly Bean or their products in new TGT press releases, due to a release that JB published following the first release's publication:

https://news.jellybelly.com/the-gold-ticket-candy-factory-giveaway-contest

Let us know if you're fine with said change, and if you have any other questions.

---



**Jackson Falconer (Newswire.com)**
Nov 12, 2020, 6:55 PM EST

Hi Ashley,

Thank you for your prompt reply. We're asking our distribution partner for clarification on the mentioned guidance. Once we have that we'll relay it to you. Sorry for any inconvenience, but we simply want to be sure that your release is accepted by them without issue prior to scheduling it for distribution.

---



**Ashley Thirtyacre**
Nov 12, 2020, 6:02 PM EST

Hi,

Can we please get a copy of what you're basing the needed change on?

Thank you,

Ashley

Virus–free. www.avast.com (https://www.avast.com/sig-email?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail&utm_term=link)

On Thu, Nov 12, 2020 at 5:10 PM Newswire <editorial-system@newswire.com> **wrote:**

Hi Ashley,

Thank you for your latest submission, The Hunt for the Candyman's Treasure Continues. We have reviewed your press release and our editorial team has requested additional actions be taken:

General comments:

Thank you for sharing your news with us. Before we can send this release to our distribution **partner,** we just need this sentence in the fourth paragraph revised by replacing "founder" with "creator". **Our** partner may require said change, per guidance they provided following the publication of a previous Tricky Treasures press release that was submitted to Newswire under a different account --

"David Klein, The Candyman and founder of Jelly Belly® jelly beans, has been overjoyed at the reception everyone has had to the Candyman's Treasure Hunt."

Please revise and resubmit when ready, and we'll then send the release to our partner for their **own** review.

Your release will remain on HOLD until action has been taken. Please feel free to revise/edit your press release here:

https://tricky-treasures.newswire.com/manage/publish/pr/edit/21255421

For any questions please contact us by replying back to this message or emailing editorial@newswire.com for further clarification.

Once changes have been made and resubmitted, we will review the press release for approval. If changes meet our acceptability guidelines, we will approve and schedule your release for the previously requested date/time unless provided with an updated date/time.

Please note any email campaigns created coinciding with this release may not reflect changes suggested/processed by editorial team. Please revise your email campaign accordingly.

Thank you!

Best Regards,

Newswire Editorial Team

Newswire.com (https://www.newswire.com/)
5 Penn Plaza, 23rd Floor
New York, NY 10001

Server Time: 2020-11-12 22:10:02

Virus–free. www.avast.com (https://www.avast.com/sig-email?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail&utm_term=link)

·This email is a service from Newswire.com. Delivered by Zendesk

---

**Ashley Thirtyacre** <ashley@thegoldticket.com>                                        Mon, Nov 16, 2020 at 8:58 AM
To: Stephanie Thirtyacre <tyblossom@gmail.com>

———— Forwarded message ————
From: **Jackson Falconer (Newswire.com)** <editorial@newswire.com>
Date: Mon, Nov 16, 2020 at 1:15 AM
Subject: [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

##- Please type your reply above this line -##

Your request (59814) has been updated. To add additional comments, reply to this email.

---



**Jackson Falconer (Newswire.com)**
Nov 16, 2020, 1:15 AM EST

Hi Ashley,

"Is there a way we are allowed to submit a "Correction" to their press release?" – Our distribution
partners would not want to step into the ring, so to speak, on such a dispute. Also, I do not think
they would consider changing their mind about their requirement. I am sorry for any inconvenience.

---



**Ashley Thirtyacre**
Nov 14, 2020, 1:40 PM EST

Hello Jackson,

Is there any way that we can submit information that proves our statement is correct in order to get
our press release used as it stands or is there a way we are allowed to submit a "Correction" to their
press release?

Please watch Candyman The David Klein Story which can be seen on Amazon Prime for free.

We can also send a copy of the contract where The Jelly Belly® Co bought the trademark from **David**
and his partner.

We can also show a book reference that he owned The Jelly Belly Co. as well as a canceled check from
1976.

[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]

---

Virus-free. www.avast.com



---

**Ashley Thirtyacre <ashley@thegoldticket.com>**
To: Stephanie Thirtyacre <tyblossom@gmail.com>

**Mon, Apr 26, 2021 at 2:00 PM**

---

——— Forwarded message ———
From: **David T. (Newswire.com)** <editorial@newswire.com>
Date: Thu, Nov 19, 2020, 5:51 PM
Subject: [Newswire.com] Re: Re: ACTION REQUIRED: Your Press Release is on HOLD
To: Ashley Thirtyacre <ashley@thegoldticket.com>

##- Please type your reply above this line -##

Your request (59814) has been updated. To add additional comments, reply to this email.

---



**David T. (Newswire.com)**
Nov 19, 2020, 5:50 PM EST

Hello Ashley,

I hope you are doing well today. Thank you for reaching out to us with your request.

After reviewing your account, you have been issued a refund in the amount of $404.10 for your purchase of the Newswire Digital Plus distribution per your request. You should have received a separate email to the email address on file with an updated receipt. Please allow 3 – 7 business days for your credit issuer to process this request and for your refund to appear on your credit statement.

Please let me know if you have any additional questions or concerns and I will be happy to assist you. :)

Warmest Regards,

David Tadros
*Client Success Specialist*
Newswire
Office: (800)–713–7278
Direct: (917)–809–6701
Website: www.newswire.com
Facebook: Online Press Release Distribution

*We are rated #1 in Customer Service by G2 Crowd*

*We are rated the #1 PR Software for 2018*

Please consider the environment prior to printing this e-mail. Thank you.

**The Information contained in this communication is confidential. This communication is intended only for the use of the individual or entity named as recipient. If the reader of this communication is**

not the intended recipient, you are hereby notified that any use, dissemination, **distribution or** copying of this communication is strictly prohibited.

---

**Jackson Falconer (Newswire.com)**
Nov 19, 2020, 2:34 PM EST

Hi Ashley,

Thank you for the update. I'll go ahead and forward your request to our Client Services team, who will address within 1–4 business days. Please let us know if you need anything else.

---

**Ashley Thirtyacre**
Nov 19, 2020, 12:56 PM EST

Hello Jackson,

After discussing it with our team, we've actually decided that we would like to cancel the press release for now so that we can rewrite it and submit a new one in the future. Is it possible to get a refund for the press release?

Thank you,
Ashley

Virus-free. www.avast.com (https://www.avast.com/sig-email?utm_medium=email&utm_ source=link&utm_campaign=sig-email&utm_content=webmail&utm_term=link)

---

**Jackson Falconer (Newswire.com)**
Nov 18, 2020, 11:21 PM EST

Hi Ashley,

We saw that you resubmitted with new timing instructions and just want to be sure that we're in the clear to proceed. Can you please confirm that you're fine with the mentioned revision in the fourth paragraph's first sentence?

[Quoted text hidden]

[Quoted text hidden]

# Tab B



"The tube's not so boob: Dick Cavett is back
Debby Boone lights up the pop charts
LJ writes a 2nd sensuous book

October 17, 1977·60¢

**People** weekly

*People Magazine
David Klein
October 17, 1977*

## STYLE

Style continued

### There are 25 flavors now, but watch for pumpkin pie

FINANCIALLY SPEAKING, DAVID KLEIN WILL NEVER TAKE A BATH WITH HIS GOURMET JELLY BEANS

Klein, who tends the store as well as runs the business, helps a fellow jelly bean freak pick from among the 25 flavors.

**J**elly beans, a French and Turkish invention of the mid-19th century, are going modern after 125 years. Their plain Jane image has been replaced by Jelly Bellies, called "the Rolls-Royce of jelly beans." Their renaissance is the handiwork of David Klein, an eccentric 31-year-old Californian who used to be a lawyer and now wants only to be known as Mr. Jelly Belly.

Klein makes his gourmet jelly beans smaller and, using mostly natural ingredients, in 25 flavors, such as chocolate, banana, root beer, cream soda and maple. Watermelon (green outside, pink inside) is the most popular new taste.

So far this year Klein has shipped more than 20 million Jelly Bellies to Bloomingdale's in New York. When Marshall Field sends out its Christmas catalogue offering Jelly Bellies, Klein projects enough business to make him a millionaire before the year is over. He will also ship his beans at $2.50 a

pound postage free anywhere in the U.S. from his Alhambra headquarters.

Growing up in Van Nuys, Calif., Klein was a precocious, overweight child who loved math and comic books (he hasn't changed much). He graduated from UCLA in economics with straight A's while paying his way with his first business, Big Dave's Popcorn. Moving on to the Southwestern University School of Law in Los Angeles, Klein passed the California bar in 1972, but then checked the Yellow Pages. "I just didn't want to be another name on a huge list of lawyers." Klein explains. "Besides, I would have had to buy a suit and a tie." In the same phone book, he noticed only a few wholesale nut suppliers. Soon he was selling nuts to ice cream makers and health food stores ("It's a great business," he enthuses. "Once you get an account you keep it.") Pacana inspired a business friendship with Wally "Famous" Amos, the chocolate chip

cookie king, and Klein decided to launch his own elite single-product line in July 1976.

Business was slow at first. "Some days I gave away more samples than I sold." An AP story that appeared in more than 100 newspapers in October 1976 was the turning point. Klein continues to work far into the night in the rented tract house he shares with wife Rebecca, 26, and son Bert, 2, in Temple City. "When you own a business, if you don't keep thinking, you're dead," Klein says. Ho's thinking. There will be a pumpkin pie Jelly Belly by Halloween and a super-froo variety by Christmas. Some flavors, like Coca Cola and pizza, never made it past the drawing board. So how to tell a real Jelly Belly from the competition? Bite the bean in half, Klein urges. "If the inside is white, it's a fake."

*Photographs by Mark Sennet/Camera 5*

—SUZY KALTER

83

Tab C



# Tab D

Date Filed 9/28/2022 9:40 AM
Superior Court - Suffolk
Docket Number



# AMERICA'S BEST! 100

## An Opinionated Guide to America's Most Charismatic Goods and Services



### C. PAUL LUONGO

## *America's Best!* JELLY BEANS

**The Jelly Belly**

**David Klein**, President

*9533 East Garvey*
*South El Monte, California 91733*

$3.50 per lb.

*213-442-6494*

America's best jelly beans come in twenty-five flavors, such as watermelon (green on the outside and pink on the inside), cotton candy, green apple, baked apple (cinnamon on the outside and apple flavor inside), lemon/lime (the Uncola), tangerine, cream soda, and even chocolate banana. David Klein, president of The Jelly Belly, is so confident that his jelly beans are the best he plans to challenge other manufacturers to a jelly bean taste-off, with each company putting up a $100,000 ante.

The secret to Jelly Belly perfection is that the flavor is soaked inside out. Most companies only flavor the outside, which leaves the telltale sign of white, tasteless centers.

The process for making jelly beans is quite complicated. First, corn syrup, sugar, and flavorings are stirred at the proper temperature and put into molds. Then, these are stored in 120-pound trays that hold 600,000 beans. The trays are left in a starch room for four days at 110 degrees F., then transferred to a pan room. Here, the mixture (which is the center of the jelly bean) is put into a machine resembling a cement mixer and the outer layer is sprayed on. The beans are then dried for two to three days.

Dave began Jelly Belly in 1976. He found a food chemist to create initial flavors, and rented a store. Soon afterwards, an Associated Press feature on "the only store in the world to exclusively sell jelly beans" swamped him with orders. Dave has since become known as "Mr. Jelly Belly" and has appeared on TV shows across the country, making Jelly Belly milk shakes, doing a dance called "The Jelly Belly," and always reminding children not to forget Mr. Toothbrush.

Dave is turning down hundreds of orders, and estimates that he could be doing 40 percent more business if he had more plant capacity. He already produces over a million pounds of beans per

112

year, and has recently added the Gum Drop Kids, twelve flavors of gumdrops, to his line.

All of his sales are made through candy distributors for world-wide distribution to gourmet candy stores. One man displays 150 pounds of Jelly Belly Beans in an elegant swan. Some people collect the beans just to make multicolored displays in their homes.

Jelly Belly jelly beans can be found at only the best stores, including America's best department store, Marshall Field (see p. 77), and throughout the U.S., Canada, Europe, and Japan. Jelly Belly does not advertise.

Date Filed 9/28/2022 9:40 AM
Superior Court - Suffolk
Docket Number

# Tab E



# EXHIBIT

# J

The Washington Post

*Democracy Dies in Darkness*

# A Colorado man found a winning golden ticket. He passed on owning a candy factory.

By Julian Mark

September 20, 2021 at 7:53 a.m. EDT

**CORRECTION**

An earlier version of this story misidentified David Klein as the founder of the Jelly Belly Candy Company. Gustav Goelitz was the founder of the company, which was formerly known as the Herman Goelitz Candy Company. The article has been corrected.

Andrew Maas was in Kansas and had his golden ticket in sight. But someone else was holding it. "I found it!" a woman exclaimed.

Maas was 30 seconds too late.

The 39-year-old father of two from Colorado Springs had entered the Gold Ticket, a scavenger hunt-like competition started by candy maker David Klein. In 2020, Klein and his partner, Stephanie Thirtyacre, went on a trip placing 50 gold necklaces, coined "golden tickets," in secret locations in 50 states. They released riddles with clues about their whereabouts and awarded $5,000 to the treasure hunters who found each necklace.

Maas, a lover of puzzles and adventure, registered to hunt for the necklaces in Colorado, Wyoming and Kansas. He also helped his parents hunt in South Dakota.

By the time Maas saw the necklace in someone else's hands in Kansas, his hopes of winning were all but lost. He had one more chance — the search for an "ultimate" prize, a necklace that would win its lucky discoverer the keys to a candy factory.

The competition was meant to emulate the story of Charlie Bucket, the child to whom the eccentric chocolatier Willy Wonka named the heir of his mysterious chocolate factory in the 1964 Roald Dahl novel "Charlie and the Chocolate Factory." After all 50 tickets were found, the hunt for the ultimate treasure was on. It could be located in one of six states using a riddle:

*Don't have [an] instant idea, for a treasure diehard*

*We see witches nearby, two stand guard*

*Go Solve and Search, as low as our toe*

*Why find a nut and walks are no foe*

Maas entered the competition for fun, but he was nevertheless determined to win. Yet, after Klein announced the last riddle on Memorial Day weekend, the prospect was looking slim. Months passed, and Maas was unable to solve it.

"It was hard with so many states," Maas later recounted on YouTube. "It was just overwhelming."

Realizing the hunters needed help, Klein narrowed the six states to Illinois and Indiana. That is when Maas and his wife knew that "treasure diehard" described Indiana Jones, the fictional archaeologist, and the treasure was located in Indiana. He also suspected that "don't have an instant idea" had something to do with taking things slow.

"I ran over to my phone and started looking at all the towns in Indiana to see if any of them had anything to do with not soon, or slow," he wrote in the Facebook post.

He saw Kokomo, Ind., and began singing the line from the Beach Boys song of the same name as the town: "We'll get there fast and then we'll take it slow."

Maas then started looking up parks in Kokomo. He saw that Highland Park had two gazebos that looked like the hats of "witches."

With the city and state, along with the second line of the riddle, solved, he said he was "100 [percent] confident that it was somewhere in this park." He set out for Kokomo, figuring he could solve the last two lines in person, he added.

He bought a $160 Frontier Airlines flight that took off at 6 a.m. the next day. When he landed, Maas made his way to Highland Park and began searching. He searched the statue of a bull and a sycamore stump and walked along the stream. He suspected that the final line of the riddle referred to a nut and bolt, but could not find many things made of metal. Finally, he came upon a covered footbridge, constructed partially of metal.

Klein had provided a close-up photo of the treasure's location. Maas could tell from the lighting in the photo that it must have been buried on the northwest corner. So he grabbed a stick and started digging.

There was the necklace.

Maas quickly registered its number on the website, and a half-hour later he received a call from Klein letting him know that a 4,000 square-foot candy factory was his. According to the Kokomo Tribune, the factory produces sweet edible sand called Sandy Candy.

"Are you coming to Florida to run the candy factory?" Klein asked Maas in an Aug. 29 interview Klein broadcast on his YouTube channel as Maas was still standing in the park.

"I mean, it's a big decision," Maas replied.

In the end, unlike Charlie Bucket, Maas opted not to inherit the candy factory, the Tribune reported. Moving his family to Florida to run a business was too big an undertaking. Instead, Maas and Klein worked out a deal in which Klein gave Maas the factory and bought it back from him, Klein told The Washington Post. "He's already received our check," Klein said, declining to name the amount.

"It's money we didn't have," Maas told the Tribune. "But the excitement and adventure was the real reward. The money is the gravy on top."

# EXHIBIT K



 United States

DISCOVER

# We Planned The Menu For Kim Kardashian's "Zen-Like CBD-Themed" Baby Shower

MICHELLE SANTIAGO CORTÉS
APRIL 3, 2019, 5:47 PM

  



PHOTO: NICHOLAS HUNT/GETTY IMAGES.

We hear Kim Kardashian is interested in throwing a CBD-themed baby shower. Because she's so stressed about the prospect of a fourth baby, she's turned to the trendy cannabinoid known for its anxiety-reducing qualities. And while her baby shower politics are questionable, she might be onto something. Which is why we went ahead and planned the menu for her — no need to thank us, Kim.

For a baby shower that provides guests with total comfort and relaxation, we recommend a starter of spicy meatballs with crunchy pine nuts and toast points from the James Hotel NoMad

tasting menu in New York. A table-long cheese board with swirling rows of crackers is also in order, with mounds of CBD-infused cheese to be drizzled with only the finest CBD-infused raw honey from Colorado Hemp Honey ($50 a jar).

ADVERTISEMENT

We're sure the chefs behind the Velvet Buck's CBD tasting menu currently under development at the St. Regis Aspen would also be happy to fly in and work with Kim on developing a menu. After all, they source their high quality CBD from the same provider that supplies the hotel's famous spa. In fact, a CBD-oil massage sounds like the perfect compliment.

But surely a Kardashian would want to customize her menu. In that case, Elevation VIP is a dispensary based out of L.A. that focuses on innovative ways to combine cannabinoids and organic, locally-sourced and seasonal ingredients, which might be exactly what Kim is looking for. Picture a three course meal including Elevation VIP's warm winter squash soup charged with CBD and served with homemade croutons, toasted walnuts and drizzled with, you guessed it, CBD-infused lemon oil. They can probably offer a CBD-infused version of their seared duck slivers with chanterelle mushrooms and cauliflower for the main course.

For dessert, however, the options are truly endless.

The hottest Kardashian-worthy CBD-infused treat that recently hit the market are Spectrum Jelly Beans, brought to you by the former Mr. Jelly Belly himself. And because each batch is made to order, the K-Klan can have 8,000 CBD jelly beans made in their preferred shade of Yeezy beige. They can have bowls the size of North West herself flanking the entrances.

We think a candy tower is also in order, if not for the sole reason that the CBD food market is dominated by sweets: The top tier will glisten with dazzling CBD oil and Icelandic berry

gumdrops from Lord Jones. The middle tier could be brimming with cookies and brownies from the online CBD-baked good purveyor, HempMe. While the bottom tier will be skirted with a rainbow of CBD lollipops from the historic Flower Power. And at the center of every table, bowls full of the gem-like treasures of Drip Sweets, the female-owned company from Portland, Oregon that makes crystal-shaped candies in flavors like, citrus and coconut matcha.

*Correction: April 4, 2019: An earlier version of this story incorrectly stated that the creator of Spectrum Confections was the founder of Jelly Belly Candy Company. He came up with the name, Jelly Belly but did not found the company. We regret the error.*

     

BEST CBD FOODS FOR KIM KARDASHIAN'S BABY SHOWER

KIM KARDASHIAN WEST • ENTERTAINING • FOOD & DRINKS • FOOD TRENDS

———

WRITTEN BY

MICHELLE
SANTIAGO
CORTÉS

PHOTO: NICHOLAS HUNT/GETTY IMAGES.

———

## More from Food & Drinks

GIFT GUIDES

### But First, Coffee: 22 Gift Ideas For Bean-Loving Buds

JUN 8, 2022

BEST COFFEE

### A Monthly Subscription That's Coffee Snob Approved

by KATE SPENCER

MOST WANTED

### There's No Need For A Blender With This Smoothie Subscripti...

by MERCEDES VIERA

ADVERTISEMENT

Case 1:22-cv-11825-AK    Document 9   Filed 11/01/22   Page 141 of 161

MOST WANTED

## Clink, Clink: We Found The Best Drinking Glasses For Spring

by ALEXANDRA POLK

FOOD & DRINKS

## Hot Sauce Enthusiasts: Get To Know The "Freaky Flavors...

by JINNIE LEE

FOOD & DRINKS

## This Plant-Based Meal Delivery Service Taught Me To Love Veggies

by JINNIE LEE

ADVERTISEMENT

FOOD & DRINKS

## Gifts For Moms Who Love Food As Much As We Do

by MARSHALL BRIGHT

ON-SITE SHOPPING

## The New York City Coffee Shop That Brews Gender Equality & Gives ...

by KATE SPENCER

GUIDE TO WINE

## This Stylish, Single-Serving Wine Won't Go To Waste

by ALEXANDRA POLK

ADVERTISEMENT

MOST WANTED

## The Best Prepared Meal Delivery Subscriptions, Reviewed By A Pick...

by MERCEDES VIERA

TRIED & TRUE

## This Berkey Water Filter Has Changed My Life

by JINNIE LEE

**CHOCOLATE**

## Wondering Where To Buy Hot Chocolate Bombs This Valentine's Day? …

by ALEXANDRA POLK

ADVERTISEMENT

# R29 Original Series

**COMEDY**

8 comedians, in conversation.

**WATCH NOW**

**NEWS**

Fundamental. Gender Justice. No Exceptions.

**WATCH NOW**

**DOCUMENTARY**

Five love stories behind diverse, multicultural marriages.

**WATCH NOW**

ADVERTISEMENT



## COMPANY

About Us

Jobs

Press

Advertising

Feedback

Refinery29 Intelligence

## INFORMATION

R29 News

Terms

Privacy

Archives

RSS

Do Not Sell My Info

## EDITIONS

United Kingdom

Germany

France

Australia

## NEWSLETTER SIGN-UP





The Best Foods For Kim Kardashian's Baby Shower

# EXHIBIT L

# STATE OF ILLINOIS,

## DEPARTMENT OF STATE

### James A. Rose    Secretary of State



## To all to whom these Presents Shall Come, Greeting:

**Whereas,** a STATEMENT, duly signed and acknowledged, has been filed in the Office of the Secretary of State, on the **1st** day of **February** A.D. 19**10** for the organization of the

**GOELITZ CONFECTIONERY COMPANY.**

under and in accordance with the provisions of "AN ACT CONCERNING CORPORATIONS" approved April 18, 1872, and in force July 1, 1872, and all acts amendatory thereof, a copy of which statement is hereto attached; And Whereas, a LICENSE having been issued to **Gustav A. Goelitz, Herman Goelitz,** and **Edward F. Kelley.**

as Commissioners to open books for subscription to the capital stock of the said Company. And Whereas, the said Commissioners have on the **Nineteenth** day of **March** A.D. 19**10** filed in the office of the Secretary of State a report of their proceedings under said License, a copy of which report is hereto attached. Now Therefore, I, JAMES A. ROSE, Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby certify that the said **GOELITZ CONFECTIONERY COMPANY.**

is a legally organized Corporation under the laws of this State.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the great Seal of State. Done at the City of Springfield this **19th** day of **March** A.D. 19**10** and of the Independence of the United States the one hundred and **Thirty-fourth.**

James A Rose
SECRETARY OF STATE

5-M-12-08

STATE  OF  ILLINOIS, )
        )SS
 COOK COUNTY.    )

TO JAMES A. ROSE,  SECRETARY OF STATE:

   We, the undersigned, Gustav A. Goelitz, Herman Goelitz and

Edward F. Kelley, propose to form a Corporation under and pursuant to

an Act of the General Assembly of the State of Illinois, entitled "An

Act  Concerning Corporations," approved April 18th, 1872, and all

amendatory thereof; and for the purpose of such organization we make

the following statement, to-wit:

   FIRST-- The name of such Corporation shall be "GOELITZ
CONFECTIONERY COMPANY."

   SECOND--The object and purpose for which the said Corpora-
tion isformed is as follows:  To purchase, lease or otherwise acquire
suitable fixtures, machinery and equipment for manufacturing and sell-
ing confectionery and candies of all kinds together with necessary
boxes and packages therefor; to manufacture, buy, sell, import, export
and deal in confectionery, candy, sugar, glucose merchandise necessary
and useful in connection with the manufacture of candy and confections
of all kinds; to invent, devise, purchase, acquire and use secret pro-
cesses and to apply for and register patents and trademarks granting
the right to make, sell and use compounds and the manufacture and sale
of all kinds of confectionery at wholesale and retail.

   THIRD-- The capital stock of the Corporation shall be Twenty-
five Thousand ($25,000.00) Dollars, divided into shares of One Hundred
($100.00) Dollars each.

   FOURTH-- The number of shares shall be Two Hundred and Fifty
(250.)

   FIFTH-- The location of the principal offices of the Cor-
poration is in the City of Chicago in the County of Cook, and State
of Illinois. *Sixth— The duration of the corporation shall be Fifty (50)
years.*

         GUSTAV  A.  GOELITZ

         HERMAN GOELITZ

         EDWARD F. KELLEY.


STATE OF ILLINOIS, )
        )SS
 COOK COUNTY.   )

   I, Joseph B. Nystrom, a Notary Public in and for the County
and State aforesaid do hereby certify that on the 22nd day of January,
A. D. 1910, personally appeared before me Herman Goelitz and Edward F.
Kelley to me personally known to be the same persons who executed the
foregoing statement, and severally acknowledged that they executed the
same for the purposes therein set forth.

   IN WITNESS WHEREOF, I have hereunto set my hand and seal,
the day and year above written.

  (SEAL).       JOSEPH B. NYSTROM
           Notary Public.

STATE OF MISSOURI, )
                        )SS
JACKSON COUNTY.     )

       I, Leclair Lambert, a Notary Public  in and for the
County and State aforesaid do hereby certify that on the 24 day of
January, A. D. 1910, personally appeared before me, Gustav A. Göelitz
to me personally known to be the same person who executed the fore-
going statement and severally acknowledged that he executed the same
for the purposes therein set forth.

       IN WITNESS WHEREOF, I hereunto set my hand and seal the
day and year above written.

                              LECLAIR  LAMBERT

                                  Notary Public.
(SEAL).                     My commission expires Nov.
                                 27, 1913.

# EXHIBIT

# M

757186

ARTICLES OF INCORPORATION

**FILED**
In the office of the Secretary of State
of the State of California
MARCH FONG EU, Secretary of State

OCT 28 1975

of

HERMAN GOELITZ CANDY COMPANY, INC.
A California Corporation

By _____
Deputy Secretary of State

## ONE

The name of this corporation is

HERMAN GOELITZ CANDY COMPANY, INC.

## TWO

The purposes for which this corporation is formed are:

(a)  To engage primarily in the specific business of a candy manufacturer and jobber, selling candy and allied products at wholesale.

(b)  To engage in any one or more other businesses or transactions which the Board of Directors of this corporation may from time to time authorize or approve, whether related or unrelated to the business described in (a) above or to any other business then or theretofore done by this corporation;

(c)  To exercise any and all rights and powers which a corporation may now or hereafter exercise;

(d)  To act as principal, agent, joint venturer, partner or in any other capacity which may be authorized or approved by the Board of Directors of this corporation; and

(e)  To transact business in the State of California or in any other jurisidction of the United States of America or elsewhere in the world.

(f)  To establish and carry out, alter, or amend such systems, plans, or trusts for providing pensions for employees, officers and

-1-

directors of the corporation as the Board of Directors may determine and so as to be a business expense of the corporation, with or without contributions from the beneficiaries; and to provide, alter, or amend such methods or plans for employees, officers and directors to partici- pate in the profits of the corporation as the Board of Directors may determine, including stock purchase plans with restricted stock options.

The foregoing statement of purposes shall be construed as a statement of both purposes and powers, and the purposes and powers in each clause shall, except where otherwise expressed, be in nowise limited or restricted by reference to or inference from the terms or provisions of any other clause but shall be regarded as independent purposes and powers.

## THREE

The County in the State of California where the principal office for the transaction of the business of this corporation is to be located is Alameda.

## FOUR

This corporation is authorized to issue only one class of shares of stock, to-wit:  common stock;  the total number of such shares which the corporation is authorized to issue shall be 25,000; the aggregate par value of all said shares shall be $250,000.00; the par value of each said share shall be $10.00.

## FIVE

No distinction shall exist between the shares of the corporation or the holders thereof.

## SIX

(a)  The number of the directors of this corporation shall be three (3).

**(b)** The names and addresses of the persons who are appointed to act as the first directors of this corporation are:

| NAME | ADDRESS |
|------|---------|
| HERMAN G. ROWLAND | 2253 Blackwood Drive<br>Walnut Creek, California |
| ERNEST E. ROWLAND | 2265 Blackwood Drive<br>Walnut Creek, California |
| ALOYSE L. ROWLAND | 2265 Blackwood Drive<br>Walnut Creek, California |

IN WITNESS WHEREOF, for the purpose of forming this corporation under the laws of the State of California, we, the undersigned, constituting the incorporators of this corporation, and including all of the persons named herein as the first directors, have executed these Articles of Incorporation this 28ᵗʰ day of October, 1975.

HERMAN G. ROWLAND

ERNEST E. ROWLAND

ALOYSE L. ROWLAND

-3-

STATE OF CALIFORNIA )
                           )   ss.
COUNTY OF ALAMEDA )

On this 28th day of October, 1975, before me, HOWARD

W. WAYNE, a Notary Public, in and for the County of Alameda, State of

California, residing therein, duly commissioned and sworn, personally

appeared HERMAN G. ROWLAND, ERNEST E. ROWLAND and ALOYSE L.

ROWLAND, known to me to be the persons described in and whose names are

subscribed to the within instrument and they acknowledged to me that they

executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and

affixed my Official Seal, the day and year in this certificate first above

written.

HOWARD W. WAYNE, Notary Public,
In and For the County of Alameda,
State of California

OFFICIAL SEAL
HOWARD W. WAYNE

-4-

# EXHIBIT N

A0562902

0757186  SURV

**FILED**
in the Office of the Secretary of State
of the State of California

MAR 3 1 2001 ₰

*Bill Jones*

BILL JONES, Secretary of State

## AGREEMENT OF MERGER OF GOELITZ CONFECTIONERY COMPANY INTO HERMAN GOELITZ CANDY COMPANY, INC.

THIS AGREEMENT OF MERGER is entered into between HERMAN GOELITZ CANDY COMPANY, INC., a California corporation (herein "Surviving Corporation") and GOELITZ CONFECTIONERY COMPANY, an Illinois corporation (herein "Merging Corporation").

1.      Merging Corporation shall be merged into Surviving Corporation.

2.      The outstanding shares of Surviving Corporation shall remain outstanding.

3.      Surviving Corporation shall acquire all of the stock of Merging Corporation not already owned by Surviving Corporation in exchange for 2,292 shares of the common stock of Surviving Corporation which shall be transferred to the other shareholders of Merging Corporation.

4.      Merging Corporation shall from time to time, as and when requested by Surviving Corporation, execute and deliver all such documents and instruments and take all such action necessary or desirable to evidence or carry out this merger.

5.      The effect of the merger and the effective date of the merger are as of 11:59 p.m. on March 31, 2001.

IN WITNESS WHEREOF, the parties have executed this Agreement.

HERMAN GOELITZ CANDY COMPANY, INC.

By: _____
        Robert M. Simpson, Jr., President

By: _____
        Lisa R. Brasher, Secretary

GOELITZ CONFECTIONERY COMPANY

By: _____
        William H. Kelley, President

By: _____
        Lisa R. Brasher, Secretary

FFDOCS/9/HERM.6/AGREEMENT OF MERGER (HGCC)

**CERTIFICATE OF APPROVAL OF AGREEMENT OF MERGER**

**OF GOELITZ CONFECTIONERY COMPANY**

**INTO HERMAN GOELITZ CANDY COMPANY, INC.**

Robert M. Simpson, Jr. and Lisa R. Brasher certify that:

1.    They are the President and the Secretary, respectively, of Herman Goelitz Candy Company, Inc., a California corporation (the "Corporation").

2.    The Agreement of Merger in the form attached was duly approved by the Board of Directors and shareholders of the Corporation.

3.    The shareholder approval was by the holders of 100% of the outstanding shares of the Corporation.

4.    There is only one class of shares and the number of shares outstanding is 15,340.

5.    An additional 2,292 shares will be issued pursuant to the provisions of the attached Agreement of Merger.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

Dated: March 16, 2001

Robert M. Simpson, Jr., President

Lisa R. Brasher, Secretary

## CERTIFICATE OF APPROVAL OF AGREEMENT OF MERGER

## OF GOELITZ CONFECTIONERY COMPANY

## INTO HERMAN GOELITZ CANDY COMPANY, INC.

William H. Kelley and Lisa R. Brasher certify that:

1.      They are the President and the Secretary, respectively, of Goelitz Confectionery Company, an Illinois corporation (the "Corporation").

2.      The Agreement of Merger in the form attached was duly approved by the Board of Directors and shareholders of the Corporation.

3.      The shareholder approval was by the holders of 100% of the outstanding shares of the Corporation.

4.      There is only one class of shares of the Corporation and the number of shares outstanding is 690.

5.      An additional 2,292 shares of Herman Goelitz Candy Company, Inc. will be issued to the shareholders of the Corporation pursuant to the terms of the attached Agreement of Merger.

We further declare under penalty of perjury under the laws of the State of Illinois that the matters set forth in this certificate are true and correct of our own knowledge.

Dated: March 16, 2001

William H. Kelley, President

Lisa R. Brasher, Secretary

# EXHIBIT

# O

A0562903

フ57186

**CERTIFICATE OF AMENDMENT**

OF

**ARTICLES OF INCORPORATION**

OF

**HERMAN GOELITZ CANDY COMPANY, INC.**

FILED
In the office of the Secretary of State
of the State of California

APR 0 2 2001

*Bill Jones*
BILL JONES, Secretary of State

ROBERT M. SIMPSON and LISA ROWLAND BRASHER hereby certify that:

     1.    They are the President and Secretary, respectively, of Herman Goelitz Candy Company, Inc., a California corporation.

     2.    Article One of the Articles of Incorporation of said corporation shall be amended to read in full as follows:

          "ONE:     The name of this corporation is:

          **JELLY BELLY CANDY COMPANY"**

     3.    The foregoing amendment has been approved by the Board of Directors of said corporation.

     4.    The foregoing amendment was approved by the required vote of the shareholders of said corporation in accordance with Sections 902 and 903 of the California Corporations Code. The corporation has only one class of shares and each outstanding share is entitled to one vote. The total number of outstanding shares entitled to vote with respect to the foregoing Amendment was Fifteen thousand Three Hundred Forty (15,340) Common Shares; and the number of shares voting in favor of the foregoing Amendment equaled or exceeded the vote required, in that the Amendment was approved by the affirmative vote of Fifteen Thousand Three Hundred Forty (15,340) shares, that is, by the affirmative vote of one hundred (100) percent of all the issued and outstanding shares.

     IN WITNESS WHEREOF, the undersigned has executed this Certificate on March 20, 2001.

ROBERT M. SIMPSON, President

LISA ROWLAND BRASHER, Secretary

1

The undersigned declare under penalty of perjury that the matters set forth in the foregoing Certificate are true and correct of their own knowledge and that this declaration was executed on March _20_, 2001 at Fairfield, California.

ROBERT M. SIMPSON, President

LISA ROWLAND BRASHER, Secretary